JUDGE TORRES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

DR. RUPERT GREEN,

# 18 CV 10817

                    Plaintiff            DOCKET NO.

        -against-                            COMPLAINT
                                        *JURY TRIAL DEMANDED*

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK; CARMEN FARINA,
Former Chancellor, sued Individually and Officially,


                    Defendants

———————————————————————x

PLAINTIFF DR. RUPERT GREEN, ("Plaintiff") proceeding Pro Se, as and for his

Summons and Complaint filed to protect his Constitutional rights against the above-

captioned  DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK ("DOE)

and former Chancellor CARMEN FARINA ("Defendants"), alleges upon knowledge as

to his own facts and upon information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.This is a civil action seeking injunctive relief, monetary relief, including past and on-

going economic loss, compensatory and punitive damages for violations of

Constitutionally protected rights. Defendants wrongfully, maliciously and in bad faith

terminated Plaintiff which stigmatized him and caused him financial hardship by filing

frivolous charges pursuant to rules listed by them as relevant to Education Law Section

3020-a, placing him on the Ineligible/Inquiry or "no hire" List, and denying him his

lawfully given rights under the tenure law to Freedom of Speech and Due Process as

1

stated in the Education Law 3020-a. Plaintiff was charged in April 2016 with sending "improper, harassing" emails to staff, but he testified that he started sending email questions and his philosophical statements in 2001. He also testified that the emails in the record evidence were only a small portion of the emails sent over the past 15 years, and none of them was derogatory or improper. He further argued that if he could have been given access to his email on the Department's server, he could have shown that he had sent emails for many many years which were exactly the same as those charged in his 3020-a hearing. The difference was that Plaintiff raised questions about the selection process for Corey Prober, who became principal of Coop Tech in 2014.

Corey Prober is also the person who signed the Notice of the Determination of Probable Cause for Education Law 3020-a Charges on or about 4/22/16, which became the basis for the Plaintiff's Motion To Dismiss. The Motion To Dismiss was arbitrarily denied by the arbitrator Leah Murphy.

Murphy also denied Plaintiff's request for access to his DOE emails, so that he could submit all the emails he sent which were not charged, and which would show his expertise in vocational education, as well as the concerns he had about the health, safety and welfare of the students he cared for while at Coop Tech. Although Plaintiff requested access to his email account many times so that he could submit the emails to the arbitrator which were clearly not harassing, derogatory or improper, this request was constantly denied throughout the hearing. For 15 years Respondent had been a whistleblower and advocate for the students and staff. The charges were clearly created and served in retaliation against his speaking out on matters of public concern as any private citizen or parent would do.

This lawsuit arose out of the ongoing unjust harm and stigma resulting from the actions of the Defendants as defined in the recent decision in March 2018 of Richmond County Supreme Court Judge Desmond Green, who ruled that the termination of Petitioner Rosalie Cardinale by Arbitrator Lendino at Section 3020-a Arbitration was defective and violated her due process rights. Plaintiff had the same legal team at his Section 3020-a Arbitration, who submitted the exact same argument, yet his Arbitrator Leah Murphy refused to grant – or even hear – his Motion To Dismiss For Lack of Subject Matter Jurisdiction. The DOE never properly determined probable cause for the charges filed and served against Plaintiff in compliance with Education Law 3020-a(2)(a), and secretly and fraudulently waived Plaintiff's rights in order to make sure that Arbitrator Murphy terminated his employment for no justifiable cause.

Defendants' practice of speeding up the hearings in New York City, but not permitted outside of the City, obliterated the rights of tenure for all charged employees in NYC by denying a third party role in the charging process, namely a vote on probable cause in Executive Session by the NYC school board, Panel For Educational Policy, in clear violation of procedural law cited in Education Law 3020-a(2)(a) in order to override tenure law and deny Plaintiff his property and liberty rights under that law. The DOE fraudulently concealed from Plaintiff before and during his 3020-a hearings that his right to the procedures under which he agreed to a hearing in the first place, namely the determination of probable cause by a vote in Executive Session, was denied to him. This fraud brought about his termination without Just Cause.

## PARTIES and JURISDICTION

2. Plaintiff DR. RUPERT GREEN was, until the charged years 2013-2014, 2014-2015,

and 2015-2016, a tenured teacher employed with Defendant the New York City Department of Education, beginning on or about February 2001 through April 2016, specializing in teaching computer technology and Career Technical Education ("CTE"). Petitioner is a highly qualified and educated individual, who has attained an Associate's Degree in Electronics Engineering Technology, a Bachelor's Degree in Occupational Engineering, a Master's Degree in Learning Technology, a Master's Degree in School Administration, and a Doctorate in Education and Leadership. Prior to working with the Respondent, Petitioner worked at Mercy Hospital in New Jersey in the field of biomedical engineering and electronics technology, maintaining computerized medical equipment.

Throughout the entirety of his employment with DOE, Petitioner taught for The School of Cooperative Technical Education ("Coop Tech"). Coop Tech is a high school organized within District 79 of the New York City public school system. District 79 is a city-wide school district for nontraditional students, such as those who are incarcerated, hospitalized or in temporary housing, and adult students preparing for General Educational Development tests. Coop Tech is a multiple-site high school that specializes in CTE and vocational trade education. The central site of Coop Tech is located on East 96th Street in New York, New York. Plaintiff was assigned to an alternate location at John Adams High School.

3. At all relevant times, the NYCDOE has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, is subject to the mandates under the Education Law, First, Fourth, Fifth and Fourteenth Amendments to the United States

Constitution, which prohibits any diminution of tenure rights without Just Cause, and retaliation against individuals, such as Plaintiff herein. The headquarters of the NYC DOE is located at 52 Chambers Street, NYC 10007.

