1

1

2    SUPREME COURT OF THE STATE OF NEW YORK

3    COUNTY OF NEW YORK:   TRIAL TERM PART 17

4    - - - - - - - - - - - - - - - - - - - - - - - - - -  X

5    REYNA ARROYO,

6                              Petitioner,

7           - against -

8    NYC BOARD/DEPT. OF EDUCATION,

9                              Respondent.

10   - - - - - - - - - - - - - - - - - - - - - - - - - -  X
     Index No. 100741-2018
11
                             November 27, 2018
12                           60 Centre Street
                             New York, New York 10007
13

14   B E F O R E:   THE HONORABLE SHLOMO S. HAGLER, Justice

15   A P P E A R A N C E S :

16   REYNA ARROYO
     Petitioner Pro Se
17   651 Tilden Avenue
     Teaneck, New Jersey 07666
18
     NEW YORK CITY LAW DEPARTMENT
19   Office of the Corporation Counsel
     100 Church Street
20   New York, New York 10007-2601
     BY:  ALANA R. MILDNER, ESQ.
21
     ALSO PRESENT:  Mariella Torres,
22                  Official Spanish Interpreter

23

24

25
                             Terry-Ann Volberg, CSR, CRR
26                           Official Court Reporter

```
1                        Proceedings
2               THE COURT:   Good morning.  Welcome.  I am
3       Judge Hagler.
4               I believe we have a Spanish interpreter here.
5               THE INTERPRETER:  Yes.
6               THE COURT:   Please state your name.
7               THE INTERPRETER:  Mariella Torres, Court
8       Interpreter, Spanish.
9               THE COURT:   Thank you so much for helping
10      out today.
11              THE INTERPRETER:   You're welcome.
12              THE COURT:   Your name, please.
13              MS. R. ARROYO:   Reyna Arroyo.
14              THE COURT:   Ms. Arroyo, are you ready to
15      proceed today?
16              MS. R. ARROYO:   Yes, sir, I am ready.
17              THE COURT:   Counsel, please state your name.
18              MS. MILDNER:   Alana Mildner, New York City
19      Law Department.
20              THE COURT:   Are you ready to proceed today?
21              MS. MILDNER:   Yes, your Honor.
22              THE COURT:   I have read the papers.  This is
23      an Article 75 proceeding wherein Ms. Arroyo --
24              THE INTERPRETER:   I am sorry, sir, I lost
25      track.
26              THE COURT:   This is an Article 75 proceeding
```

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

```
 1                       Proceedings
 2      wherein Ms. Arroyo is seeking to vacate the
 3      determination by the arbitrator.  The arbitrator found
 4      the specifications by the respondent to be mainly
 5      sustained.  The penalty unfortunately for Ms. Arroyo
 6      was termination.
 7                 Ms. Arroyo is challenging both the
 8      determination in the specifications, the findings of
 9      fact with regard to the specifications, and, more
10      importantly, the penalty which was termination.
11                 I have received --
12                 THE INTERPRETER:  I'm having a hard time
13      hearing you.
14                 THE COURT:  I will speak louder.
15                 I have received the papers in this case, and
16      now we are ready to proceed.
17                 Ms. Arroyo, do you want to tell me why I
18      should vacate the arbitrator's determination both as to
19      the findings and the penalty?
20                 Whenever you are ready, Ms. Arroyo.
21                 MS. R. ARROYO:  I have here an oral argument
22      which I would like to read.  If you will allow me to, I
23      have my friend and my son.  Perhaps one of them could
24      read this.
25                 THE COURT:  She wants her son to read it?
26                 THE INTERPRETER:  Yes, or her friend, in the
```

