UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RUPERT GREEN,                                            :

               Plaintiff,                   :        REPORT AND
                                                      RECOMMENDATION
                                            :
   -v.-
                                            :        18 Civ. 10817 (AT) (GWG)

THE DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK and CARMEN FARIÑA,   :

               Defendants.                  :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Rupert Green, a former teacher for defendant Department of Education of the

City of New York ("DOE") who was fired following a hearing in 2016, brings suit against DOE

and former DOE Chancellor Carmen Fariña alleging violations of his First, Fourth, Fifth, and

Fourteenth Amendment rights.  Green also brings claims under state law.  Defendants have

moved to dismiss the complaint.[1]  For the following reasons, defendants' motion should be

granted.

---

    [1]  See Notice of Motion to Dismiss, filed Feb. 4, 2019 (Docket # 14); Defendants'
Memorandum of Law in Support of Their Motion to Dismiss the Complaint, filed Feb. 4, 2019
(Docket # 15) ("Def. Mem."); Declaration of Assistant Corporation Counsel Shaina Wood in
Support of Defendant's Motion to Dismiss the Complaint, filed Feb. 4, 2019 (Docket # 16)
("Wood Decl."); Notice of Motion to Dismiss and Local Rule 12.1 Notice to Pro Se Plaintiff,
filed Feb. 4, 2019 (Docket # 17); Plaintiff's Opposition to Defendant's Motion to Dismiss, filed
Apr. 11, 2019 (Docket # 22) ("Pl. Opp."); Declaration in Opposition to Defendants' Motion to
Dismiss, filed Apr. 11, 2019 (Docket # 23); Declaration of Assistant Corporation Counsel Shaina
Wood in Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss the Complaint, filed
May 6, 2019 (Docket # 27).

I. <u>BACKGROUND</u>

    A. <u>Allegations in the Complaint</u>

For purposes of this motion we assume the truth of the allegations in the complaint.

From approximately February 2001 through April 2016, Green was employed as a tenured teacher with the DOE, specializing in teaching computer technology and Career Technical Education ("CTE").  Complaint, filed Nov. 19, 2018 (Docket # 1) ("Compl."), ¶ 2. Throughout his employment with the DOE, Green taught at the School of Cooperative Technical Education ("Coop Tech"), within District 79, which is a city-wide school district for non-traditional students who are preparing for General Educational Development tests.  <u>Id.</u>  Coop Tech is a multi-site high school, and Green was assigned to a location at John Adams High School.  <u>Id.</u>  During his tenure at Coop Tech, Green repeatedly used the school's email system to express his concerns regarding his belief that the secretary to the school's principal and a teacher at the school, who were married, "gave favors to each other yet had not . . . requested a waiver from the Conflict of Interest Board," in violation of Chancellor's Regulation C-100, Section IV. <u>Id.</u> ¶ 10.  He also used the email system to express his concerns regarding "the underfunding and negligence by the DOE of the CTE vocational programs in NYC."  <u>Id.</u>

On or about April 22, 2016, Green was charged with nine specifications of misconduct pursuant to N.Y. Educ. Law § 3020-a with sending "improper, harassing," emails to staff.  <u>Id.</u> at 2, 11 & ¶ 19.  He was served with a document titled "Notice of Determination of Probable Cause on Education Law § 3020-a," signed by Corey Prober, the principal of CTE at John Adams High School.  <u>Id.</u> ¶ 19.  The notice did not contain a date for any Executive Session held to determine probable cause.  <u>Id.</u>  A hearing was subsequently held before arbitrator Leah Murphy.  <u>See id.</u> at 2, 12 & ¶¶ 21-25.  Green was represented by counsel at the hearing, <u>see id.</u> ¶ 21, who requested a

2

stay of the hearing on account of a pending investigation by the Department of Justice Office of

Civil Rights initiated in response to a complaint Green had filed.  See id. ¶¶ 18 (second), 20-21.[2]

Counsel also filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction.  See id. ¶¶ 22-23.

Murphy denied Green's motion to dismiss.  Id. ¶ 24.  During the hearing, "Murphy would not

allow [Green] any access to his emails in his DOE email address."  Id. ¶ 25.  In a written

decision dated December 9, 2016, Murphy substantiated Specifications 1-6 brought against

Green, but dismissed Specifications 7-9, and recommended his termination.  Id. ¶ 25.  Green was

ultimately terminated from his employment.  See id. at 1.

     The complaint alleges that defendants violated Green's First, Fourth, Fifth, and

Fourteenth Amendments rights, and his rights under the New York State constitution.  Id. ¶¶ 34-

39, 43-45, 54-57.  The complaint also brings state law claims for intentional and negligent

infliction of emotional distress, harassment, and tortious interference with contract, id. ¶¶ 40-42,[3]

as well as a claim alleging that defendants violated N.Y. Civ. Serv. Law § 75-b(1)(b), id. ¶¶ 46-

53.

     B.  Procedural History Prior to the Filing of the Complaint

     The background of this lawsuit is reflected both in allegations in the complaint as well as

the opinion by Justice Arthur F. Engoron deciding an action brought by Green under Article 75

of the New York Civil Practice Law and Rules to challenge his dismissal following the section

---

     [2]  The complaint contains two paragraphs labeled "18" and two paragraphs labeled "19."
See Compl. at 11.  We identify them as either the "first" or "second" of these paragraphs.