5. Defendant CARMEN FARINA was at all relevant times until August 2018 the Chancellor of the NYC Department of Education and as such has oversight over the teacher discipline process known as "3020-a" as well as the "rubber rooms". Farina's duties include attending meetings of the Panel For Educational Policy, the NYC school board, but she is not given the authority to vote on any matter brought to the PEP in an open meeting or in an Executive Session (PEP Bylaws). Farina was, therefore, cut out of the determination of probable cause by fiat of the New York State legislature, although she could initiate charges and delegate the charges to a Superintendent, who could then submit the charges to the PEP for a vote in an Executive Session pursuant to Education Law 3020-a(2)(a). Upon information and belief, Carmen Farina lives at 29 Tiffany Pl., #1L, Brooklyn, N.Y. 11231.

6. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions brought pursuant to: Defendant's violations of 42 U.S.C. Section 1983, First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in particular the protections given by the Freedom of Speech First Amendment rights and Equal Protection Clause enclosed within the Fourteenth Amendment, as well as State law claims codified in the New York State Constitution, and Education Law §3020-a (the "tenure law") .

7. This action's venue properly lies in the United States District Court for the

Southern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 52 Chambers Street, Manhattan. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

8. This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367.

9. At all times relevant herein, Plaintiff was a public employee of Defendants within the meaning of New York State Civil Service Law § 75-b(1)(b).

## FACTUAL STATEMENT

10. Plaintiff, a tenured teacher, was harassed and denied support for freedom from abuse of process and malicious prosecution, stigma plus character defamation and diminution of his tenure rights due to his speaking out via email as a private citizen on matters of public concern at Coop Tech. His concerns were basically two: the husband-wife team of Alicia Konzie, Secretary to the Principal, and Carlos Caraballos, teacher, who gave favors to each other yet had not, it seems, requested a waiver from the Conflict of Interest Board (COIB) and were violating **Chancellor's Regulations C-110, Section IV** (http://docs.nycenet.edu/docushare/dsweb/Get/Document-56/C-110.pdf); and, the underfunding and negligence by the DOE of the CTE vocational programs in NYC. The staff at Coop Tech – except the husband and wife tag team and the Principal – supported Plaintiff's opinions that there were certain issues which should be addressed. Specifically, Plaintiff alleges that Defendants, with flagrant disregard for his Constitutionally protected rights as a tenured teacher, wantonly, recklessly, maliciously, knowingly and purposefully, acting *ultra vires* individually under a ministerial cloak and

in conspiracy with each other under color of state law, have deprived Plaintiff of his protected rights and enjoyment of liberty and property before, during, and after the mandatory arbitration known as "3020-a". His career and personnel file were automatically flagged with a "no hire" code without any notice and in violation of his due process rights, based solely on the opinion of the principal of his school by whom he was targeted.

11. Plaintiff was never permitted to participate in the choosing of the arbitrator for his 3020-a due to the fact that in New York City, and not in any other school district in the State of New York, arbitrators are assigned to cases by the Department of Education, and are assigned to one of the two permanent panels by the Department and NYSUT, every September. These permanent panels of Arbitrators are created and maintained by the Department and the agency wields total control over the actions of each Arbitrator.

12. An example of this control is the incident in the case of Alan Herz. During the pre-hearing for his 3020-a, Arbitrator Philip Maier dismissed the case citing untimely reports from the investigators. He was immediately sued by the NYC Law Department, and in September 2018 was not re-appointed to the 3020-a arbitration panels in NYC. He is the only arbitrator who ever dismissed charges at a pre-hearing and the DOE does not "allow" this.

13. It is a known fact that NYC Chancellor Carmen Farina held closed meetings for the NYSUT and Department Attorneys and Arbitrators wherein she urged them to allow as few witnesses as possible, and to make the final decision (to terminate) as quickly as possible. She makes sure that her staff enforces these clandestine "rules". She also continued the secret mandate to ignore Education Law 3020-a (2)(a) and a vote in

Executive Session by the PEP in order to speed up the procedures for charging tenured staff. Farina also is responsible for continuing to secretly waive the rights of teachers to a hearing pursuant to Ed. Law 3020-a(2)(a) in order to maintain her control.

14. Arbitrators are assigned to one of two separate panels, either the Administrative Trials Unit ("ATU") or the Teacher Performance Unit ("TPU"), by the Department. This creates a bias which cannot be overcome by the Plaintiff, the former Respondent at 3020-a, and denies the charged employee of his/her due process rights to a neutral arbitrator. Arbitrators receive $1400/day and they all know that they must do whatever the Department wants in order to stay in the very lucrative job as hearing officer.

15. Outside NYC charged employees may participate in choosing the arbitrator for 3020-a, but in NYC this right is taken away. The arbitrator is assigned by the Department of Education for each case. The fix is in before the hearing begins: The statute in NY State Regulations, Part 82-3.5:

**"82-3.5 Appointment of hearing officer in standard and expedited section 3020-a proceedings.**
(a) Upon receipt of notification of the need for a hearing, the commissioner shall obtain a list of potential hearing officers, together with relevant biographical information from the association. Such list shall consist of individuals selected by the association who are qualified to serve as hearing officers. To be qualified to serve as a hearing officer, an individual shall:
(1) be on the association's panel of labor arbitrators;
(2) be a resident of New York or an adjoining state;
(3) be willing to serve under the conditions imposed by Education Law section 3020-a and this Subpart; and
(4) not be otherwise ineligible to serve pursuant to Education Law, section 3020-a(3)(c)(i).
(b) Within 15 days after receiving the list of potential hearing officers from the commissioner, the parties shall by agreement select a hearing officer and notify the commissioner of their selection."

In the UFT contract, Article 21G(2) is the following:

"2. . **Rotational Panel**

As discussed and agreed upon, all parties would be served better by the implementation of a permanent arbitration panel. The panel members must be agreeable to both sides, however, if the parties cannot agree to a full complement of 20 panel members, additional impartial arbitrators shall be selected by the parties in accordance with the American Arbitration Association (AAA) procedures (strike and rank method) from list(s) provided by the AAA until the desired number (20) is reached to establish such permanent panel.

Panel members shall serve for a maximum of a one-year term. At the expiration of such term, the parties must agree to have arbitrators continue to serve on the panel, and if not, replacement members will be elected by the method outlined above. Removal prior to the end of the one-year term must be for good and sufficient cause upon mutual agreement of the parties.