4

|  |  |
|---|---|
| 1 | Proceedings |
| 2 | back. |
| 3 | THE COURT:   I prefer that Ms. Arroyo speak |
| 4 | for herself, I think. |
| 5 | THE INTERPRETER:   It's written in English. |
| 6 | The document she's holding is written in English. |
| 7 | THE COURT:   I assume if it's written in |
| 8 | English you can read it. |
| 9 | MS. R. ARROYO:   Okay.  I may read it. |
| 10 | THE COURT:   I will allow you some leeway. |
| 11 | Normally I don't allow prepared written speeches, but |
| 12 | since you are not represented by counsel, I will give |
| 13 | you a little leeway. |
| 14 | The reason that I have oral argument is not |
| 15 | merely to reread your papers.  I have read your papers. |
| 16 | I read it.  I know what your papers say.  I know what |
| 17 | the respondent's papers say.  I do my homework.  I read |
| 18 | the determination by the arbitrator.  I am ready to |
| 19 | proceed. |
| 20 | I want you to really highlight some of your |
| 21 | main arguments and persuade me why I should vacate the |
| 22 | arbitrator's determination.  If you want to read, I |
| 23 | will allow you to read because, as I said earlier, I |
| 24 | will give you a lot of leeway because you are not |
| 25 | represented by counsel.  This is important, an |
| 26 | important decision for you, and I will accommodate you |

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

5

|    |                                                                 |
|----|-----------------------------------------------------------------|
| 1  | Proceedings                                                     |
| 2  | as much as I can.                                               |
| 3  | MS. R. ARROYO:   So then I shouldn't read it,                   |
| 4  | right?                                                           |
| 5  | THE COURT:   Sorry?  I didn't say that.  What                   |
| 6  | I said was, I prefer if you highlight the major points.         |
| 7  | If you would like to read, I will accommodate that.  I          |
| 8  | am giving you a choice.  I am not restricting you.              |
| 9  | I want you to have your opportunity here in                     |
| 10 | court, it's going to be one time, and I want you to             |
| 11 | make the most of that one time.                                 |
| 12 | MS. R. ARROYO:   Okay.  I am going to read                      |
| 13 | it.                                                             |
| 14 | Thank you, your Honor, for this opportunity                     |
| 15 | to address the unjust penalty handed down at my 3020-a          |
| 16 | by Arbitrator Lisa Pollack.                                     |
| 17 | The basis of the petition is essentially                        |
| 18 | three arguments.  The first is a procedural argument            |
| 19 | that the New York City Department of Education --               |
| 20 | THE COURT:   You have to say it slower and                      |
| 21 | you have to pronounce it a little better.  I understand         |
| 22 | what you are saying, but I don't have to type it.               |
| 23 | MS. R. ARROYO:   New York City Department of                    |
| 24 | Education circumvented and skirted procedural                   |
| 25 | safeguards that are in place before a teacher is given          |
| 26 | any penalty.                                                    |

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

6

Proceedings

```
 1                       Proceedings
 2               Second is the apparent --
 3               THE COURT:   You are doing it again.
 4               MS. R. ARROYO:   -- is the apparent improper
 5      motivations of the Department inferred from --
 6               THE INTERPRETER:   Inferred.
 7               THE COURT:   Let's stop for a second.
 8               Ms. Arroyo, what you are saying is
 9      incomprehensible.  I can't understand you.  You are
10      saying very big words that you are having difficulty
11      enunciating, and it's actually blurring your arguments.
12      The reporter can't take it down.  I can't understand it
13      as well.  I understand the first argument, but the
14      second one, I didn't hear a word you said.
15               I normally don't do this.  If you want your
16      son to read it, I will allow your son to read it if you
17      want to give me the highlights, but we are not making
18      progress this way because I don't understand it.
19               Counsel.
20               MS. MILDNER:   Your Honor, I would ask that
21      somebody else read it, the interpreter, perhaps, or
22      that Ms. Arroyo submit it.
23               THE COURT:   Do you want the interpreter to
24      read it?  How is that?  Would you like to do that?
25               THE INTERPRETER:   Okay.
26               THE COURT:   This is not a bad idea.
```