     [3]  Green purports to bring a claim pursuant to "Section 767 of the Restatement (Second)
of Contracts."  See Compl. at 17.  The Restatement (Second) of Contracts does not contain a
"section 767."  However, section 767 of the Restatement (Second) of Torts pertains to tortious
interference with contract.  Accordingly, we construe the complaint as alleging a state law claim
for tortious interference with contract.

3020-a hearing, see Green v. N.Y.C. Bd./Dept. of Educ., No. 102017/2016 (N.Y. Sup. Ct. Feb, 20, 2018) ("Art. 75 Dec."), which Green has annexed to his opposition memorandum.

As detailed in the Article 75 decision, on November 5, 2015, the assistant principal of Coop Tech filed a complaint with the DOE's Special Commissioner of Investigation ("SCI") against Green alleging that he violated the DOE's email and internet use policy.  Art. 75 Dec. at 1.  Green alleged that he was not informed of the outcome of the complaint until February 9, 2016, when Green met with Principal Corey Prober.  See id.  During this meeting, Prober provided Green with a copy of the school handbook containing the email and internet use policy.  See id.  On January 28, 2016, Prober filed a second complaint with the SCI alleging the same misconduct.  Id.  Following an investigation, the SCI investigator substantiated the two complaints brought against Green.  Id.  The DOE subsequently issued nine formal charges against Green, which are detailed in the Article 75 decision.  See id. at 1-2.

Hearing Officer Leah L. Murphy, Esq., was assigned as the arbitrator of Green's disciplinary proceedings.  Id. at 2.  She presided over a pre-hearing conference, an evidentiary hearing, and the parties' closing arguments.  Id.  Both parties were represented by counsel at the evidentiary hearing, which took place over twelve days during 2016, and involved the testimony of 17 witnesses and the review of 42 documentary exhibits.  Id.  Also, all 116 of Green's emails which were at issue were reviewed.  Id.  Murphy concluded that the DOE had proven, by a preponderance of the evidence, Specifications 1-6 brought against Green, but that it had failed to prove Specifications 7-9.  Id. at 3.  Based on the findings of guilt with respect to six of the specifications, Murphy found that termination was an appropriate penalty.  Id.

Green subsequently brought a proceeding in New York State Supreme Court, pursuant to C.P.L.R. § 7511 ("Article 75"), seeking to vacate the arbitration award.  Article 75 provides that

an arbitration award may be modified or vacated on the application of a party to the arbitration, and lists several grounds upon which such modification or vacatur may be made, including corruption, partiality of an arbitrator appointed as neutral, and failure to follow procedure. C.P.L.R. § 7511(b); see also City Sch. Dist. of City of New York v. McGraham, 17 N.Y.3d 917 (2011) ( where "parties are subject to compulsory arbitration, the award must satisfy an additional layer of judicial scrutiny — it must have evidentiary support and cannot be arbitrary and capricious) (citation and punctuation omitted).  Defendants moved pursuant to N.Y. C.P.L.R. § 3211(a)(7) to dismiss Green's Article 75 proceeding for failure to state a cause of action.  On February 20, 2018, Justice Engoron of New York State Supreme Court granted defendants' cross-motion to dismiss the proceeding.

In the Article 75 decision, Justice Engoron held that Green "failed to establish that the [arbitration] Award was arbitrary or capricious, or otherwise improper," as it was "based on overwhelming evidentiary support." Art. 75 Dec. at 3.  The court further held that Green's arguments that "Specifications 4-6 should be vacated because there is no evidence that he was insubordinate is unavailing," as the hearing officer's decision was based on the fact that Green "continued to send inappropriate emails despite being warned of his misconduct on multiple occasions." Id. at 4.  The court also considered and rejected Green's argument that the award should be overturned because disciplinary charges were "brought against him in an effort to retaliate against him for 'exposing corruption and racism within the School' and that he should be afforded 'whistleblower' status." Id.

## II.  GOVERNING LAW

### A.  Standard of Review Under Fed. R. Civ. P. 12(b)(6)

A defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the plaintiff "fail[s] to state a claim upon which relief can be granted."  To survive such a motion, a complaint must contain sufficient factual matter, "accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  As the Supreme Court noted in Iqbal,

> [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Id. (citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (quotation marks, alternation, and citation omitted).  Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Iqbal, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule of Civil Procedure 8(a)(2) because it has merely "alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Id. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Additionally, on a motion to dismiss for failure to state a claim, a court's

> consideration is limited to the factual allegations in [the complaint], which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken,

> or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.

Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)); accord Halebian v. Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011).

A pro se litigant is "'entitled to special solicitude'" and his pleadings should be read "'to raise the strongest arguments that they suggest.'"  Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006)).  Accordingly, "'[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  "'[D]ismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.'"  Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015) (quoting Boykin, 521 F.3d at 216).  "At the same time, a pro se complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

B.  Law Governing Disciplinary Hearings Against Tenured Teachers in New York City

The crux of Green's complaint centers on the manner in which his arbitration was initiated and conducted.  In particular, Green argues that defendants violated his constitutional and statutory rights by failing to follow the procedures set forth in N.Y. Educ. Law § 3020-a. See, e.g., Compl. ¶¶ 11-17.  N.Y. Educ. Law § 3020-a requires that all charges filed against a tenured teacher be filed in writing with the clerk or secretary of that teacher's school district or employing board during the school year.  Id. § 3020-a(1).  The law requires that within five days

of receipt of the charges, "the employing board, in executive session, shall determine, by a vote of a majority of all members of such board, whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section." Id. § 3020-a(2).  An employee who has charges filed against him or her is entitled to a hearing, absent narrow exceptions that do not apply here.  See id. § 3020-a(2)(d)-(e).