Any arbitrator who agrees to serve on the rotational panel must agree to the following terms:

a. Each arbitrator selected to serve on this rotational panel must agree to provide five (5) consecutive hearing dates per month for the months of September through June and two (2) hearing dates for the months of July and August. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless otherwise agreed.

b. Arbitrators must provide three (3) dates, within ten (10) to fifteen (15) calendar days from the date the case was assigned to him or her, for a pre-hearing conference. One of the dates shall be at 9:00 a.m. Advocates must accept one (1) of the three (3) dates offered or it will be assumed that the date or dates offered at 9:00 a.m. is (or are) acceptable. Said dates must be in compliance with Education Law §3020-a (within 10 to 15 days from the date selected to serve).

c. At the pre-hearing conference, arbitrators must provide and parties must accept five (5) consecutive hearing dates within the statutory timeframe as delineated in Education Law §3020-a. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless mutually agreed.

d. The parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normally attorney or party scheduling conflicts are not extraordinary circumstances.

e. In all cases, as delineated in Education Law §3020-a the final hearing shall be completed no later than 60 days from the pre-hearing conference and the written decision must be rendered within 30 days from the final hearing date.

f. There is a presumption that charges against the same employee will be consolidated unless the arbitrator finds that to do so would deny a fair hearing. Additionally, in routine matters, any motions must be made and responded to orally. Thereafter, a decision shall be rendered on the issue the same date the motion was made. Should the arbitrator find that written motion practice is necessary, either party reserves the right to respond orally but in no case shall motion practice take place outside the scope of the timelines as outlined in Education Law §3020-a.

Failure to abide by these rules shall be "good and sufficient" grounds for removal of an arbitrator."

There is no mention of the NYC DOE choosing the arbitrator for each case, but indeed, the

Department assigns the arbitrators. Plaintiff was not allowed to participate.

16. The standard which must be complied with by the Department in these

proceedings is the Just Cause Standard, and there is a reason why two of the 7 tests

for Just Cause mention the "fair" investigation as mandatory. In this case, there was

no fair adjudication of the charges made against Plaintiff, because no one submitted

any facts concerning the harm done to students and the school, or lack thereof.

See the video and read the transcript of the "secret" meeting held at Department

headquarters, Tweed, on February 24, 2015 at:

**The 3020-a Arbitration Newswire: Digging Up The Garbage On the UFT/DOE**
**Partnership of Harm For Charged DOE Employees**
http://nycrubberroomreporter.blogspot.com/2016/05/the-3020-arbitration-newswire-
digging_28.html

No private attorney nor Plaintiff were invited.

17. The Arbitrators on the permanent panels in New York City are ordered by the

General Counsel to ignore Education Law 3020-a(2)(a) which mandates that there be an

Executive Session of the NYC school board, called the Panel For Educational Policy, and

a vote by the majority of the members of the Panel on probable cause for bringing the

charges to arbitration. Only after this vote in an Executive Session is the list of charges

sent to the Respondent-to-be. In New York City, this process never occurs. There is no

stop gap to a principal filing charges simply because he/she does not like or want the

tenured employee on the school budget.  As there are no senior transfers any longer, the

only way for a principal to remove a tenured employee from the school budget is to file

3020-a charges against the individual and hope that at least one if not more, of the

charges are found valid. If the employee is exonerated, this employee will be sent back to his/her original position at the school. Arbitrators are told not to allow this.

18. The Department has made the 3020-a process a weapon to get rid of expensive, and/or older and/or tenured teachers. The fact is, anyone who blows the whistle on any fraudulent actions taken inside a school is targeted for termination, as Plaintiff was in this case. For this reason, a principal must work closely with the Attorneys of the Department at the District level, to create enough charges to make something, at least one, stick.

19. Additionally, there is a stigma plus claim created where at all relevant times the NYC DOE has kept the names and personnel file numbers of employees - who have been charged with any number of minor infractions or who have spoken out about wrong-doing by administrators - on a list called the "Problem Code" or "Ineligible Inquiry List". There is no information on the procedures used, no standards for placement on this list, and no method by which a person so placed may remove his/her name from this list. Plaintiff's name was placed on this list because of the actions of the Defendants to leave CTE students without proper resources and services.

18. In March 2016 Dr. Green sent a Complaint to the U.S. Department of Education, Office of Civil Rights (OCR) alleging that the NYC DOE had retaliated against him for his advocacy, including filing the OCR complaint, when the Coop Tech principal placed a disciplinary letter to file in his file on March 2, 2016.

19. On or about April 22, 2016 Plaintiff was charged with 3020-a charges. His charging paper titled "Notice of Determination of Probable Cause on Education Law § 3020-a Charges had no date for the Executive Session on probable cause, and was signed by Cory Prober, Principal of CTE at John Adams High School site for District 79. No law,

rule or regulation has ever been seen at any time that gives authority to any Principal to sign his/her name to the Notice titled as cited above.

20. On or about May 3, 2016 Plaintiff received a letter from OCR saying that his claims were being investigated, pursuant to Title VI of the Civil Rights Act of 1964 as amended 42 U.S.C. §2000d et seq., and its implementing regulation at 34 C.F.R. Part 100:

"Please be advised that the NYCDOE may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process."

21. On or about May 11, 2016, Plaintiff's Attorney Jonathan Behrins sent a letter to Arbitrator Leah Murphy giving his notice of appearance and also requesting a stay due to the ongoing investigation of OCR on the same charges as filed against Plaintiff at the 3020-a hearing. Murphy denied this request, and moved forward with the hearing, ready to terminate Plaintiff without proper determination of probable cause, and without obtaining subject matter jurisdiction.

22. On May 12, 2016 Plaintiff submitted an Affidavit wherein he cited his objection to the manner in which his charges were filed without a vote in an Executive Session, and he stated for the record that he did not waive his right to the procedure mandated in Education Law 3020-a(2)(a). Murphy ignored this Affidavit.