Proceedings

1
2          THE INTERPRETER:   Second is the apparent
3    improper motivations of the Department inferred from
4    inconsistencies, implausibilities, and contradictions
5    in the record.
6              Third is objective data which shows that I am
7    actually an effective teacher.
8              The procedural errors are rampant in this
9    case starting with the violation of Education Law
10   3020-a(2)(a) with the omission of an Executive Session
11   and vote on probable cause by the Panel For Educational
12   Policy.  Arbitrator Pollack was appointed to hear this
13   case pursuant to ED Law 3020-a, but the Department
14   never brought my charges to an Executive Session for a
15   vote on probable cause.
16             The Department insists that the Department
17   gave the Chancellor all the duties of the school board.
18   Okay, then the Chancellor should have held an Executive
19   Session and vote on Probable Cause as mandated by the
20   law.
21             She, Former Chancellor Carmen Farina, never
22   did this.  Thus, Arbitrator Pollack had no
23   subject-matter jurisdiction to make any decision in my
24   case.
25             Judge Desmond Green ruled in the Article 75
26   Petition brought by Rosalie Cardinale in Richmond

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

8

Proceedings

1

2      County Supreme Court, Index Number 85165/2017 on

3      March 9, 2018, that "The Court of Appeals speaking on

4          the necessity of teachers tenure stated:   Tenure is a

5          legislative expression of a firm public policy

6          determination that the interests of the public in the

7          education of our youth can best be served by a system

8          designed to foster academic freedom in our schools and

9          to protect competent teachers from the abuses they

10         might be subjected to if they could be dismissed at the

11         whim of their supervisors.   In order to effectuate

12         these convergent purposes, it is necessary to construe

13         the tenure system broadly in favor of the teacher, and

14         to strictly police procedures which might result in the

15         corruption of that system by the manipulation of the

16         requirements for tenure."   Ricca v. Board of Education,

17         47 NY2d 385, 391 (1979).

18              Judge Green added, "The DOE's failure to make

19      a finding of probable cause and adhere to the

20      procedural protections guaranteed to petitioner in

21      Education Law 3020-a violates petitioner's due process

22      rights and violates New York's strong public policy

23      protecting the integrity of the tenure system."

24      Decision, p. 10.

25              "This Court finds the DOE's interpretation of

26      the statutory framework, even had they presented

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

```
1                        Proceedings
2      evidence permitting such delegations, runs afoul of the
3      clear legislative intent.  The concentration of all
4      disciplinary authority into the hands of a single local
5      administrator creates the very 'arbitrator imposition
6      of formal decision' the legislature sought to prevent
7      when enacted Education Law 3020-a.  (Holt v. Board of
8      Ed of Webutuck Central School Dist., 52 NY2d 625, 632,
9      [1981].  (Decision, p. 11-12)
10                     Judge Green then granted Ms. Cardinale's
11     Verified Petition and vacated her termination.  I
12     submitted the exact same Motion to Dismiss For Lack of
13     Subject-Matter Jurisdiction in my hearing, your Honor,
14     and, therefore, I ask you to do the same.
15                     It is clear from the record that the
16     circumstances and facts presented in this matter did
17     not deserve any kind of penalty.  Arbitrator Lisa
18     Pollack, Esq. was far from neutral in the 3020-a
19     arbitration.  She neglected to address the fact that my
20     prior record of teaching for 19 years was exemplary,
21     and I had never been disciplined before.
22                     Her decision to terminate my employment is
23     based solely on the nonfinal opinions of the Principal
24     and Assistant Principal in and observations.  What is
25     competency?  To Arbitrator Pollack, who willingly and
26     recklessly refused to honor my tenured status,
```

1                          Proceedings

2    incompetency is anything that the principal said it

3    was.  She terminated me on hearsay alone which is not

4    permitted in these proceedings.

5              The Department did not bring in any grades of

6    students or outcomes of student performance.  Thus,

7    there is no evidence that I could not teach my

8    students.  In fact, my student witnesses testified that

9    I made a very big impact on their learning.  Pollack

10   was not interested.  She was predisposed to terminate

11   me from the first day of hearings.  I had no voice.