The law also provides procedures for choosing an arbitrator to preside over a charged teacher's administrative hearing.  N.Y. Educ. Law § 3020-a(3)(a) requires the state commissioner of education, upon receipt of a request for a hearing, to "notify the American Arbitration Association ["AAA"] . . . of the need for a hearing," to request a list of names of potential labor arbitrators from the AAA with relevant biographical information, and to send that list to the employee and the employing board along with each potential hearing officer's record in the last five cases heard within a specified time period.  The law provides that the hearing officer shall be selected "by mutual agreement" of the employee and the employing board, and that if they fail to come to an agreement within fifteen days, the commissioner shall appoint a hearing officer from the list.  Id. §§ 3020-a(3)(b)(ii)-(iii).

Certain provisions of the Education Law, however, give additional flexibility to the school district of the City of New York — that is, the DOE — or otherwise provide that the procedures outlined in section 3020-a can be changed.  N.Y. Educ. Law § 3020 provides that "[n]o person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article . . . or in accordance with alternative disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment that becomes effective on or after September first, nineteen hundred

ninety-four," provided that the alternative disciplinary procedure complies with certain requirements not at issue here.  N.Y. Educ. Law § 3020(1) (emphasis added).  Additionally, N.Y. Educ. Law § 3020-a provides that the provision regarding the choice of an arbitrator "shall not apply in cities with a population of one million or more with alternative procedures specified in section three thousand twenty of this article," essentially creating a carve-out for New York City. See N.Y. Educ. Law § 3020-a(3)(b)(iii).  Consistent with these sections, and as alleged in Green's complaint, see Compl. ¶ 15, Section 21(G) of the relevant contract between the DOE and the United Federation of Teachers ("UFT"), the union that represents New York City public school teachers, provides alternate procedures for the selection of arbitrators to preside over section 3020-a hearings.  In particular, rather than allowing the employee and employing board to select arbitrators from the AAA, the contract provides for a permanent arbitration panel whose members are negotiated each year by the DOE and the UFT, or, if they cannot agree, in accordance with the AAA's procedures for choosing arbitrators, see id.  Each arbitrator serves for a maximum term of one year, and the parties must agree to have the arbitrators continue to serve on the panel at the end of a term.  Id.

N.Y. Educ. Law § 2590-h outlines the powers of the chancellor of the school district of the City of New York — that is, the duties of the chancellor of the DOE.  N.Y. Educ. Law § 2590-h(38) gives the Chancellor the power "[t]o exercise all of the duties and responsibilities of the employing board as set forth in section three thousand twenty-a of this chapter with respect to any member of the teaching or supervisory staff of schools under the jurisdiction of the community district education councils."  As noted, N.Y. Educ. Law § 3020-a(2) gives the "employing board" the power to determine whether probable cause exists to bring disciplinary charges against an employee following a vote of the majority of all of its members in executive

session.  N.Y. Educ. Law § 2590-h(19) provides that the Chancellor may "[d]elegate any of his or her powers and duties to such subordinate officers or employees as he or she deems appropriate and to modify or rescind any power and duty so delegated."  N.Y. Educ. Law § 2590-f(1)(b) further provides that in New York City, the superintendent shall have the power "to delegate any of her or his powers and duties to such subordinate officers or employees of her or his community district as she or he deems appropriate, at his or her sole discretion, and to modify or rescind any power and duty so delegated."  Numerous state courts have interpreted these sections of the law as giving the Chancellor the authority to delegate the process of preferring charges against tenured teachers to the District Superintendent, who in turn may delegate that authority to local school principals.  See Pina-Pena v. New York City Dept. of Educ., 2014 N.Y. Misc. LEXIS 1630, *10 (Sup. Ct. N.Y. Cty. Apr. 4, 2014) (collecting cases).

III.  DISCUSSION

Defendants argue that Green's claims under the First, Fifth and Fourteenth Amendment, and claims under the New York State Constitution and Education Law are barred under the doctrine of collateral estoppel based on Green's Article 75 proceeding.  See Def. Mem. at 2, 5-7. Defendants also argue that the claims under the First, Fifth, and Fourteenth Amendment and claims for intentional and negligent infliction of emotional distress are barred by res judicata. Id. at 2-3.  Defendants further argue that Green's claims under 42 U.S.C. § 1983 against the Department of Education must be dismissed for failure to plead that the alleged constitutional violations were the result of an official policy, practice, or custom, as required for municipal liability to attach pursuant to Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).  Id. at 8-9.  With respect to the claims against former Chancellor Fariña in her official capacity, defendants argue those claims should be dismissed for failure to plead Fariña's

personal involvement in the alleged constitutional violations against Green.  See id. at 9.  With

respect to the claims brought against Farina in her personal capacity, defendants argue that they

should be dismissed for being mere "labels and conclusions" without any factual basis.  See id.

at 10.  Finally, defendants argue that all claims must be dismissed on their merits for failure to

state a claim.  See id. at 3.  We discuss these arguments only to the extent necessary to dispose of

this motion.