23. On May 16, 2016 Plaintiff submitted a Motion To Dismiss For Lack of Subject Matter Jurisdiction, citing the lack of an Executive Session to determine probable cause. This is the same Motion which was submitted in the case of Rosalie Cardinale. Judge Desmond Green ruled that the charging process followed by the Department in NYC 3020-a without the Executive Session and vote on probable cause. Judge Green wrote,

" The DOE's failure to make a finding of probable cause and adhere to the procedural protections guaranteed to Petitioner in Education Law § 3020-a violates Petitioner's due process rights and violates New York's strong public policy protecting the integrity of the tenure system."

(p. 10, Judge Green's decision)

24. Murphy ignored the Affidavit, the Motion To Dismiss, and all the arguments used in support of Plaintiff's tenure rights. His termination was a done deal before the hearing even began on June 8, 2016.

25. Murphy would not allow Plaintiff any access to his emails in his DOE email address, and terminated Plaintiff in a decision dated December 9, 2016 in which she substantiated Specifications 1, 2, 3, 4, 5, 6, and did not sustain charges 7-9. Her final conclusion was that no remediation for Plaintiff's horrific acts was possible.

26. The invalid and biased decision of Arbitrator Murphy may be seen in the Department's errors in procedural and substantive due process whereby Plaintiff's tenure rights to fairness and Just Cause were ignored. There was no Just Cause for termination in this case, and Murphy ignored the improper determination of probable cause in this case as well as the requirement to base any penalty on the standard of progressive discipline.

27. In City School District of the City of New York v. McGraham, the Court of Appeals stated, "where, as here, parties are subject to compulsory arbitration, the [3020-a decision] must satisfy an additional layer of judicial scrutiny – it must have evidentiary support and cannot be arbitrary and capricious." 3020-a Arbitration in New York City, particularly as it is practiced in employment law, is an unfair system that is forced or imposed on employees while disregarding their civil rights and liberties in favor of an

13

abbreviated, and at times perverse, form of justice. The New York City Department of Education 3020-a Arbitration lets employers' contract around the procedural and substantive protections enjoyed in court. Through an employment contract, an employer can limit or eliminate an employee's access to discovery, shorten the statute of limitations for claims, and create the risk that the plaintiff may have to pay the defendant's attorney fees. All of this happens in a forum that, because of the deferential standard accorded to arbitration awards, is unaccountable to appeal or to the law.

28. Plaintiff was deprived of his procedural rights due to the neglect of Murphy in recognizing and addressing 3020-a law and the mandate of a vote in an Executive Session to determine probable cause. Murphy went along with the denial of Plaintiff's Motion To Dismiss, because she refused to see that even if the Department's Chancellor Carmen Farina was given the authority to prefer charges against Plaintiff, the Education Law Section 3020-a still mandated a vote on probable cause in an Executive Session before the Plaintiff was served the charges. In NYC there is no Executive Session or vote on probable cause, and no reason why there is no such meeting and vote. In the Plaintiff's case, no reason for this omission by Chancellor Farina was ever given.

29. 3020-a arbitration is set up as a forum to discuss the misconduct against students, or the incompetency of a teacher in the classroom. Arbitrators have ruled that teachers brought to 3020-a must be allowed to defend themselves against false and frivolous charges by the submission of student records, grades and outcomes. Island Trees v Butcher, 61 A.D.2d 1011; 402 N.Y.S.2d 626; 1978 N.Y. App. Div. LEXIS 10645, March 13, 1978:

" The court held that any degree of confidentiality accorded to the students' records had to yield to the teacher's right to prepare his defense to the charges made against his reputation and his competence in his profession."

Here, there was never any question raised by anyone that Plaintiff was not an excellent teacher.

30. Murphy had a high standard to meet for a penalty of termination and the record shows that she did not meet the standard of care necessary to justify her award. The burden fell on the New York City Department of Education ("Department") to prove that Plaintiff could *never* be a professional or an acceptable teacher in *any* classroom, *ever again, were proven, and termination was the appropriate remedy.* In other words, despite a stellar career history, Plaintiff actually was an insubordinate miscreant, and could not be in a classroom ever again, and he could not provide a minimally acceptable learning experience for students of any age. All of the claims of the Department at the 3020-a were left unproven.

31. Murphy's conclusion is arbitrary, capricious, and not rational. The hearing itself was a prima facie case of malicious prosecution that had no basis in law or fact. The record evidence shows that Plaintiff had a consistent dedication to reaching out to all of the students in his classes.

32. Without objective standards and unchecked authority leading to violations of the UFT Collective Bargaining Agreement ("CBA") and policies agreed upon by the UFT and DOE, getting a teacher charged is not very difficult. All the administrators with malice have to do is add vague descriptions to the opinions given in Specifications which may or *may not* be valid, in order to deprive Plaintiff of his protected interest without a lawful statutory finding or factual evidence. Because any performance evaluation scheme

15

contains an implicit definition of good teaching, fair treatment requires that those implicit standards concerning knowledge, competence, and skills be made explicit and known to all teachers, that the measurements of good teaching be valid and reliable and be made by qualified and competent evaluators, and that teachers rated unsatisfactory be given sufficient remedial assistance over time and a reasonable opportunity to correct deficiencies and improve. This did not happen in this case because the DOE secretly denied unalienable rights due to Plaintiff. The DOE Internet Policy says nothing about sending dropbox email attachments about matters of public concern as being labelled "misconduct".

33. Without predetermined standards against which teaching performance is to be measured, performance standards are assembled on an ad hoc basis to suit the circumstances of particular cases or even on a post hoc basis to justify administrative action already taken. The teacher must struggle blindly towards undefined and unknown standards of conduct. The Department's witnesses were clearly unable to judge the emails of Plaintiff even if a standard for these emails existed.


### FIRST CAUSE OF ACTION
**Violation/Interference with Constitutionally Protected Rights – 1st, 4th, 5th, & 14th Amendments; 42 U.S.C §1983 et seq.; Freedom of Speech and Association; Due Process and Equal Protection Rights;**

34. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 33 as though fully set forth herein.

35. The conduct and actions of Defendants in retaliating against Plaintiff and subjecting him to ethical misconduct, violations of due process, and equal rights under the U.S.