12             Danielson mandates that an observation is a

13   minimum of 15 minutes.  What can an administrator see

14   in 15 minutes of a lesson?  Very little.  As I wrote in

15   my Verified Petition, observation reports are only

16   opinions.  There are no facts or data in observation

17   reports.  This was the ruling in the Kings County case

18   called Elentuck v. Green cited in my petition.

19             Arbitrator Pollack ignored the mandates for

20   "just cause, strict scrutiny as a standard of review,

21   and progressive discipline," and she also showed no

22   concern that the Department did not reach the high

23   standard for a preponderance of the evidence in this

24   matter.

25             One more point I would like to make here

26   today.  I was charged with 11 observations.  Assuming

```
1                          Proceedings
2        each observation lasted 20 minutes as an average, over
3        the three charged years I was assessed for 120 minutes
4        by the administrators who wanted to terminate my job,
5        but three years of teaching is more than 222,000
6        minutes.  Therefore, your Honor, Arbitrator Pollack
7        terminated my employment because of the hearsay,
8        nonfinal opinions from 120 minutes.  Does this make
9        sense?  No, it does not.
10              Arbitrator Pollack used only the biased
11       opinions and hearsay statements of the administrators
12       over the straightforward factual information given in
13       testimony by me and my witnesses.  This is
14       unconscionable and cause to vacate the baseless penalty
15       in favor of a less extreme penalty or none at all.
16              Thank you, your Honor.
17              THE COURT:   Okay.  Thank you.
18              Ms. Arroyo also handed me a written version
19       of the oral argument which I read.  I listened to it.
20       I believe counsel received a copy as well, correct?
21              MS. MILDNER:   Yes, your Honor.
22              THE COURT:   Ms. Arroyo, have you concluded
23       your argument?
24              MS. R. ARROYO:   I said everything here.
25              THE COURT:   Okay.
26              Counsel, opposition, please.
```

                         Proceedings

1
2            MS. MILDNER:   Your Honor, Ms. Arroyo has not

3    shown that Education Law 3020-a was violated in any way

4    at her hearing.

5            Regarding the procedural argument, I believe

6    it was Exhibits 5 and 6 to my answer --

7            THE INTERPRETER:   Could she go slower for

8    me?

9            THE COURT:   Speak a little slower.  It has

10   to be interpreted as well.

11           MS. MILDNER:   I believe it was Exhibits 5

12   and 6 to respondent's answer which contained two

13   delegation memoranda.  One of those memorandum was

14   delegating authority from the Chancellor to the

15   Community School Superintendent, Ms. Nunez, the other

16   memorandum --

17           THE INTERPRETER:   I can't keep up with here.

18           THE COURT:   You really have to slow down a

19   little.

20           THE INTERPRETER:   Can I have the last portion

21   read back?

22           THE COURT:   Please.

23           (The testimony as requested was

24        read by the reporter.)

25           MS. MILDNER:   -- was delegating authority

26   from the Community Superintendent to principals.  So

| | |
|---|---|
| 1 | Proceedings |
| 2 | here Principal Timothy Sigerson did have the authority |
| 3 | to bring charges. |
| 4 | Addressing any arguments regarding any sort |
| 5 | of improper motivation, petitioner has not demonstrated |
| 6 | that there was any individual who was out to get |
| 7 | petitioner.  There were five administrators who |
| 8 | testified at the hearing, two principals, two assistant |
| 9 | principals, and a field supervisor from the ATR |
| 10 | Reserve, and all of them testified consistently |
| 11 | regarding Ms. Arroyo's classroom performance. |
| 12 | Although Ms. Arroyo states that Arbitrator |
| 13 | Pollack wanted to terminate petitioner from the first |
| 14 | day of the hearing, there is nothing in the record to |
| 15 | indicate any bias on the part of Arbitrator Pollack nor |
| 16 | has petitioner pointed to anything that would show that |
| 17 | Hearing Officer Pollack administered the hearing in any |
| 18 | way other than a fair way. |
| 19 | Then regarding petitioner's third point, |
| 20 | under the evaluation system that the Department of |
| 21 | Education uses, informal observations can be a minimum |
| 22 | of 15 minutes, and depending on the option that a |
| 23 | teacher chooses, teachers are observed six times per |
| 24 | year.  So there is nothing that was done in observing |
| 25 | Ms. Arroyo that was against state law or the procedures |
| 26 | of the Department of Education. |