    A.  Collateral Estoppel and Res Judicata

        1.  Governing Law

"The full faith and credit clause of the Constitution of the United States requires a federal

court to give the same preclusive effect to a state court judgment as would be given in the state

in which it was rendered."  Davidson v. Capuano, 792 F.2d 275, 277-78 (2d Cir. 1986) (citing

Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)); accord Burkybile v. Bd.

of Educ. of Hastings-On-Hudson Union Free Sch. Dist., 411 F.3d 306, 310 (2d Cir. 2005).  The

law of preclusion can be divided into two categories: res judicata (claim preclusion) and

collateral estoppel (issue preclusion).  See, e.g., Crosland v. City of New York, 140 F. Supp. 2d

300, 309 (S.D.N.Y. 2001), aff'd, F. App'x 504 (2d Cir. 2002).  "Under the doctrine of res

judicata, 'a final judgment on the merits of an action precludes the parties or their privies from

relitigating issues that were or could have been raised in that action.'"  Jacobson v. Fireman's

Fund Ins. Co., 111 F.3d 261, 265 (2d Cir. 1997) (quoting Burgos v. Hopkins, 14 F.3d 787, 789

(2d Cir. 1994)).  "New York courts have adopted the 'transactional approach' to res judicata,

holding that if claims arise out of the same 'factual grouping' they are deemed to be part of the

same cause of action and the later claim will be barred without regard to whether it is based upon

different legal theories or seeks different or additional relief." Davidson, 792 F.2d at 278

(quoting Smith v. Russell Sage Coll., 54 N.Y.2d 185, 192-93 (1981)).

"Collateral estoppel, or issue preclusion, is a doctrine related to, but distinct from, res

judicata." Quadrozzi Concrete Corp. v. City of New York, 2004 WL 2222164, at *5 (S.D.N.Y.

Sept. 30, 2004) (citing Flaherty v. Lang, 199 F.3d 607, 613 (2d Cir. 1999)).  Under New York

law, the doctrine of collateral estoppel applies only if "(1) the issue in question was actually and

necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted

had a full and fair opportunity to litigate the issue in the first proceeding." Colon v. Coughlin,

58 F.3d 865, 869 (2d Cir. 1995) (citing cases).  The doctrine of collateral estoppel applies in

instances where it is "quite clear" that these elements have been satisfied so that a party is not

"'precluded from obtaining at least one full hearing on his or her claim.'" Id. (quoting Gramatan

Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 485 (1979)).  "The party asserting issue

preclusion bears the burden of showing that the identical issue was previously decided, while the

party against whom the doctrine is asserted bears the burden of showing the absence of a full and

fair opportunity to litigate in the prior proceeding." Id. (citing Kaufman v. Eli Lilly & Co., 65

N.Y.2d 449, 456 (1985)).

### 2.  Collateral Estoppel

Defendants argue that a number of issues were "actually and necessarily considered and

decided" by the Article 75 decision.  Def. Mem. at 6.  We elect not to parse whether the Article

75 decision reached each of these issues because it is not clear that removing those issues

disposes of any particular federal claim and, for the reasons stated below, we find that all federal

claims should be dismissed without deciding any state law claims.  Accordingly, we will assume

arguendo that none of Green's claims are barred by the doctrine of collateral estoppel.

3. Res Judicata.

Defendants argue that Green's First, Fifth, and Fourteenth Amendment claims, and claims for intentional and negligent infliction of emotional distress are barred by res judicata because they "arise out of the same operative facts that formed the basis of the claims alleged in her [sic] prior proceedings." Id. at 2. That is, defendants argue that Green could have asserted these claims in the Article 75 proceeding but failed to do so. Id. at 3. Defendants make no effort to explain how the Article 75 court could have reached these claims, given that under Article 75, "[g]rounds for vacating an award are narrowly circumscribed and include corruption, fraud or misconduct, partiality of an arbitrator, or abuse of discretion." Bottini v. Sadore Mgmt. Corp., 764 F.2d 116, 121 (2d Cir. 1985). Indeed, the Second Circuit has declined to apply the res judicata doctrine to bar to claims that were outside the scope of issues that can be raised in an Article 75 proceeding. See Razzano v. Remsenburg-Speonk Union Free Sch. Dist., 751 F. App'x 24, 27 (2d Cir. 2018); Bottini, 764 F.2d at 121. Thus, none of Green's claims are barred by res judicata.

B. Green's Federal Constitutional Claims

Green brings his federal claims under 42 U.S.C. § 1983. See, e.g., Compl. ¶ 6. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see 42 U.S.C. § 1983. Section 1983 does not create any federal rights; rather, it provides a mechanism to enforce rights established elsewhere. Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002); accord Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 159 (2d Cir. 2005) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)).