Constitution and the laws of the State and City of New York, were and continue to be unlawful, oppressive and a malicious attempt to retaliate against him in violation of 42 U.S.C §1983, the First, Fourth, Fifth and Fourteenth Amendments to the Constitution, Civil Rights Law §75-B, Article I, § 8 of the New York State Constitution, and 28 U.S.C. §1331, 28 U.S.C §1367, Judiciary Codes of Conduct, Judiciary Law §487, and other State law claims so close in definition and effect to the Federal claims brought herein as to be included in this Complaint.

36. Defendants' infringement upon and violation of Plaintiff's rights protected under the statutes listed above was and is intended to harm Plaintiff.

37. Defendants' conduct and actions are intentional, malicious, taken with deliberate indifference and or reckless disregard for the natural and probable consequences., without lawful justification or reason.

38. As a direct result of Defendants' actions described herein, Plaintiff has suffered and continues to suffer trauma, emotional distress, mental anguish, loss of income, and loss of potential employment anywhere.

39. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish  and is entitled to damages sustained to date and continuing with damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**Intentional and Negligent Infliction of Emotional Distress , Verbal Harassment, With Unjustified Threats of Future Harm; Section 767 of the Restatement (Second) of Contracts; Stigma Plus**

40. Plaintiff repeats and re-alleges each of the allegations as set forth above in paragraphs 1 through 39 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

41. Plaintiff was subjected to emotional and psychological dangers and intimidation. Plaintiff has been subjected to extreme and outrageous conduct by Defendants, whose intent is to cause – or recklessly disregard the substantial probability of causing – severe emotional distress; severe emotional distress to the plaintiff is shown to be proximately caused by the Defendants' conduct; damages have been severe. These acts created an unreasonable risk of causing the Plaintiff emotional and physical distress; the Plaintiff's distress was foreseeable; the defendants' conduct was the cause of the Plaintiff's distress; and facts show there is a breach of direct duty of care to the Plaintiff.

42. As a result of this retaliation, intimidation, and abuse, Plaintiff has been irrevocably harmed both emotionally and physically, and demands judgment against Defendants an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

43. Plaintiff repeats and re-alleges each of the allegations as set forth above in paragraphs 1 through 42 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

44. By setting up a charging process that secretly denies the procedures cited in Education Law 3020-a(2)(a) only in New York City and not elsewhere in New York State, Plaintiff has been harmed by the arbitrary and irrational actions of his Arbitrator who ignored his tenure rights in order to curry favor with the NYC DOE.

45. Arbitrator Murphy acted in bad faith to benefit herself financially while ignoring the denial of tenure rights and the Constitutional rights due Plaintiff pursuant to the Law and his UFT contract, all with the permission of the Defendants.

### FOURTH CAUSE OF ACTION
### 42 U.S.C. §1983 – STATE AND MUNICIPAL VIOLATIONS;
### Deprivation of Rights Under Color of Law;
### Violations of Education Law 3020-a and
### New York State Civil Service Law § 75-b(1)(b).

46. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 45 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

47. Defendants, acting under color of law, have engaged in a course of action and behavior rising to the level of a policy and condoned practice, and this has deprived Plaintiff of his rights secured by the Constitution and laws in violation of 42 U.S.C. §1983 as well as NY State Civil Service Law 75-b(1)(b).

48. It can be said that to condone lies, false documentation, retaliation and other such acts is contrary to Municipal Law and Public Officers Law; in this matter, Education Law 3020-a was violated in that there was no proper determination of probable cause.

49. At the Plaintiff's 3020-a arbitration hearing reviewed herein, the New York City Department of Education ("employer") bore the burden of proving the charged misconduct by a preponderance of the evidence, failed to meet this burden, and failed to address the violation of rules, regulations and laws pursuant to Education Law 3020-a(2)(a) which requires a vote in an Executive Session by the school board before the [Respondent] received the specifications. Matter of Martin v Ambach, 67 N.Y.2d 975, 502 N.Y.S.2d 991 (1986).

19

50. As this Executive Session never took place, and as Principal Prober found probable cause without any authority to do so, Arbitrator Leah Murphy never had subject matter jurisdiction to proceed with a hearing.

51. As a tenured teacher, Plaintiff possessed a constitutionally protected property interest in his position of employment which could not be diminished in any manner without being accorded substantive fair hearing and due process rights, as well as a just and fair penalty for proven misconduct. See Cleveland Board of Educ. V Loudermill, 470 U.S. 532, 105 S. Ct. 1487 (1985); Kinsella v Board of Educ. Of Central School District No. 7, 378 F. Supp. 54 (W.D.N.Y. 1974); Matter of Elmore v Plainview-Old Bethpage Central School District, Board of Education, 273 A.D.2d 307, 708 N.Y.S.2d 713, 714 (2d Dep't 2000) (stating that tenured teacher has protected property interest in his position which raises due process considerations whenever teacher is faced with termination); Matter of Soucy v Board of Educ. Of North Colonie Central School Dist. No. 5, 41 A.D.2d 984, 343 N.Y.S.2d 624 (3rd Dep't 1973) (stating that right of tenured teachers to a fair hearing and due process were substantive rights which could not be denied); Ricca v Bd of Ed., New York City 62 A.D.2d 987 (1978).

52. A tenured teacher cannot be disciplined or removed without Just Cause. The "Just Cause" standard encompasses seven (7) elements, all of which must be proven to justify the imposition of discipline upon a pedagogue:

(1) proper and timely notice to the employee of the rules and procedures with which the employee is expected to comply and the possible or probable consequences of the employee's failure to comply with the rules and procedures;

(2) reasonable rules and orders must not conflict with either a provision of the collective bargaining agreement or with established past practice, reasonably relate to legitimate management objectives, cannot be arbitrary, capricious or discriminatory, and must not purport to control how an employee lives his/her private life;

(3) timely and thorough investigation wherein the employer promptly informed the employee of the charges against her and the employee was given a chance to tell her side of the story before the imposition of disciplinary charges;

(4) fair investigation conducted in an objective manner that gathered and reviewed all relevant facts;

(5) proof of the employer meeting the burden of proving the charges preferred against the employee by a preponderance of the evidence;

(6) equal treatment – the employer applied the rules, procedures, orders and penalties even-handedly and equally to all employees;

(7) penalty – the degree of discipline which the employer seeks to have imposed must be reasonably related to the seriousness of the employee's proven offense and the record of the employee in his service with the employer.