14

1                         Proceedings

2                  Moreover, the penalty does not shock the

3         conscience.  Ms. Arroyo engaged in a pattern of

4         ineffective instruction over the course of three school

5         years.  Additionally, upon being provided with

6         professional development opportunity, Ms. Arroyo's

7         teaching failed to improve to the level that would be

8         necessary for her to be an effective chemistry teacher.

9         Therefore, the penalty of termination is appropriate.

10                  I have nothing else, your Honor, unless the

11        Court has questions.

12                  THE COURT:   Ms. Arroyo, do you want to say

13        anything else as the last word?  You get reply.  Do you

14        want to say anything else in reply?

15                  MS. R. ARROYO:   Yes.

16                  The three years of teaching that I had, it

17        was the same person who observed me 15 minutes.  That

18        person would go in, would go out.  She didn't know what

19        happened before, what took place after those 15

20        minutes, the results of my students.  At the end of the

21        year my students' end results were good including that

22        they passed the regents exams.  That means that

23        somebody was teaching because regents -- I did not

24        grade the regents, somebody else graded the regents.

25                  THE COURT:   Have you completed your

26        presentation?

            Terry-Ann Volberg, CSR, CRR, Official Court Reporter

1                            Proceedings

2                 MS. R. ARROYO:    Yes.

3                 THE COURT:    Thank you.

4                 Stay here, please.  The parties have been

5        waiting for a decision on this matter.  I am going to

6        render a decision now.

7                 Let's set forth the standard by which the

8        Court decides these type of cases.  This is a

9        proceeding brought under Article 75 of the CPLR.  There

10       are narrow grounds to vacating an arbitrator's award.

11                Since the arbitration was mandatory, it also

12       implicates due process requirements under Article 78 of

13       the CPLR which provides a secondary layer of protection

14       in that the award cannot be arbitrary or capricious or

15       irrational under the circumstances.  The Court must

16       take into consideration the penalty by viewing it as

17       whether it is shocking to the conscience.

18                Petitioner essentially has three arguments.

19       The first one is a procedural argument.  Essentially

20       petitioner argues as she did before the arbitrator --

21                THE INTERPRETER:   That she?

22                THE COURT:  The petitioner argues as she did

23       before the arbitrator that the principal did not have

24       authority to propound charges, specifications under

25       Education Law 3020-a.  The arbitrator denied it

26       indicating that Educational Law Section 2590-h provided

```
1                          Proceedings
2         for delegation by the Chancellor to the district
3         superintendent who then delegated authority to the
4         local school principals.  In the record counsel
5         indicated such delegation memoranda was presented to
6         both the arbitrator as well as this Court that provides
7         for the requisite delegation of duties and
8         responsibilities from the Chancellor, to the
9         superintendents, to the local school principal.
10               I have read the decision and order of Justice
11        Desmond Green from Supreme Court County of Richmond
12        which was dated March 29, 2018.  Justice Green, for
13        one, did not indicate in the decision whether or not
14        the requisite memorandum was attached to the petition
15        or actually the answer to the petition which would
16        satisfy Educational Law requisites.  Moreover, there's
17        been countless decisions within the First Department, I
18        am not familiar with decisions of the Second
19        Department, that are contrary to the determination --
20               THE INTERPRETER:  That are what, sir?
21               THE COURT:  -- that are contrary to the
22        determination of Justice Green sitting in the Second
23        Department in Richmond County.  My recollection is that
24        I believe there's at least one Appellate Division
25        decision that has reviewed that issue in the First
26        Department.  It was one of my decisions that was
```