We construe plaintiff's complaint as alleging (1) a First Amendment retaliation claim, see Compl. ¶ 35; (2) a Fourteenth Amendment procedural due process claim regarding the manner in which his section 3020-a hearing was conducted, see id. ¶¶ 35, 48-52; (3) an Equal Protection Claim under the Fourteenth Amendment based on the fact that teachers in New York City are subject to different termination procedures than teachers in other parts of New York State, see id. ¶ 44; and (4) a due process "stigma plus" claim based on Green's claims of reputational harm, see id. ¶¶ 10, 19.[4]

Additionally, Green's brief in opposition to defendant's motion to dismiss asserts that (5) he is Black and that defendants violated his Equal Protection rights by treating him differently than similarly-situated white teachers, see Pl. Opp. at 10; and (6) his Equal Protection rights were violated because he is part of a "class of one" that was the victim of selective enforcement when charges were brought against him, see id. at 28-32. These latter claims do not appear in the complaint. Nonetheless, in light of plaintiff's pro se status, we will view the plaintiff's brief as supplementing the allegations of the complaint. See, e.g., Portillo v. Webb, 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (considering factual allegations from pro se plaintiff's opposition submissions when deciding motion to dismiss); London v. N.Y. State Dep't of Homeless Servs., 2014 WL 3720401, at *1 (S.D.N.Y. July 29, 2014) (same); accord Burgess v. Goord, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) ("In general, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's

---

[4] Green also refers to a "Fourth Amendment" claim in his complaint. See, e.g., Compl. ¶¶ 6, 35. But he does not explain the facts underlying such a claim in the complaint or anywhere in his briefing. Accordingly, we do not consider it further.

additional materials, such as his opposition memorandum.") (citations and internal quotation marks omitted).

With respect to these constitutional claims, for the reasons discussed below, we conclude (1) that the complaint fails to state claims against DOE and Fariña in her official capacity because the complaint does not allege municipal liability — with the possible exception of Green's procedural due process claim, his Equal Protection claim relating to the distinction between teachers in New York City and those outside the City, and his "stigma-plus" claim; and (2) that the complaint fails to state any claims against Fariña in her individual capacity because the complaint does not plead her personal involvement in any of the alleged violations — with the possible exception of the procedural due process claim and the Equal Protection claim relating to the New York City/non-New York City distinction.  As described further below, any claims that may survive these municipal liability and "personal involvement" arguments nonetheless fail on the merits.  Thus, all federal claims must be dismissed.

      1.  <u>Liability of DOE and Fariña in Her Official Capacity for the Federal Constitutional Violations</u>

Under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), a municipality may be treated as a "person[]" for the purpose of § 1983 claims "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers."  <u>Id.</u> at 690; <u>accord</u> <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 124-25 (2d Cir. 2004).  To prevail on a <u>Monell</u> claim, a plaintiff must show "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36

(2d Cir. 2008).  Federal constitutional claims brought against the New York City Department of Education are treated as claims against the City of New York.  See, e.g., Kajoshaj v. New York City Dep't of Educ., 543 F. App'x 11, 16 (2d Cir. 2013); Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  Similarly, federal constitutional claims against Carmen Fariña in her official capacity are deemed to be claims against the City of New York.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [of which the officer is an agent].")

A municipality cannot be held liable on the basis of respondeat superior.  Monell, 436 U.S. at 693-94; accord Roe, 542 F.3d at 36; Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011).  Rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (emphasis in orignal).  Thus, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  Tuttle, 471 U.S. at 823-24; accord Plair, 789 F. Supp. 2d at 470 ("[I]t is well established that a single incident does not give rise to an unlawful practice by subordinate officials so permanent and well-settled as to constitute custom or usage.") (internal quotation marks and citation omitted) (citing cases).[5]

_____

[5]  To establish the existence of a policy, the plaintiff must allege one of the following:

(1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a "custom or

We accept that Green has alleged that there was a municipal custom or policy of using the procedures to conduct the 3020-a hearing that he asserts violate procedural due process and the Equal Protection clause.  See Compl. ¶¶ 35, 44, 48-52.  While less clear, we will assume arguendo that he properly alleges there was a municipal policy of keeping a list of employees who have been charged with infractions or who "spoke[] out about wrongdoing by administrators," the basis for his "stigma plus" claim.  See Comp. ¶ 19 (first).  Accordingly, we address these claims on the merits below.  As to all other federal claims, however, there are no allegations of an unconstitutional City policy or practice.  Instead, the allegations are that DOE singled Green out for mistreatment.  Accordingly, all claims against DOE and Fariña in her official caapcity — other than the due process, Equal Protection (as to the New York City/non-New York City distinction), and "stigma plus" claims — must be dismissed.

   2. Liability of Fariña in Her Individual Capacity for the Federal Constitutional Violations

We next turn to the claims against Fariña in her individual capacity.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."  Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted); accord Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) ("[I]n this Circuit personal involvement of defendants in alleged

---

usage" and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact."

Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 417 (S.D.N.Y. 2008) (quoting and citing Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)).

constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation and internal quotation marks omitted); Magnotta v. Putnam Cty. Sheriff, 2014 WL 705281, at *7 (S.D.N.Y. Feb. 24, 2014).  Here, nothing in the complaint or Green's other submissions alleges that Fariña was personally involved in any of the federal constitutional violations allegedly suffered by Green — with the possible exception of the allegation that she was directly responsible for mandating the allegedly unconstitutional procedures by which section 3020-a hearings are conducted.  See Compl. ¶¶ 5, 13, 28.  In any event, we will assume arguendo that such personal involvement has been alleged as to the procedural due process claim and the Equal Protection Claim relating to the New York City/non-New York City distinction.  All other claims against Fariña in her individual capacity, however, should be dismissed on the basis of lack of personal involvement.