See Enterprise Wire Co., 46 LA 359 (Daugherty 1966); Adolph Coven, Susan Smith, and Donald Farwell, Just Cause: The Seven Tests (BNA Books, 2006).

53. The statute of tenure rights cannot be changed, altered, or in any way abrogated by an arbitrator, thus Defendants did not have the jurisdiction to pursue a 3020-a arbitration, or permit the pursuit of any of the charges alleged in this matter against the Plaintiff.

Plaintiff is now suffering and will continue to suffer irreparable injury and monetary

damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Abuse of Process; Improper Determination of Probable Cause

54. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 53 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

55. Defendants conspired to deprive Plaintiff of his First, Fourth, Fifth and Fourteenth Amendment rights, and jointly caused such deprivation of rights by acting in concert to unlawfully bring harm, distress, and economic ruin to Plaintiff as described above.

56. Such actions by Defendants denied Plaintiff equal protection under the law, and his rights are guaranteed under U.S.C. §§ 1983, the Fourteenth Amendment of the US Constitution, State and Taylor Law protections.

57. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in an amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court enter judgment and an Order:

(a) declaring that Defendants' acts violated Plaintiff's rights as secured by federal, state, and city law prohibiting retaliation in employment as well as protecting his tenure rights pursuant to the public policy of New York State and the contractual rights under New York City Taylor Law;

(b) Enjoining Defendants from any further acts adversely affecting Plaintiff's

name, employment history and charges, rights and privileges;

(c) Compensatory damages to compensate Plaintiff for breach of contract, economic loss, damage to name, profession, career and reputation, pain and suffering, emotional distress and mental anguish, embarrassment, indignity, and dislocation, in an amount to be determined at trial;

(d) Punitive damages against the Defendants; and

(e) For such other and further legal, equitable or other relief as the Court deems just and proper.

<u>JURY TRIAL IS DEMANDED</u>

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 19, 2018

Respectfully Submitted,

Rupert Green



**The University of the State of New York**
The State Education Department
Teacher Tenure Hearing Unit
EBA Room 981
Albany, New York 12234

Ph: (518) 474-3021
Fax: (518) 402-5940

*(06/12)*

## Notice of Determination of Probable Cause on Education Law §3020-a Charges

| Instructions: | This Notice must be served on the tenured employee along with a copy of the Education Law §3020-a charges, the Rights of Tenured Employees form and the Hearing Request/Waiver form. |
|---|---|

### Tenured Employee Information

| Name | Rupert Green |
|---|---|
| Address | 205-26 113th Ave |
| Address | |
| City, State, Zip | St. Albans, NY 11412 |

### Notice to Tenured Employee

| Date Charges Filed: | 4/22/16 | Date of Executive Session: | |
|---|---|---|---|

Please be advised that at a meeting in executive session on the above date the school district identified herein has found that there is probable cause for Education Law §3020-a charge(s) against you. The specific charges are attached to this form. Within ten (10) days of receipt of these charges, you must elect to request a hearing before an impartial hearing officer, or waive your right to such a hearing. Should you fail to so request or to waive your right to a hearing within the specified ten days, the district clerk or the secretary of the board of education will notify both you and the Commissioner of Education that a waiver has been deemed to have occurred and that the board of education will meet to determine the case and fix the penalty or punishment, if one is to be imposed.

### School District Information

| District Name | District # 79- M 645 at John Adams High School Q480 | | |
|---|---|---|---|
| Address | 321 East 96th Street | Phone | 212-369-8800 |
| Address | | Phone 2 | |
| City, State, Zip | New York, NY 10128 | Fax | |
| Contact Name | Principal Corey Prober | Email | |

### Authorized Signature

| Name | *(signature)* | Date | 4/22/16 |
|---|---|---|---|

# THE BEHRINS LAW FIRM PLLC
## 1110 SOUTH AVENUE (SUITE 402), STATEN ISLAND, NEW YORK 10314

TELEPHONE (718) 447-5540
FACSIMILE (718) 816-5483

BRUCE G. BEHRINS PLLC
JONATHAN B. BEHRINS PLLC *†
SUSAN R. SCHNEIDER PLLC

JASON KATZ PLLC*

LEWIS WERB
General Counsel Emeritus
1927-2011

*New York and New Jersey Bars
†Washington, D.C. Bar

May 11, 2016

Arbitrator Leah Murphy
*Leahmurphylaw@gmail.com)*

Ms. Laura Brantley
*LBrantley@schools.nyc.gov*

### *Rupert Green*

Dear Arbitrator Murphy and Ms. Brantley:

Please be advised that I have been retained by Rupert Green, respondent in a 3020-a matter.

I write because I received the attached, self-explanatory letter from the United States Department of Education, Office for Civil Rights, which will be investigating the same allegations that are the subject of the 3020-a proceeding. It would seem to make sense for the NYC DOE to refrain from the hearing being conducted until such time as the US DOE reports on its investigation.

I am available for a telephone conference to discuss the matter.

Very truly yours,

Jonathan B. Behrins

JBB:th

cc:     Keereen Evans McKay, Esq.
        *KEvansMcKay@schools.nyc.gov*

        Mr. Rupert Green
        *educateme5@yahoo.com*

        Betsy Combier, Esq.
        *betsy.combier@gmail.com*



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

May 2, 2016

Rupert Green
205-26 113 Avenue
Queens, New York 11412

Re:     Case No. 02-16-1239
        New York City Department of Education

Dear Mr. Green:

On March 14, 2016, the U.S. Department of Education, New York Office for Civil Rights (OCR) received the above-referenced complaint you filed against the New York City Department of Education (the NYCDOE).   You alleged that the NYCDOE retaliated against you for your previous advocacy, including filing an OCR complaint, when the Principal of the School of Cooperative Technical Education located in District 79 placed a disciplinary letter in your file on or about March 2, 2016, for violating a NYCDOE email policy.