Proceedings

1
2        affirmed wherein I ruled that there can be delegation
3        of authority from the Chancellor to the superintendent
4        directly to the local school principals.  I can't
5        remember the name of the decision.  They affirmed my
6        decision.  There are many of my colleagues here in New
7        York County that have ruled in that manner.  That issue
8        is no longer a disputed issue.  When I first started
9        doing these Article 75s about four or five years ago
10       there were really no decisions on point.  Now there
11       have been a multitude of decisions all concurring that
12       such duties and responsibilities can be delegated by
13       the Chancellor.
14                 Let's move on to the second argument of Ms.
15       Arroyo.  Essentially the second argument challenges the
16       findings of the arbitrator.  The arbitrator in a
17       lengthy decision reviewed the witnesses credibility of
18       both petitioner's witnesses of which there were many, I
19       believe six or seven, and five witnesses from the
20       respondent.  The arbitrator reviewed and discussed each
21       of the respective witnesses, and found that
22       petitioner's witnesses were testifying truthfully, but
23       really had no ability to gauge the competency of Ms.
24       Arroyo's pedagogy.  In contrast, the arbitrator found
25       that the respondent's witnesses were properly trained,
26       did not exhibit or evince any bias towards Ms. Arroyo,

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

Proceedings

1    
2   citing an example wherein others that were similarly
3   situated were found to be effective and competent
4   teachers.
5         The case law is very clear that this Court,
6   even if it wished to do so, cannot substitute its
7   judgment, and review and change credibility findings of
8   an arbitrator.
9         Ms. Arroyo in her petition directly
10  challenges the arbitrator's ability to be impartial,
11  and states that the arbitrator had bias towards her.
12  The standard to show bias is a very high one.  The
13  petitioner fails to do so presenting no evidence of
14  bias other than --
15        THE INTERPRETER:  I would need the last
16  portion read.
17        THE COURT:  Read it back.
18        (The testimony as requested was
19     read by the reporter.)
20        THE COURT:  -- other than a determination
21  that terminates her employment.  The very arbitration
22  decision which is negative and does not support your
23  position is insufficient alone to demonstrate bias.  In
24  other words, the mere fact that the arbitrator ruled
25  against you does not give rise to an allegation of
26  bias.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

Proceedings

1
2          I just want to review the specifications, the
3     charges against Ms. Arroyo.  They reflect three
4     different years, 2014 to '15, 2015 to 2016, 2016 to
5     2017.  They span a period of November 12, 2014, 2015,
6     2016, and last, May 22nd, 2017.
7          There are 11 dates wherein the respondent had
8     charged the petitioner with failing to properly,
9     adequately, and effectively plan and execute lessons on
10    those dates.  We are not talking about one isolated
11    incident, we are not talking about two, we are not
12    talking about one year or even two years, we are
13    talking about three years of observations spread over
14    11 different dates, and three years of teaching that
15    was reviewed and observed.
16          That brings me to the third point of Ms.
17    Arroyo, that one cannot properly judge an individual
18    with 15 minutes of observations.  This is hardly 15
19    minutes.  This is a three year span of time.
20    Therefore, this Court cannot, even if it wished, change
21    the factual determinations by the arbitrator, and the
22    credibility findings as to the level of competence
23    during that lengthy period of time.
24          Let's move on to the real issue.  The
25    petitioner strenuously argues that the penalty shocks
26    the conscience and should be vacated.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

```
 1                          Proceedings
 2               I just want to read a portion of the
 3       arbitration award by the arbitrator with regard to the
 4       penalty.  I'm going to read the paragraph just above
 5       penalty because it gives background.  "Having found
 6       that the Department has proven respondent's
 7       incompetency, I must now look at remediation efforts.
 8       As set forth above, the evidence introduced documented
 9       professional development meetings, training, action
10       plans, some coaching offers, and feedback and
11       suggestions from numerous formal and informal
12       observation.  As of 2016 through 2017, respondent had
13       not improved in any appreciable way.  All of these
14       admonitions and opportunities were designed to improve
15       respondent's teaching performance.  The respondent's
16       own testimony clearly established that she knew and
17       understood that the department was concerned with her
18       pedagogy, and that they wanted her to follow their
19       suggestions to better her pedagogy.  It is also clear
20       that respondent was aware of the consequences if she
21       did not improve her pedagogy."
22               "Despite all of the efforts to warn her that
23       she was not actually teaching effectively, she
24       persisted in ignoring administration and supervisors,"
25       it should be suggestions, the typo says suggests, "and
26       continued in teaching lessons improperly."
```