       3.   The Merits of Green's Procedural Due Process, Equal Protection, and "Stigma Plus" Claims

      As noted, we next address on the merits Green's claims for (1) violations of procedural due process, (2) violation of the Equal Protection clause as to the New York City/non-New York City distinction, and (3) "stigma plus" reputational damage.

          a.   Procedural Due Process

      Green argues that his procedural due process rights were violated because charges against him were brought by his principal rather than by a vote of the Executive Session of the school board as contemplated in N.Y. Educ. Law § 3020-a.  Compl. ¶ 28.  We also construe the complaint as arguing that Green was improperly prevented from participating in the selection of the arbitrator for his 3020-a hearing.  See id. ¶¶ 11, 13-17.

18

Under the Due Process Clause of the Fourteenth Amendment, before a tenured public employee can be terminated, the "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); accord Ingber v. New York City Dep't of Educ., 2014 WL 6888777, at *4 (S.D.N.Y. Dec. 8, 2014). Here, Green's complaint reflects that he was provided with written notice of the charges being brought against him on April 22, 2016, see Comp. ¶ 19 (second), and that there was a hearing in which he was able to hear the DOE's evidence against him and present his own arguments and evidence, see id. ¶¶ 21-24. This is all the process that Green was due under the Fourteenth Amendment. See, e.g., Adams v. New York State Educ. Dep't, 752 F. Supp. 2d 420, 457 (S.D.N.Y. 2010) (that tenured New York City teachers were not permitted to participate in the selection of an arbitrator and that charges against them were not brought pursuant to vote of the school board did not "affect whether a tenured teacher receives 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' as due process requires") (quoting Cleveland Bd. of Educ., 470 U.S. at 546, 547-48)), aff'd sub. nom, Ebewo v. Fairman, 460 F. App'x 67 (2d Cir. 2012); see also Ingber, 2014 WL 6888777, at *4 (no deprivation of due process rights where plaintiffs' complaint alleged that they received written notices and pre-termination hearings).

Green relies heavily, in both his complaint and in his briefing, on the unpublished decision in Cardinale v. New York City Dep't of Educ., No. 85165/2017 (Sup. Ct. Richmond Cty. Mar. 29, 2018) (annexed to Pl. Opp.) ("Cardinale"). In Cardinale, Richmond County Supreme Court Judge Desmond Green granted the petitioner's motion to vacate an arbitral award that had been issued against her, pursuant to N.Y. Educ. Law § 3020-a, on the grounds that the

19

award was in violation of strong public policy and was irrational on its face.  Id. at 5-11.  This

decision, however, is not controlling authority, and we find its reasoning unpersuasive.

Although Cardinale cites Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985), for

the proposition that due process is required before an individual can be deprived of his or her

property right in continued tenured employment, see Cardinale at 6, Cardinale ignores the

substance of that case's holding which is that a tenured public employee is entitled only "to oral

or written notice of the charges against him, an explanation of the employer's evidence, and an

opportunity to present his side of the story," Cleveland Bd. of Educ., 470 U.S. at 546.  Because

Green was afforded these procedures, his due process claims should be dismissed on the merits.

### b.  Equal Protection

The Second Circuit has described the contours of an Equal Protection claim as follows.

> The Equal Protection Clause of the Fourteenth Amendment commands that no
> State shall "deny to any person within its jurisdiction the equal protection of the
> laws."  U.S. Const. amend XIV, § 1.  This language has been interpreted to mean
> that "all persons similarly circumstanced shall be treated alike.  But so too, the
> Constitution does not require things which are different in fact or opinion to be
> treated in law as though they were the same."  Plyler v. Doe, 457 U.S. 202, 216
> . . . (1982) (internal quotation marks, alteration, and citation omitted).

> Furthermore, we must grant substantial latitude to the legislatures "to establish
> classifications that roughly approximate the nature of the problem perceived, that
> accommodate competing concerns both public and private, and that account for
> limitations on the practical ability of the State to remedy every ill."  Id.  Thus, the
> Supreme Court has held that — unless the legislature utilizes a classification that
> is inherently invidious because it disadvantages a suspect class, or because it
> infringes upon the exercise of a fundamental right — we exercise only a limited
> review power over the acts of legislatures . . . . Under this limited review power,
> we will uphold forms of state action under the Equal Protection Clause so long as
> the classification at issue bears some rational relationship to a legitimate state
> interest.  Plyler, 457 U.S. at 216 . . . . On the other hand, where a suspect class or
> a fundamental right is at issue in the classification, we apply a more searching
> form of scrutiny. . . .

> Thus, the threshold question for any analysis under the Equal Protection Clause is whether the highly deferential rational basis review applies, or instead whether the legislation involves a suspect class or a fundamental right resulting in the application of a stricter form of scrutiny. . . .
>
> When legislation is reviewed for a rational basis, "courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws." Gregory v. Ashcroft, 501 U.S. 452, 470-71 . . . (1991) (internal quotation marks omitted).  The Supreme Court has stated that courts should "not overturn such a [law] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." Vance v. Bradley, 440 U.S. 93, 97 . . . (1979).

Hayden v. Paterson, 594 F.3d 150, 169-70 (2d Cir. 2010).