Based on the information you provided in your written complaint, OCR has determined that your allegation is appropriate for investigation.

OCR is responsible for enforcing Title VI of the Civil Rights Act of 1964 (Title VI), as amended, 42 U.S.C. § 2000d et seq., and its implementing regulation at 34 C.F.R. Part 100, which prohibit discrimination on the basis of race, color or national origin in programs and activities receiving financial assistance from the U.S. Department of Education (the Department).   The NYCDOE is a recipient of financial assistance from the Department.   Therefore, OCR has jurisdictional authority to investigate this complaint under Title VI.

The regulation implementing Title VI at 34 C.F.R. § 100.7(e), provides that:

> No recipient or other person shall intimidate, threaten, coerce or discriminate against any individual for the purpose of interfering with any right or privilege secured by regulations enforced by OCR or because one has made a complaint, testified, assisted or participated in any manner in an investigation, proceeding or hearing held in connection with a complaint.

Page 2 of 2 – Case Number 02-16-1239

Because OCR has determined that it has jurisdiction and that the complaint was filed in a timely manner, it is opening this allegation for investigation. Please note that opening this allegation for investigation in no way implies that OCR has made a determination with regard to its merits. During the investigation, OCR is a neutral fact-finder, collecting and analyzing relevant evidence from you, the recipient, and other sources, as appropriate. OCR will ensure that its investigation is legally sufficient and is dispositive of the allegation, in accordance with the provisions of Article III of OCR's *Case Processing Manual.*

OCR's goal is the prompt and appropriate resolution of the allegations contained in a complaint. OCR offers, when appropriate, an Early Complaint Resolution (ECR) process, similar to mediation, to facilitate the voluntary resolution of complaints by providing an early opportunity for the parties involved to resolve the allegation(s). Some information about the ECR process is contained in the publication entitled, "OCR Complaint Processing Procedures," which was enclosed with OCR's previous letter to you acknowledging your complaint. This information is also on OCR's website at http://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.html#II.

Also, when appropriate, a complaint may be resolved before the conclusion of an investigation after the recipient expresses an interest to OCR to resolve the complaint. In such cases, OCR obtains a resolution agreement signed by the recipient. This agreement must be aligned with the complaint allegations or the information obtained during the investigation, and it must be consistent with applicable regulations. Additional information about this voluntary resolution process may be found in the publication, "OCR Complaint Processing Procedures," which was enclosed with OCR's previous letter to you, acknowledging your complaint. This information is also on OCR's website at http://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.html#III.

Please be advised that the NYCDOE may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process. If this happens, you may file another complaint alleging such treatment.

Under the Freedom of Information Act, 5 U.S.C. § 552, it may be necessary to release this document and related correspondence and records upon request. In the event that OCR receives such a request, it will seek to protect, to the extent provided by law, personally identifiable information, which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

OCR will communicate with you periodically regarding the status of your complaint. If you are interested in resolving your complaint through OCR's ECR process or have any questions, please contact Ronald Scott, Compliance Team Attorney, at (646) 428-3820 or ronald.scott@ed.gov; or me, at (646) 428-3806 or felice.bowen@ed.gov.

Sincerely,

*Félice A. Bowen*

Félice A. Bowen
Compliance Team Leader

# AFFIDAVIT

STATE OF NEW YORK}

COUNTY OF NEW YORK }

**Rupert Green,** being of full age and duly sworn, deposes and says:

1. My name is Rupert Green, and I reside at 205-26 113 Ave. St Albans NY 11412

2. I am a tenured teacher in good standing in the New York City public school system.

3. On April    2016 I received charges of alleged misconduct which led to the compulsory arbitration pursuant to Education Law 3020-a addressed herein.

4. The documents included with my charges were titled "NOTICE OF THE DETERMINATION OF PROBABLE CAUSE PURSUANT TO EDUCATION LAW 3020-A" which advised me of the law in these proceedings, and the fact that probable cause must be decided at an Executive Session of the employing board. There was no date.

5. I gave notice to the UFT, immediately upon receipt of the charging papers in this matter, that I requested a hearing, however by agreeing to a hearing pursuant to §3020-a before a Hearing Officer I <u>did not, and do not now,</u> waive my legal rights to:

(1) submit to a Hearing which complies with due process for tenured teachers as stated in New York State Education Law **§**3020 and **§**3020-a;

(2) object to the process and substance of the manner in which probable cause was allegedly found, by the administration of my school, and not in an Executive Session as required by Education Law 3020-a.

6. Any Executive Session of a school board must be publicly noticed and must take place within a public meeting (Open meetings law Section 105) also noticed to the general public. Section 3020-a(2)(a) specifically refers to an "employing board" meaning a Board of Education, which does not currently exist in any school district within New York City; and this section of law also requires that a vote of the Board of Education is held, and a "majority" must vote in favor of probable cause:

*"Disposition of charges. Upon receipt of the charges, the clerk or secretary of the school district or employing board shall immediately notify said board thereof. Within five days after receipt of charges, the employing board, in executive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section. If such determination is affirmative, a written statement specifying the charges in detail, the maximum penalty which will be imposed by the board if the employee does not request a hearing or that will be sought by the board if the employee is found guilty of the charges after a hearing and outlining the employee's rights under this section, shall be immediately forwarded to the accused employee by certified or registered mail, return receipt requested or by personal delivery to the employee."*

7. As there is no Board of Education in New York City at this time, and no "vote" with the mandated specificity as to where, when, by whom and on what information did the mandated vote take place, as well as no mention of the authority of a "school district" to identify probable cause, the charges served on Respondent and the subject matter jurisdiction of the Arbitrator to proceed under 3020-a must be declared null and void.

8. The Department has not complied with the requisite jurisdictional predicates for filing disciplinary charges against Respondent and, as such, the Arbitration proposed is without subject matter jurisdiction to proceed.