<pre>
 1                        Proceedings
 2              I'm going to skip to the last line, sorry,
 3      the last paragraph on page 46.  "However, I have
 4      reviewed the observations and find the same pedagogical
 5      weaknesses again and again.  I find that the respondent
 6      adamantly resisted any suggestion that her practice
 7      needed improvement.  I find that the department made
 8      significant efforts to provide respondent with
 9      opportunities for professional development, and I find
10      the respondent consistently and adamantly resisted
11      those efforts.
12              While respondent argues there is no
13      progressive discipline here, she was made aware on
14      several occasions in the past three years that
15      discharge was a possibility if she failed to improve
16      her pedagogy.
17              I believe on the evidence before me that
18      there is no prospect that respondent could improve her
19      performance to an effective level if she is offered
20      further remediation.  She has not improved over three
21      years despite being under a TIP all three years.  Her
22      testimony showed that she does not believe that there
23      is any problem to her pedagogy, and there is no
24      indication that she will follow instructions under the
25      past TIPs.
26              If she were going to change, she would have
</pre>

```
1                          Proceedings
2       done so when she was put on notice that she was
3       vulnerable when she received TIP, and she would have
4       engaged in substantive discussions with administrators
5       in post-observation conferences.  She would have
6       submitted lesson plans for review with the
7       administrators which she did not.
8                  Termination is not a disproportionate penalty
9       when measured against the seriousness and harm to the
10      children.  I do not believe that a fine or suspension
11      would change her.  Accordingly, I determine that the
12      proper penalty in this case is termination.
13                 The arbitrator considered the specifications,
14      the observations, the opportunity and warning that
15      petitioner had to improve her pedagogy.  She was given
16      three year's worth of developmental training.  The
17      petitioner, according to the arbitrator, did not
18      improve in any appreciable manner.  Moreover, the
19      arbitrator found that remediation, further training,
20      would not be successful as the petitioner believes
21      adamantly that she needs no further improvement in her
22      pedagogy.
23                 The arbitrator found that the past
24      performance showed that she will not remediate and had
25      not made any effort to do so not even providing lesson
26      plans for the administrators to review.
```

1                           Proceedings

2              Given that petitioner had ample opportunity

3       for improvement over the course of three years, that

4       petitioner has not improved in any appreciable manner,

5       and that remediation would not be effective given her

6       adamant rejection that she needs improvement in the

7       areas of pedagogy, the arbitrator's determination and

8       penalty of termination does not shock one's conscience,

9       and was reasonable and rational under the

10      circumstances.   Therefore, this Court denies the

11      petition and dismisses the proceeding.

12              Have a good day.

13              Good luck in the future.

14              MS. MILDNER:   Thank you, your Honor.

15                            ***

16                   C E R T I F I C A T E

17      I, Terry-Ann Volberg, C.S.R., an official court reporter of

18      the State of New York, do hereby certify that the foregoing

19      is a true and accurate transcript of my stenographic notes.

20

21

                        Terry-Ann Volberg, CSR, CRR
22                      Official Court Reporter

23

24

25

26

           Terry-Ann Volberg, CSR, CRR, Official Court Reporter