Green argues that defendants violated his Fourteenth Amendment Equal Protection rights "[b]y setting up a charging process that secretly denies the procedures cited in Education Law 3020-a(2)(a) only in New York City and not elsewhere in New York State." Compl. ¶ 44.  In other words, Green asserts that the distinction made by the statute between the procedural rights afforded to teachers in New York City as opposed to teachers elsewhere in the state violates the Equal Protection Clause.

We reject this argument.  First, New York City teachers do not represent a "suspect class."  See, e.g., Massachusetts Bd. of Ret. v. Murgia, 427 U.S. 307, 313 (1976) (defining a "suspect class" as one that has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process").  And while Green does have a recognized property right in his tenured teaching position, see, e.g., Finley v. Giacobbe, 79 F.3d 1285, 1297 (2d Cir. 1996); accord Meyers v. City of New York, 622 N.Y.S.2d 529, 532 (1995), it does not rise to the level of a "fundamental right," see, e.g., Washington v. Glucksberg, 521 U.S. 702, 720 (1997) (defining fundamental rights as those

21

liberties which are "objectively deeply rooted in this Nation's history and traditions" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed") (internal quotation marks and citations omitted); see also Meyers v. Kishimoto, 217 F. Supp. 3d 563, 584 (D. Conn. 2016) (tenured teacher's property rights in continued employment did not rise to level of fundamental right); Grasson v. Bd. of Educ. of Town of Orange, 24 F. Supp. 3d 136, 149 (D. Conn. 2014) ("interests related to employment are generally not protected under substantive due process because they do not implicate fundamental rights, such as the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life") (internal quotation marks and citation omitted).  As a result, the "rational basis" test applies.

The Second Circuit has held that

> Where rational basis scrutiny applies, the Government "has no obligation to produce evidence," or "'empirical data'" to "sustain the rationality of a statutory classification," Heller v. Doe, 509 U.S. 312, 320 . . . (1993) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 315 . . . (1993)), and instead can base its statutes on "rational speculation," id. (internal quotation marks omitted).  "'[A]ny reasonably conceivable state of facts'" will suffice to satisfy rational basis scrutiny.  Id. (quoting Beach Commc'ns, 508 U.S. at 313 . . . ).  The burden falls to the party attacking the statute as unconstitutional to "negative every conceivable basis which might support it."  Madden v. Kentucky, 309 U.S. 83, 88 . . . (1940).  There need only be a "rational relationship between the disparity of treatment and some legitimate governmental purpose."  Heller, 509 U.S. at 320 . . .

Lewis v. Thompson, 252 F.3d 567, 582 (2d Cir. 2001).  Here, Green has not "negative[d] every conceivable basis" that could justify the distinction between teachers employed in New York City and those employed elsewhere in the state.  Madden, 309 U.S. at 88.  Additionally, the City has explained that "the DOE, a vast, complex structure managing hundreds of thousands of teachers, staff, administrators, and students, dwarfs every other school district in the state."  Def.

Mem. at 16.  The identical justification was implicitly accepted by the Second Circuit in Ebewo

v. Fairman, 460 F. App'x 67 (2d Cir. 2012), which affirmed the decision of the district court in

Adams v. New York State Educ. Dept., 752 F. Supp. 2d 420, 460 (S.D.N.Y. 2010).  We find the

reasoning of Adams to be persuasive and conclude that the distinction survives rational basis

review.

Accordingly, Green's Equal Protection claim should be dismissed.

c.  Stigma-Plus

We construe Green's complaint as alleging that defendants subjected him to "stigma-

plus" discrimination by flagging his personnel files with a "no hire code" and by placing him on

a list called the "Problem Code" or "Ineligible Inquiry List."  See Compl. ¶¶ 1, 19 (first).  Green

alleges that

> [t]here is no information on the procedures used, no standards for placement on this
> list, and no method by which a person so placed may remove his/her name from this
> list.  Plaintiff's name was placed on this list because of the actions of the Defendants
> to leave CTE students without proper resources and services.

Id. ¶ 19 (first).  The complaint provides no further information on these lists or codes.

Judge Koeltl in Kuczinski v. City of New York, 352 F. Supp. 3d 314 (S.D.N.Y. 2019),

succinctly summarized the law governing "stigma-plus" claims as follows:

> The loss of one's reputation can violate the Due Process Clause if the loss of
> reputation is associated with the deprivation of a federally protected liberty
> interest, such as government employment.  Bd. of Regents v. Roth, 408 U.S. 564,
> 573 . . . (1972); Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994).  The loss of
> reputation without due process of law, in combination with the loss of a more
> tangible interest, is referred to as a "stigma plus" claim.  The "stigma" within a
> stigma plus claim is the loss of reputation and the "plus" is the loss of a more
> tangible interest, such as employment.  See Velez v. Levy, 401 F.3d 75, 87-88 (2d
> Cir. 2005); Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F.Supp.2d
> 389, 394-95 (S.D.N.Y. 2009).  "Because stigma plus is a species within the
> phylum of procedural due process claims," the plaintiff must demonstrate that his
> liberty interest was deprived without due process of law in addition to proving the

23

deprivation of a liberty interest.  Segal v. City of New York, 459 F.3d 207, 213
(2d Cir. 2006).