9. The procedures memorialized in my above charging papers cite Education Law Sections 3020 and 3020-a, not Education Law Section 2590. The Hearing Officer thus has no jurisdiction to hear the charges attached herein.

Rupert Green

Sworn before me on

2ⁿᵈ day of May    2016

NOTARY PUBLIC

Jonathan B. Behrins
Notary Public, State of New York
No. 02BE6311608
Qualified in Richmond County
Commission Expires September 15, 20__

NEW YORK STATE EDUCATION DEPARTMENT
TEACHER TENURE HEARING UNIT
BEFORE: ARBITRATOR LEAH MURPHY,ESQ

---

In the Matter of the Disciplinary Proceeding of

DEPARTMENT OF EDUCATION          RESPONDENT'S MOTION TO DISMISS
OF THE CITY OF NEW YORK,

                    Complainant,


-against-

RUPERT GREEN,

                    Respondent-Tenured Teacher,

Pursuant to §3020-a of the *Education Law.*

---

JONATHAN BEHRINS, ESQ., an attorney duly admitted to practice law in the Courts of the State of New York, affirms under penalty of perjury:

1.    I am an attorney representing the Respondent in the above captioned matter, and I am fully familiar with the facts and circumstances surrounding the within matter.

2.    This MOTION is hereby submitted to Arbitrator Leah Murphy to dismiss the disciplinary action, *in toto,* against Respondent Rupert Green ("Respondent"), currently proceeding under Education Law §3020-a at 100 Gold Street, 3rd Floor, in New York  City.

3.    Respondent argues herein that the charges proffered  against him ("charges") do not comply with Education Law 3020-a (2)(a) in this matter as there has been no vote by the employing board on probable cause. The Principal, Corey Prober signed the charging papers after he, not the school board, found "probable cause" (see attached papers).  As Chancellor Carmen Farina has no vote as a member  of the Panel

(D-1)[3]

## <u>APPLICABLE DOE POLICIES AND REGULATIONS</u>

### DEPARTMENT INTERNET ACCEPTABLE USE AND SAFETY POLICY

**The Policy**

The NYC Department of Education ("Department") provides access to the Department's Internet Systems for its employees, agents, students, and volunteers, collectively referred to as "users" for educational and business purposes, in conformance with applicable law.  This internet Acceptable Use and Safety Policy ("policy") governs all electronic activity of users using and accessing the Department's internet systems, including Department e-mail and Department-provided access to the internet, and applies to the use of the Department Internet Systems both on and off Department property.

"The Department's Internet Systems" means Department-provided devises, internet connections . . . Department-provided e-mail accounts,  . . . A user is deemed to access and use the Department's Internet Systems through any electronic activity conducted on the Department's Internet System using any device (whether or not such device is a Department-provided device) regardless of the user's physical location.  . . .

Employee use is governed by this policy, Department regulations, policies and guidelines, the Department's employment policies, applicable collective bargaining agreements and applicable law.

By using the Department's Internet Systems, a user agrees to follow this policy and all applicable Department regulations, policies and guidelines.  All users must report any misuse of the network or internet or receipt of any communication that violates this policy to a teacher, supervisor or other appropriate Department personnel.

**Principles of Acceptable and Safe Internet Use**

**General**

Internet access and e-mail provided by the Department are intended for educational use, instruction, research and the facilitation of communication, collaboration, and other Department related purposes.  Users are subject to the same standards expected in a classroom and/or professional workplace.

**Monitoring and Privacy**

Users have no right to privacy while using the Department's Internet Systems.  The Department monitors users' online activities and reserves the right to access, review, copy, store, or delete

---

[3] Exhibits will be referred to as follows:  Joint Exhibits as "J-__";  Department of Education Exhibits as "D-__"; Respondent's Exhibits as "R-__"; and Hearing Officer Exhibits as "HO-__".   Citations to the transcript of the record in this proceeding will be referred to as "TR-__" followed by the page number.

any electronic communications or files. This includes any items stored on Department provided devices, such as files, e-mails, cookies, and Internet history. . . .

**Prohibited Uses of the Department's Internet Systems**

Users may not engage in any of the activities prohibited by this policy when using or accessing the Department's Internet Systems.

If a user is uncertain whether behavior is prohibited, he or she should contact a teacher, supervisor or other appropriate Department personnel. The Department reserves the right to take immediate action regarding activities that (1) create security and/or safety issues for the Department, students, employees, schools, network or computer resources, or (2) expend Department resources on content the Department determines lacks legitimate educational or Department content or purpose, or (3) the Department determines are inappropriate.

Below is a non-exhaustive list of examples of prohibited behavior:

1. Causing harm to others, damage to their property or Department property such as:

    - Using, posting or distributing profane, lewd, vulgar, threatening, or abusive language in e-mail messages, material posted on Department web pages, or professional social media sites;
    - Accessing, using, posting or distributing information or materials that are pornographic or otherwise obscene, advocate illegal or dangerous acts, or advocate violence or discrimination. If users inadvertently access such information, they should immediately disclose the inadvertent access in a manner specified by their school or central division office;
    - Accessing, posting or distributing harassing, discriminatory, inflammatory, or hateful material, or making damaging or false statements about others;
    - Sending, posting, or otherwise distributing chain letters or engaging in spamming;
    - Damaging computer equipment, files, data or the Department's Internet System in any way, including spreading computer viruses, vandalizing data, software or equipment, damaging or disabling others' electronic property, or engaging in conduct that could interfere or cause a danger of disruption to the Department's educational or business environment;
    - Using the Department's Internet System in a manner that interferes with the education of the user or others or the job duties of the user or others;
    - Downloading, posting, reproducing, or distributing music, photographs, video or other works in violation of applicable copyright laws. Any music, photographs and/or video should only be downloaded for Department, and not personal purposes. If a work specifies how that work may be used, the user should follow the expressed requirements. If users are unsure whether or not they can use a work, they should request permission from the copyright or trademark owner; or
    - Engaging in plagiarism. Plagiarism is taking the ideas or writings of others and presenting them as if they were original to the user. . . .