"[T]he availability of adequate process defeats a stigma plus claim."  Id.  This is
often done through a name-clearing hearing.  "[T]he hearing required where a
nontenured employee has been stigmatized in the course of a decision to
terminate his employment is solely to provide the person an opportunity to clear
his name."  Codd v. Velger, 429 U.S. 624, 627 . . . (1997) (per curiam) (quotation
marks omitted); Segal, 459 F.3d at 214 (in cases involving "at-will government
employee[s], the availability of an adequate, reasonably prompt, post-termination
name-clearing hearing is sufficient to defeat a stigma-plus claim").

Kuczinski, 352 F. Supp. 3d at 324.

Thus, to plead a "stigma plus" claim, a plaintiff must allege "(1) the utterance of a
statement about her that is injurious to her reputation, 'that is capable of being proved false, and
that he or she claims is false,' and (2) 'some tangible and material state-imposed burden . . . in
addition to the stigmatizing statement.'"  Velez, 401 F.3d at 87 (quoting Doe v. Dep't of Pub.
Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001)).  In addition, "[t]he defamatory statement
must be sufficiently public to create or threaten a stigma."  Id.

Here, the allegations of the complaint do not show that any allegedly false statement
about Green was published to anyone outside of the DOE.  Indeed, as far as can be determined
from the complaint, the lists and codes referred to are entirely internal to the DOE.  The absence
of any claim that these lists and codes are communicated to potential employers is fatal to
Green's "stigma plus" claim.  See, e.g., McDonald v. Bd. of Educ. of City of New York, 2001
WL 840254, at *7 (S.D.N.Y. July 25, 2001) (dismissing stigma plus claim by teacher put on
New York City Board of Education " Ineligible/Inquiry List" where plaintiff, inter alia, did not
"allege that the grounds for her dismissal were otherwise published to potential employers");
see also Koehler v. New York City, 2005 WL 3502042, at *3 (S.D.N.Y. Dec. 20, 2005) (stigma-
plus claim failed where plaintiff alleged only that "her name was placed on an ineligible list so

that she can not be employed anywhere else in the DOE") (internal quotation marks omitted);

accord Ingber, 2014 WL 6888777, at *3.  Accordingly, Green's stigma plus claim must be

dismissed on the merits.

  C.  Supplemental Jurisdiction Over State Law Claims

  Green's complaint may possibly be construed as bringing separate claims, apart from the

Due Process and Equal Protection violations, for defendants' alleged failure to comply with N.Y.

Educ. Law § 3020-a and N.Y. Civ. Serv. Law § 75-b(1)(b).  See Compl. ¶¶ 46-53.  The

complaint may also be construed as alleging a violation of Green's procedural due process rights

under Article I, § 8 of the New York State Constitution.  See Compl. ¶ 35.  Additionally, the

complaint appears to allege state law claims for intentional and negligent infliction of emotional

distress, harassment, and tortious interference with contract.  Id. ¶¶ 40-42.[6]  While we agree that

these claims would likely fail for the reasons stated in the defendants' brief, see Def. Mem. at

17-22, the Court should decline to exercise supplemental jurisdiction over these claims.

  This Court has jurisdiction over Green's federal claims pursuant to 28 U.S.C. § 1331.

However, the Court's authority to hear Green's state law claims is premised only on its

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).[7]  Section 1367(a) provides that

> in any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all other claims that are
> so related to claims in the action within such original jurisdiction that they form

---

 [6]  In the heading for his "Second Cause of Action," Green states that he is bringing claims for "Intentional and Negligent Infliction of Emotional Distress, Verbal Harassment, With Unjustified Threats of Future Harm; Section 767 of the Restatement (Second) of Contracts; Stigma Plus."  See Compl. at 17.

 [7]  There is no apparent other basis for jurisdiction over Green's state law claims. The diversity of citizenship requirement of 28 U.S.C. § 1332 is not met here because Green states that he resides in New York.  See Civil Cover Sheet, filed Nov. 19, 2018 (Docket # 2).

part of the same case or controversy under Article III of the United States
Constitution.

28 U.S.C. § 1367(c) further provides that a district court may "decline to exercise supplemental

jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims

over which it has original jurisdiction."

> The Supreme Court has noted that
>
> in the usual case in which all federal-law claims are eliminated before trial, the balance
> of factors to be considered under the pendent jurisdiction doctrine — judicial economy,
> convenience, fairness, and comity — will point toward declining to exercise jurisdiction
> over the remaining state-law claims.

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); accord Valencia ex rel. Franco

v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).  Given the early stage of this case, the court should

decline to exercise jurisdiction over Green's remaining state law claims.  See Valencia, 316 F.3d

at 306-07 (noting that because of the "relatively early stage of the case," there were "judicial

economies to be achieved by declining to exercise supplemental jurisdiction" over state law

claims that remained after the dismissal of all federal law claims).

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Docket # 14) should be granted

with leave to amend within 30 days in the event that Green can cure any of the defects in the

existing complaint.  See, e.g., Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999)

("When a motion to dismiss is granted, the usual practice is to grant leave to amend the

complaint.") (citation omitted).

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days (including weekends and holidays) from service

of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d).

A party may respond to any objections within 14 days after being served. Any objections and

responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Analisa Torres

at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file

objections or responses must be directed to Judge Torres. If a party fails to file timely

objections, that party will not be permitted to raise any objections to this Report and

Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a),

6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins,

Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 31, 2019

New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Rupert Green
205-26 113th Avenue
St. Albans, NY 11412