UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

DR. RUPERT GREEN,

                           Plaintiff             DOCKET NO. 18 Civ. 10817 (AT) (GWG)

      -against-

                                        **AMENDED COMPLAINT**
                                         *Jury Trial Demanded*

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK; and THE UNITED
FEDERATION OF TEACHERS,

                        Defendants

————————————————————————x

PLAINTIFF DR. RUPERT GREEN, ("Plaintiff") proceeding Pro Se, as and for his Summons

and Complaint filed to protect his Constitutional rights against the above-captioned Defendants

DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK (henceforth "DOE") and his

union, the UNITED FEDERATION OF TEACHERS (henceforth "UFT"), alleges upon

knowledge as to his own facts and upon information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.This is a civil action seeking injunctive relief, monetary relief, including past and on-going

economic loss, compensatory and punitive damages for wrongful termination due to violations of

Constitutionally protected rights given to him as a tenured teacher under Education Law 3020-a

namely to have a proper determination of probable cause before any charges were filed

diminishing his property and liberty rights, and to speak as a citizen on a matter of public

concern without retaliation. Plaintiff brings this action under, 42 U.S.C. § 1983, 29 U.S.C. §185

1

# AFFIDAVIT

STATE OF NEW YORK}

COUNTY OF NEW YORK }

**Rupert Green,** being of full age and duly sworn, deposes and says:

1. My name is Rupert Green, and I reside at 205-26 113 Ave. St Albans N.Y 11412

2. I am a tenured teacher in good standing in the New York City public school system.

3. On April   2016 I received charges of alleged misconduct which led to the compulsory arbitration pursuant to Education Law 3020-a addressed herein.

4. The documents included with my charges were titled "NOTICE OF THE DETERMINATION OF PROBABLE CAUSE PURSUANT TO EDUCATION LAW 3020-A" which advised me of the law in these proceedings, and the fact that probable cause must be decided at an Executive Session of the employing board. There was no date.

5. I gave notice to the UFT, immediately upon receipt of the charging papers in this matter, that I requested a hearing, however by agreeing to a hearing pursuant to §3020-a before a Hearing Officer I <u>did not, and do not now,</u> waive my legal rights to:

(1) submit to a Hearing which complies with due process for tenured teachers as stated in New York State Education Law **§**3020 and **§**3020-a;

(2)  object to the process and substance of the manner in which probable cause was allegedly found, by the administration of my school, and not in an Executive Session as required by Education Law 3020-a.

6. Any Executive Session of a school board must be publicly noticed and must take place within a public meeting (Open meetings law Section 105) also noticed to the general public. Section 3020-a(2)(a) specifically refers to an "employing board" meaning a Board of Education, which does not currently exist in any school district within New York City; and this section of law also requires that a vote of the Board of Education is held, and a "majority" must vote in favor of probable cause:

*"Disposition of charges. Upon receipt of the charges, the clerk or secretary of the school district or employing board shall immediately notify said board thereof. Within five days after receipt of charges, the employing board, in executive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section. If such determination is affirmative, a written statement specifying the charges in detail, the maximum penalty which will be imposed by the board if the employee does not request a hearing or that will be sought by the board if the employee is found guilty of the charges after a hearing and outlining the employee's rights under this section, shall be immediately forwarded to the accused employee by certified or registered mail, return receipt requested or by personal delivery to the employee."*

7. As there is no Board of Education in New York City at this time, and no "vote" with the mandated specificity as to where, when, by whom and on what information did the mandated vote take place, as well as no mention of the authority of a "school district" to identify probable cause, the charges served on Respondent and the subject matter jurisdiction of the Arbitrator to proceed under 3020-a must be declared null and void.

8. The Department has not complied with the requisite jurisdictional predicates for filing disciplinary charges against Respondent and, as such, the Arbitration proposed is without subject matter jurisdiction to proceed.

9. The procedures memorialized in my above charging papers cite Education Law Sections 3020 and 3020-a, not Education Law Section 2590. The Hearing Officer thus has no jurisdiction to hear the charges attached herein.

Rupert Green

Sworn before me on
2nd day of May   2016

NOTARY PUBLIC

Jonathan B. Behrins
Notary Public, State of New York
No. 02BE6311608
Qualified in Richmond County
Commission Expires September 15, 20__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

DR. RUPERT GREEN,

                    Plaintiff          DOCKET NO. 18 Civ. 10817 (AT) (GWG)


        -against-
                                          AMENDED COMPLAINT
                                          *Jury Trial Demanded*

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK; and THE UNITED
FEDERATION OF TEACHERS,

                    Defendants

_____x

PLAINTIFF DR. RUPERT GREEN, ("Plaintiff") proceeding Pro Se, as and for his Summons

and Complaint filed to protect his Constitutional rights against the above-captioned Defendants

DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK (henceforth "DOE) and his

union, the UNITED FEDERATION OF TEACHERS (henceforth "UFT"), alleges upon

knowledge as to his own facts and upon information and belief as to all other matters:


## PRELIMINARY STATEMENT


1.This is a civil action seeking injunctive relief, monetary relief, including past and on-going

economic loss, compensatory and punitive damages for wrongful termination due to violations of

Constitutionally protected rights given to him as a tenured teacher under Education Law 3020-a

namely to have a proper determination of probable cause before any charges were filed

diminishing his property and liberty rights, and to speak as a citizen on a matter of public

concern without retaliation. Plaintiff brings this action under, 42 U.S.C. § 1983, 29 U.S.C. §185

1

(specifically the Labor Management Relations Act Section 301), Stigma Plus, First and Fourteenth Amendment of the United States Constitution and those parts of the New York State Constitution which similarly apply with like language and together with this Court's pendent jurisdiction over causes of action arising under New York State laws, both common and statutory; State laws governing employment, seeking monetary and declaratory relief against Defendants for committing acts with the intent and for the purpose of depriving Plaintiff of property and liberty rights without the procedural due process guaranteed under the Fourteenth Amendment of the Constitution of the United States, and for refusing to or neglecting to prevent such deprivations and denials to Plaintiff.

2.Plaintiff was denied a fair arbitration hearing and thus a lawful, just penalty, by both Defendants who deliberately denied to him his Constitutionally protected rights as a tenured teacher to the mandates of Education Law, Just Cause, and the First Amendment after he was accused of sending out allegedly "harassing" emails to staff at the District 79 vocational school known as The School of Cooperative Technical Education or "COOP TECH", where, from 2001 to 2016 he specialized in teaching computer technology and Career Technical Education ("CTE"). For 15 years he was considered an excellent teacher and UFT Delegate, until he spoke out as a public citizen on a matter of public concern about vocational education at the school and throughout New York City being underfunded and its' students as politically undesirable. Most of the student body is Black, Hispanic, or immigrants and all are over age 17 and under-credited. Plaintiff was their strongest advocate for change. Everyone at the school praised Plaintiff for his work on student's behalf, except for anyone tied to the DOE or UFT leadership. Attached as EXHIBITS are letters and emails showing the fearless statements made as a private citizen on

2

the matters of public concern, namely racism and segregation, that became the reason for Plaintiff's 3020-a charges and termination.

3. Plaintiff is a role model for African-American black and minority students, but he was working for the Department of Education in New York City, the most segregated school district – and the largest – in the United States. The DOE does not want, or pay for, highly successful black male teachers who speak out about the unfairness seen every day throughout New York City and certainly in the schools within District 79, the vocational schools. The UFT did not protect Plaintiff from the baseless attacks and from being wrongfully charged and terminated. After Cory Prober became Principal of COOP TECH in January 2016, his first meeting with Plaintiff in February 2016 and then in March was disciplinary, to tell him to stop his allegedly harassing of staff by emails which were clearly, as Prober said, "Green proselyzing his views about something".

4. The DOE and UFT target black male teachers who speak out while teaching, and terminate each of these teachers at 3020-a, where the procedures used to charge teachers are without support in the Education Law and deny certain Constitutional rights without just cause.

5. Black male senior teachers are almost always terminated at 3020-a. Two examples of non-Black teachers who blew the whistle at their schools via emails and were not terminated are Seong-Yong OK (Asian, given a $500 fine and must take professional development; SED #32,199, Opinion and Award dated August 30 2018); Francesco Portelos (White, given fine of $10,000 for horrific acts of email abuse and harassment of staff; SED #22,380, Arbitrator's Award dated April 30, 2014).

5. But for the joint approval of the denial of tenure rights by the DOE and the UFT, Plaintiff was wrongfully, maliciously and in bad faith terminated and stigmatized permanently by being wrongfully charged and placed on the Ineligible/Inquiry or "no hire" List.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 for claims arising under 42 U.S.C. 1983. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions brought pursuant to Defendant's violations of 42 U.S.C. Section 1983, in particular the protections given by the Freedom of Speech First Amendment rights and Equal Protection Clause enclosed within the Fourteenth Amendment, as well as State law claims codified in the New York State Constitution, and Education Law §3020-a (the "tenure law") .

7. This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 52 Chambers Street, Manhattan.  This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367.

8.This Court has jurisdiction pursuant to 29 U.S.C. §185 to hear suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, which may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. Jurisdiction is specifically conferred on this Court by Labor Management Relations Act, Section 301. This Court has pendent and supplemental jurisdiction over Plaintiff's state law and city law

4

claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims.

9. At all times relevant herein, Plaintiff was a public employee of Defendants within the meaning of New York State Civil Service Law § 75-b(1)(b).

## PARTIES

10. Plaintiff DR. RUPERT GREEN was, until the charged years 2013-2014, 2014-2015, and 2015-2016, a tenured teacher employed with Defendant the New York City Department of Education, beginning on or about February 2001 through April 2016, specializing in teaching computer technology and Career Technical Education ("CTE"). Petitioner is a highly qualified and educated individual, who has attained an Associate's Degree in Electronics Engineering Technology, a Bachelor's Degree in Occupational Engineering, a Master's Degree in Learning Technology, a Master's Degree in School Administration, and a Doctorate in Education and Leadership. Prior to working with the Respondent, Petitioner worked at Mercy Hospital in New Jersey in the field of biomedical engineering and electronics technology, maintaining computerized medical equipment. Throughout the entirety of his employment with DOE, Petitioner taught for The School of Cooperative Technical Education ("Coop Tech"). Coop Tech is a high school organized within District 79 of the New York City public school system. District 79 is a city-wide school district for nontraditional students, such as those who are incarcerated, hospitalized or in temporary housing, and adult students preparing for General Educational Development tests. Coop Tech is a multiple-site program that specializes in CTE and vocational trade education. The central site of Coop Tech is located on East 96th Street in New York, New

York. Plaintiff was assigned to an alternate location at John Adams High School.

11. At all relevant times, the NYCDOE has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, is subject to the mandates under the Education Law, First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, which prohibits any diminution of tenure rights without Just Cause, and retaliation against individuals, such as Plaintiff herein. The headquarters of the NYC DOE is located at 52 Chambers Street, NYC 10007.

12. During all times relevant and material to this Complaint, The United Federation of Teachers ("UFT") is a "labor organization" within the meaning of the Labor Management Relations Act and the National Labor Relations Act and maintains its principal place of business at 52 Broadway, New York, NY 10004.

## STATEMENT OF FACTS

13. Plaintiff was a highly praised teacher at COOP TECH from 2001 up to 2015, when Principal John Widlund retired and left unanswered questions about his successor. In 2013 Widlund wrote a letter of recommendation praising Plaintiff's dedication and teaching ability, and recommending him for a position of Assistant Professor of Career and Technical Education.

14. COOP TECH teachers who testified as witnesses at Plaintiff's 3020-a arbitration testified that Dr. Green was a talented and capable teacher that cared a great deal about his students.

15. Plaintiff organized and volunteered for a highly successful Saturday Academy to provide additional educational services through Coop Tech on the weekend, and developed and drafted a research grant proposal to run an afterschool Science, Technology, Engineering and Math ("STEM") program in collaboration with international educators.

6

16. Plaintiff's observation reports always gave him high ratings, until Plaintiff filed a complaint on 12/13/15 with the Director of the Special Commissioner of Investigation, Jaclyn Vargo, concerning the appointment of Cory Prober as principal without a proper C-30 process. See attached. Cory Prober was appointed principal, and started in January 2016.

17. Because Coop Tech includes multiple satellite locations, the most effective way for the staff and administration at the central office and among the different locations to communicate with one another was via email.

18. The DOE required the Coop Tech staff to use email daily to stay in communication with one another and had a Department-wide policy regarding staff the of DOE email, the Internet Acceptable Use and Safety Policy. This policy advises teachers not to send out "harassing" emails that harms others, damages their or Department property, and/or interferes with someone's work. Someone at the school believed that Plaintiff needed to be silenced, and called SCI to stop Plaintiff's emails, which were allegedly "harassing".

19. Plaintiff agreed to stop sending anyone on the staff who objected to the email content. He then set up a dropbox for his thoughts, so no one had to view his content, only if he/she wanted to read it. All of his emails focused on the segregation within the DOE, the disastrous state of higher education currently available to Black males, and the education challenges of the minority children in general in the US. Plaintiff wrote these emails as a private citizen on matters of public concern. These topics were currently news worthy, and had nothing to do with his teaching duties.

20. During the time that Plaintiff used his DOE account to send emails to other teachers he was heavily involved in his Union, acting as a Union delegate and overseeing union elections. As a union delegate, he raised issues on behalf of his colleagues by bringing them to the union's

chapter chair, who is designated to represent the best interest of the teachers who are members of the union with respect to their terms and conditions of employment. Notably, Plaintiff was also designated to represent teachers and they would also bring their grievances directly to him so that he could advocate on their behalf as a union delegate. Over the 15 years in which he worked for DOE, some of Plaintiff's coworkers requested that their email addressed be removed from his communications so that they did not receive his school-wide emails. Plaintiff complied with these requests, although he did include the recipients when he replied to other mass email chains that included those recipients' addresses. Plaintiff also frequently used dropbox links in his school-wide emails so that if a recipient did not want to read his communications, they would not have to read them.

21. On November 5, 2015 Dr. Green sent an email saying that John Widlund had hired a husband and wife team against Chancellor's Regulations. Everyone in the school knew that Dr. Green was referring to Alicia Konze, secretary to the principal, and Carlos Caraballo, a teacher. The 8 staff members who were bothered by Dr. Green's reference to the lack of transparency at Coop Tech and the lack of information about proper procedures, changed the information, made the "husband and wife team" Konze and interim acting female principal Anda McGowan, and charged Dr. Green with 3020-a for citing false information and upsetting staff. The Konze-McGowan lesbian relationship was a lie, and everyone knew it.

22. Also on November 5, 2015, Audrey Mangan, Assistant Principal at the 96th Street Location of Coop Tech, filed a complaint with the DOE Special Commissioner of Investigation ("SCI") alleging that Petitioner violated the DOE email and internet policy. Ms. Mangan did not testify at the 3020-a.

23. On January 28, 2016, Corey Prober, a new Principal at Coop Tech, filed a second complaint

with the DOE Special Commissioner of Investigation ("SCI") alleging that Petitioner violated the DOE email and internet policy. Notably, Petitioner had not been informed of the findings of the first complaint before Mr. Prober filed a second complaint.

24. SCI assigned Investigator Christopher Minogue to investigate the Petitioner's use of DOE email. Investigator Minogue conducted the investigation in regard to both complaints. He interviewed some of Petitioner's colleagues who had received the Petitioner's emails and asked them for their general opinion of the emails. Minogue conceded during the hearing that when he held these interviews, he did not show the interviewees the emails in question, but rather held a general conversation about how they interpreted them and whether there was any interaction between the interviewee and Petitioner. Minogue drafted a final report finding that the first and second investigations into the complaints about Petitioner's emails were substantiated. Minogue did not interview Plaintiff for his investigation.

25. On April 4, 2016 Cory Prober determined that there was probable cause to terminate Plaintiff, and charges were served on Plaintiff who was suddenly reassigned, given a "Problem code" on his fingerprints, and his email account with the DOE was blocked. Plaintiff was reassigned to a rubber room that day.

26. At the start of his 3020-a, three important Applications were made by Plaintiff's attorney to the Hearing officer Leah L. Murphy, Esq:

1. Attorney Behrins submitted a Motion To Dismiss For Lack of Subject Matter Jurisdiction, saying that as the NYC school board "Panel For Educational Policy" ("PEP) was the only group which could vote on probable cause for the charges in an Executive Session, pursuant to Education Law 3020-a(2)(a), and this vote never happened, thus Murphy did not have subject matter jurisdiction to proceed.
2. In support of the issue of subject matter jurisdiction and this vote, Plaintiff submitted, before the pre-hearing, an AFFIDAVIT saying that he wanted a hearing, but only on the basis of the procedures required in Education Law 3020-a(2)(a) after a proper determination by the PEP of probable cause, and he added that he never waived his right

to this procedure.

3. Plaintiff had submitted a letter he received from the Equal Employment Opportunity Commission (EEOC), a Federal Agency, saying that they were investigating his complaint of wrong-doing by Prober and staff at COOP TECH. His attorney asked for an adjournment until the investigation was concluded.

4. Attorney Behrins made a DEMAND request for Plaintiff's access to all of the emails sent 2014-2016, so that a proper defense could be prepared, showing the non-harassing, informative data sent by Plaintiff to staff that showed he was sending out timely educational news.

Murphy denied the Motion, said she was appointed the arbitrator, and she was continuing as such; she unfairly denied access to Plaintiff's DOE emails saying the DOE was right to believe that once Plaintiff had access again, he would misuse the privilege...so no access to any emails other than the harassing emails submitted in the charges; she denied the adjournment for the EEOC report; and she ignored the AFFIDAVIT, and Plaintiff's First Amendment rights.

27. Despite Plaintiff never being formally reprimanded for sending the emails before charges were filed, Arbitrator Murphy terminated Plaintiff on December 9, 2016 with the following:

"I find that due to Respondent's arrogant and oppositional refusal to comply with the Depal1ment's policy, the seriously offensive, disruptive and irresponsible nature of many of the emails, and Respondent's dogged refusal to take any corrective measures or follow the clear directives of his supervisors, the Department has just cause to terminate Respondent. There is no remediation possible given Respondent's repeated disregard for the Department policy." (p. 125)

28. Although Plaintiff was charged with using DOE email for inappropriate purposes, a review of the emails in the record show that they all concerned instruction, teaching, researching, the facilitation of communication and collaboration among staff in COOP TECH as well as throughout the DOE, and the general functions and concerns of the school and the Department of Education. Murphy's ruling made no sense, and cannot be justified as honoring Plaintiff's First Amendment rights. Some examples:

- email on January 10, 2014, sharing an email he received from a student with positive feedback about his education at Coop Tech, and providing positive encouragement for his

fellow teachers for the new year. Petitioner also sent an email on that date stating his concern of the amount of physical paper being wasted by the school for procedures that could be done by email. Petitioner also sent a third email commenting on and providing suggestions for the school's teacher of the year award. Although these emails concerned education and instruction, and the facilitation of communication, the Hearing Officer found they could be identified as an inappropriate use of DOE email;

- email on January 15, 2014, in response to his principal's email about Black History Month, sharing an email essay he had written about celebrating the achievements of African Americans and commending his Caucasian principal for his efforts. It is notable that African-American students make up a large percentage of the school's demographics. Incredibly, one of DOE's witnesses, Alice Konze, testified that she found this email demeaning and offensive because it discussed African-American history. Although this email related to education, and was in reply to a Principal's comment, the Hearing Officer found it could be identified as an inappropriate use of DOE email because it contained Petitioner's personal opinion;

- email on February 3, 2014, also relating to Black History Month, discussing the relatively low proportion of minorities in STEM fields such as those being taught at Coop Tech. Although this email was related to education and instruction, the Hearing Officer found it could be identified as an inappropriate use of DOE email because it contained Petitioner's personal opinion;

- email on February 14, 2014, requesting clarification on the school's organization of administration, because Coop Tech's staff directory did not include the usual organization chart. Although this email was related to a Department related function and the facilitation of communication, the Hearing Officer found it could be identified as an inappropriate use of DOE email because it was allegedly critical of the administration;

- email on June 6, 2014, discussing perceiving shortcomings in his union chapter leader's representation. Although this email was related to education and the facilitation of communication, the Hearing Officer found it could be identified as an inappropriate use of DOE email

Murphy's analysis continues through the emails, irrationally concluding misconduct where there was none. Her goal was to terminate and not look at any penalty other than that. She did not discuss Plaintiff's First Amendment rights.

29. Plaintiff filed an Appeal of the decision in the New York State Supreme Court on December 13, 2016, well within the statute of filing an Article 75.

30. On March 13, 2018 Judge Engoron dismissed the case without discussion of any issues and

no mention of Petitioner's First Amendment rights, nor the errors of law in the determination of

probable cause.

31. On March 29, 2018, Judge Desmond Green in the Richmond County Supreme Court ruled in

the case of Rosalie Cardinale v the NYC Department of Education (Index number 85165/2017)

that:

""New York State created the public-school tenure system guaranteeing continued
employment to tenured teachers by statute and therefore created a property right in a tenured
teacher's continued employment. *(See Education Law§§§ 3012, 3012- a, 3020, Holt v. Board
of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981], Matter of Abromvich v.
Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven & Smithtown, 46 NY2d
450 [1979]).* Where a property right in continued employment exists, such as New York's
tenure system, the recipient of such a right may not be deprived without due process. *See
Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 [1985].

New York State guarantees a tenured teacher's due process rights to continued employment
by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a
term of employment except for just cause and in accordance with the procedures specified in
section three thousand twenty-a of this article or in accordance with alternate disciplinary
procedures contained in a collective bargaining agreement ... " *Education Law* § 3020.

The statutory procedural process afforded to teachers with tenure under *Education Law*
§3020-a requires:
The filing of charges "in writing and filed with the clerk or secretary for the school district or
employing board during the period between the actual opening and closing of the school
year for which the employed is normally required to serve. *Education Law§* 3020-a(l)

"Within five days after receipt of charges, the employing board, in executive session, shall
determine, by a vote of a majority of all the members of such board, whether probable cause
exists to bring a disciplinary proceeding against the employee pursuant to this section."
*Education Law* § 3020-a(2).


Where an employing board determines probable cause exists for discipline the tenured teacher
shall receive: "a written statement specifying (i) the charges in detail, (ii) the maximum penalty
which will be imposed by the board if the employee does not request a hearing or that will be
sought by the board if the employee is found guilty of the charges after a hearing and (iii) the
employee's rights under this section, shall be immediately forwarded to the accused employee "
*Id.*

Green summarized his conclusion that there was a procedural error of law:

"Hearing Officer Lendino conducted the *Education Law* § 3020-a hearing based on

unproven assumptions that the delegations of duties and responsibilities from the office of the Chancellor to subordinate administrators occurred in compliance with the relevant statutory authority." (p. 4)

32. Judge Green therefore agreed with Plaintiff's arguments on the Motion To Dismiss For Lack of Subject Matter Jurisdiction, unravelling the long history of unfair procedures used in NYC by the DOE and the UFT to destroy good teachers because someone did not like him/her. Notably, the same legal team used by Plaintiff in his 3020-a did the Petition and all the papers in the Cardinale case.

33. On April 23, 2018, teacher Felicia Alterescu, a teacher who was charged with 3020-a, (SED #32,418) received a response from her NYSUT Attorney on Cardinale and why he would not bring it up at her hearing.  He wrote that it would be "unethical", as there were so many decisions against Cardinale already made. Only he used cases decided before March of 2018. On June 1, 2018. Ms. Alterescu was fired by Arbitrator Mary O'Connell.

34. Plaintiff has lost his career, his standing in his community, and all income due to the retaliation reported here.

## FIRST CLAIM FOR RELIEF

### RETALIATION AGAINST PLAINTIFF FOR EXERCISING FREEDOM OF SPEECH IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS
### Due Process – Fourteenth Amendment
### (42 U.S.C. § 1983)

35. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

36. While acting under color of State Law, Defendants violated Plaintiff's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to

13

matters of public concern by being an informant and/or reporting of unethical practices regarding school administration and vocational education, Black  v White in today's social structure, and segregation in education.

37. As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation, in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### RETALIATION IN VIOLATION
### OF
### NEW YORK STATE CIVIL SERVICE LAW § 75-B

38. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

39. Plaintiff reported violations about federal, city and state law violations by the school administration regarding unethical practices at the school and elsewhere in the New York City school system. He was not speaking for himself but as a private citizen on matters of public concern, thereby engaging in a protected activity as defined in New York Civil Service Law § 75- b(2)(a).

40. Defendants had notice that Plaintiff participated in such protected activities.

41. Defendants retaliated against Plaintiff by engaging in adverse "personnel actions" as defined by New York Civil Service Law§ 75-b(l)(d). Specifically, Defendants subjected Plaintiff to a retaliatory hostile work environment, including but not limited to: charging him with baseless Specifications and otherwise taking away his livelihood and job security.

14

42. As a proximate result of Defendants ' retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Intentional and/or Negligent Infliction of Emotional Distress)

43. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

44. Each and every Defendant did, without justification, intentionally harm the Plaintiff by playing a part in seeking to wrongfully terminate him from his employment, and caused him intentional and/or negligent infliction of emotional distress.

45. As a result of the foregoing, Plaintiff did suffer damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### (Violations pursuant to 29 USC §185)

46. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein

47. While and after Plaintiff was employed by Defendant NYCDOE, the United Federation of Teachers used a "hands off" policy which led him into a 3020-a without proper determination of probable cause and other denial of his tenured, protected rights including those included in the Contract "Collective Bargaining Agreement" or "CBA".

48. As a result of the foregoing, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### Due Process – Fourteenth Amendment
### (42 .S.C. § 1983/Liberty Interest)

49. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein

50. While acting under the color of state law, the NYC DOE constructively terminated Plaintiff's New York City License without providing procedural due process before the deprivation of property.

51. The Plaintiff's claim is one for loss of reputation. The loss of one's reputation can violate the Due Process Clause if the loss of reputation is associated with the deprivation of a federally protected liberty interest, such as government employment. Bd. of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ; Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994).

52. The loss of reputation without due process of law, in combination with the loss of a more tangible interest, is referred to as a "stigma plus" claim. The "stigma" within a stigma plus claim is the loss of reputation and the "plus" is the loss of a more tangible interest, such as employment. See Velez v. Levy, 401 F.3d 75, 87–88 (2d Cir. 2005) ; Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F.Supp.2d 389, 394–95 (S.D.N.Y. 2009). "Because stigma plus is a species within the phylum of procedural due process claims, the Plaintiff must demonstrate that his liberty interest was deprived without due process of law in addition to proving the deprivation of a liberty interest". Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006).

53. Here, Plaintiff was denied such a hearing by the Defendants.

54. As a proximate result of Defendant's actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to his professional reputation.

### SIXTH CLAIM FOR RELIEF
### AS TO ALL DEFENDANTS
### CAUSE OF ACTION FOR NEGLIGENCE

55. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

56. While acting under the color of state law, the NYC DOE and UFT constructively terminated Plaintiff's license without providing procedural due process before the deprivation of property.

57. All Defendants were negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to the Plaintiff; such negligence was continuing and cumulative over the period of time referenced herein.

58. Defendants' negligence and negligent acts, whether taken singularly or in combination, were a direct and proximate cause of Plaintiff's suffering, mental anguish, and loss of personal dignity, both in the past and continuing in the future.

59. The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Plaintiff; in screening them before taking action against a teacher, for their credibility, veracity, and reliability; and for the removal of the Plaintiff from his position; among other things: in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against faculty members; in failing to perform certain procedures, which the reasonably skillful and competent personnel

17

would have so done under the circumstances; and in violating each and every rule, regulation,

code statute or ordinance governing the exercise of reasonable care and due diligence concerning

the management, and control of the aforementioned situation, including but not limited to,

violating the contract existing between the New York City Department of Education (NYC

DOE) and the United Federation of Teachers (UFT).

60. As a proximate result of Defendants' actions against Plaintiff, Plaintiff has suffered monetary

damages, a loss of past and future income, severe emotional distress, humiliation, mental and

physical anguish and suffering and damage to his professional reputation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A. For appropriate compensatory damages against Defendants in an amount to be
   determined at trial
B. For appropriate declaratory relief regarding the unconstitutional acts and practices of
   Defendants;
C. For nominal damages
D. For such other relief and further relief as may be deemed just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury of all issues triable of right by a jury.

Dated:      October __, 2019
            New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

(*List the name(s) of the plaintiff(s)/petitioner(s).*)

____ Civ. _____ (_____) (_____)

- against -

**AFFIRMATION OF SERVICE**

_____

_____

_____

(*List the name(s) of the defendant(s)/respondent(s).*)

I, (*print your name*) _____, declare under penalty of perjury that I

served a copy of the attached (*list the names of the documents you served*): _____

_____

_____

upon all other parties in this case by (*state how you served the documents, for example, hand delivery,*

*mail, overnight express*) _____ to the

following persons (*list the names and addresses of the people you served*): _____

_____

_____

_____

on (*date you served the document(s)*) _____.

_____
Dated

_____
Signature

_____
Address

_____
City, State

_____
Zip

_____
Telephone Number

_____
E-Mail Address

*Rev. 01/2013*

Jaclyn Vargo
Office of the Special Commissioner of Investigation
12/13/15


Dear Commissioner Vargo;

   Re: Appointment of Principal with improper/no C-30 at the School of Cooperative Technical
                         Education (Co-Op Tech)

        On Friday 12/11/15, teachers at Co-Op Tech informed me that one Corey Prober was
introduced as principal of the school, and no proper C-30 was conducted.
        Around the end of the last school year, LIS, Nancy Velez informed teachers that John
Widlund of Co-Op Tech was removed as principal, and that Anda McGowan would act until a
C-30 was held. Being aware of District 79 prior disregard for the C-30 (see Appendix A),
teachers sought and received assurance from LIZ Velez that a C-30 would be held. (Co-Op Tech
teachers are spread out over multiple sites.)
        During the summer (2014) when all teachers and some administrators were off (or out of
the country), I was informed that potential administrators were being invited to the school. I
showed up and when I inquired regarding the timing of the event, the Deputy Superintendent
revealed it was about giving a tour of the [empty] school.
        At the beginning of school (2015), I made enquiries regarding the C-30 and the need for
participants to be selected as per the Chancellors Regulations. No teachers reveal that they
received information, or were invited to participate.
        On Friday 12/11/15, I learned from unofficial sources that Corey Prober was introduced
to Co-Op staff (at 96 St.) as principal. I have no email from the school about the appointment.
In addition, I have no empirical or primary evidence that a proper C-30 conducted. Also,
educators at the other sites revealed they had no knowledge of same.
However, secondary sources revealed that three individuals based at CoOp Tech main site
constituted the C-30, and they did not send Mr. Proper as a top candidate.
        Irrespective, the process mandated by Chancellor Regulation (C-30) was not adhered to,
and the history of the District engaging in flaunting of the Chancellor's Reg to advance
nepotism, racism, and the denial of equal opportunity dictate an investigation and the conduction
of a true C-30. That was done on the previous occasions when I reported fraudulent procedures
and ask that a proper C-30 be conducted.


        Because of the frequency of the occurrence (likened to a criminal enterprise) and the fact
that Blacks are being discriminated and denied equal opportunity by the District, I will also seek
state and federal probes.


Dr. Rupert Green

Appendix A:

My 2011 complaint re D 79 appointment of three administrators without C-30.

**The principal stated** "I am in contact with the district and it will happen. No one is appointed and C-30s will take place.  Thank you for the information."

Is the principal being misled?  The proceeding lists Ms. Jernee as an AP for Coop Tech and no C-30 was conducted?

The proceeding lists the individuals whom we have been told are APs.  Two AP positions were advertised for Coop Tech.  One for Ms. Viscovich and another for Ms. Jernee's whom we were informed were Aps.  We were also informed that Ms. Carolyn Peterson was an AP at Coop Tech, but according to the DOE, she is not.  For her to be listed as AP IA, the school/district should have informed the DOE that she was to wit: "Hiring Managers must notify their designated HR contact of all interim acting assignments prior to the commencement of service.  A Commencement of Interim Acting Service Form, signed by the employee and the Hiring Manager must be signed **prior** to the start date and submitted to DHR. See Toolkit B.1 for the Commencement of Interim Acting Service Form."  Such requirements also go for Ms. Viscovich.  She is not listed as an APIA for Coop Tech.

Since neither is listed as an AP IAs for Coop Tech, there are question regarding their legitimacy.  The AP positions must be advertised and a C-30s conducted.  Contact your union and the principal for an explanation.

Contact
Alias
MViscovich
E-mail
MViscovich@schools.nyc.gov
Office
ALTERNATIVE SCHOOLS AND ADULT & CONTINUING ED.
Phone
(917) 521-3632
Information
Job title
Dir. of Literacy Initiatives/Suspensions & Corrections
Department
30
Company
NYCDOE
**Organization**
Shares same manager:
Viscovich Melissa , Dir. of Literacy Initiatives/Suspensions & Corrections

**Jernee Nicole (18K500)**

Contact
Alias
NJernee

E-mail
NJernee@schools.nyc.gov
Office
SCHOOL OF CO-OP TECH. ED.
Phone
(718) 290-8618
Information
Job title
Assistant Principal
Company
NYCDOE

## Peterson Carolyn (79X695)

Contact
Alias
CPeters12
E-mail
CPeters12@schools.nyc.gov
Office
Passages Academy - Bklyn Site
Phone
(718) 495-8160
Fax
(718) 742-9510
Information
Job title
Assistant principal
Department
Alternative
Company
NYCDOE
**Organization**
Shares same manager:
Peterson Carolyn (79X695), Assistant principal
Availability
Mon 12/19/2011
Show only working hours



**nysut**
*A Union of Professionals*

**Office of General Counsel**

**Robert T. Reilly**
*General Counsel*

Albany                                                                    New York

**Jennifer N. Coffey**                                    **Claude I. Hersh**
*Associate General Counsel*                    *Assistant General Counsel*

**Michael S. Travinski**                              **Lena M. Ackerman**
*Associate General Counsel*                    *Associate General Counsel*

**ATTORNEY-CLIENT COMMUNICATION/
PRIVILEGED AND CONFIDENTIAL**

April 23, 2018

*VIA E-MAIL pcgh0108@aol.com & REGULAR MAIL*

Felicia Alterescu
45 Hilden Street
Kings Park, NY 11754

**Re:   Alterescu, Felicia advs. New York City Board of Education
          Our File No. 262401-T240**

Dear Ms. Alterescu:

This letter is in response to your inquiry regarding whether the decision in *Cardinale v. New York City Dep't of Educ.*, Index No. 85165-2017 (Sup. Ct. Richmond County, 2018) ("*Cardinale*") has an impact upon the Education Law § 3020-a charges preferred against you by the Board of Education of the City School District of the City of New York ("Board") a/k/a New York City Department of Education ("DOE") because the Board did not affirmatively vote to prefer charges against you. Based upon our review of *Cardinale*, applicable statutes, and prior case law, this office does not believe *Cardinale* has an impact on your case. A copy of the *Cardinale* decision is attached. Further, pursuing a motion to dismiss based upon *Cardinale* would likely violate ethical obligations pursuant to the New York Lawyer's Rules of Professional Conduct ("Rules of Professional Conduct").

For tenured teachers employed by school districts outside of New York City, only the board of education, after an affirmative vote, can prefer charges against a teacher. *See* Education Law § 3020-a(2)(a). For tenured teachers employed by the DOE, an affirmative vote of the board of education is not required. Under Education Law § 2590-h(38), the Chancellor has the express authority to prefer charges against tenured teachers. The Chancellor may delegate the authority to prefer charges to superintendents. *See* Education Law § 2590-h(38). A superintendent may then further delegate the authority to prefer charges to principals. *See* Education Law § 2590-f(1)(t); *Pina-Pena v. New York City Dept. of Educ.*, 2014 N.Y. Slip Op. 30893(U) (Sup. Ct. New York County 2014). In light of the statutory framework, this office does not believe there is a viable claim to dismiss the charges preferred against you because (1)

1

the board did not vote on the charges; or (2) the power to prefer charges was improperly delegated. *See Garzilli v. Mills*, 250 A.D.3d 131 (3d Dept. 1998).

The relevant case law comports with our analysis of the applicable statutes. *Cardinale* is a significant outlier, as at least 15 different trial and appellate level courts have rejected the arguments set forth in *Cardinale* and held that an affirmative vote by the board of education for teachers employed by the DOE is not required, that the Chancellor has the authority to prefer Education Law § 3020-a charges, and that the Chancellor may delegate such authority to superintendents who may further delegate that authority to building principals.[1]  Federal courts have also rejected the arguments raised in *Cardinale*.[2]

Because the statutory and case law are overwhelmingly against the holding in *Cardinale*, this office believes that advancing an argument pursuant to *Cardinale* would be frivolous and therefore likely violate the Rules of Professional Conduct.  Rule 3.1, concerning non-meritorious claims and contentions provides as follows:

> (a) a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . .

> (b) a lawyer's conduct is "frivolous" for this Rule if:

---

[1] *See Pina-Pena*, 2014 N.Y. Slip Op. 30893(U) (Affirmative vote of board of education is not required to prefer Education Law § 3020-a charges. Chancellor has the authority prefer Education Law § 3020-a charges, which can be delegated to superintendents, who may further delegate such authority to local school principals); *Menchin v. New York City Dep't of Educ.*, 2011 N.Y. Slip Op. 51344(U) (Sup. Ct. Rockland County 2011) (same); *Soleyn v. New York City Dep't of Educ.*, 33 Misc.3d 1211(A), 2011 N.Y. Slip Op. 51897(U) (Sup. Ct. New York County 2011) (same); *Liu v. New York City Bd./Dep't of Educ.*, 2012 N.Y. Slip Op. 30008(U), *aff'd as mod.*, 107 A.D.3d 464 (1st Dep't 2013) (same); *Haas v. New York City Dep't of Educ.*, 33 Misc. 3d 1207(A), 2012 N.Y. Slip Op. 50606(U) (Sup. Ct. New York County 2012), *aff'd as mod.*, 106 A.D.3d 620 (1st Dep't 2013) (same); *McDonald v. New York City Bd./Dep't of Educ.*, 2015 WL 4038759, Index No. 652713-2014 (Sup. Ct. New York County 2015) (same); *Roman v. Dep't of Educ. of the City of New York*, 2014 N.Y. Slip Op. 30472(U) (Sup. Ct. New York County 2014), *aff'd*, 128 A.D.3d 590 (1st Dep't 2015) (same); *Pocino v. New York City Bd./Dep't of Educ.*, 2011 N.Y. Slip Op. 51513(U) (Sup. Ct. New York County 2011) (same); *Williams v. New York City Dep't of Educ.*, 2014 N.Y. Slip Op. 32258(U) (Sup. Ct. New York County 2014) (same); *Mendez v. New York City Bd./Dep't of Educ.*, 2014 WL 7496576, Index No. 651903-2013 (Sup. Ct. New York County 2014) (same); *White-Grier v. New York City Bd./Dep't of Educ.*, 2012 N.Y. Slip Op. 32466 (Sup. Ct. New York County 2012) (same); *Simons Koppel v. New York City Dep't of Educ.*, 2011 N.Y. Slip Op. 32160(U) (Sup. Ct. New York County 2011) (Affirmative vote not required.  Superintendents have the authority to prefer charges.); *Koznesoff v. New York City Bd./Dep't of Educ.*, 2015 WL 5121043, Index No. 651076-2015 (Sup. Ct. New York County 2015) (same); *Giscombe v. New York City Dep't of Educ.*, 2014 N.Y. Slip Op. 31534(U) (Sup. Ct. New York County 2014) (same); *Palencia v. New York City Bd./Dep't of Educ.*, 31 Misc. 3d 1229(A) (Sup. Ct. New York County 2011) (same).

[2] *See Ingber v. New York City Dep't of Educ.*, 2014 WL 6888777, 14-CV-3942 (S.D.N.Y. 2014).

NYCLegal: 191381

(1) the lawyer knowingly advances a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law;

Our reading of the Rules of Professional Conduct prohibits this office from advancing the arguments set forth in *Cardinale*.

Based on the applicable statutes, prior case law, and Rules of Professional Conduct, this office will not pursue a motion to dismiss the Education Law § 3020-a charges preferred against you based upon *Cardinale*. If you wish to make such a motion, you will have to proceed in this matter *pro se*, or obtain private counsel at your own expense to do so. As stated previously, neither NYSUT nor the UFT will pay the cost of a private attorney and this office will not act as co-counsel with your private attorney.

If you have any questions about this letter, please contact Keith J. Gross at (212) 228-3382, ext. 138.

Very truly yours,

ROBERT T. REILLY

RTR/KJG/ep
Enc.

NYCLegal: 191381

**Bylaws of the
Panel for Educational Policy
of the Department of Education of the
City School District of the
City of New York**

**PREAMBLE**

The Board of Education of the City of School District of the City of New York is created by the Legislature of the State of New York and derives its powers from State law.

The thirteen member body designated as the Board of Education in section 2590-b of the Education Law shall be known as the Panel for Educational Policy. The Panel for Educational Policy is a part of the governance structure responsible for the City School District of the City of New York, subject to the laws of the State of New York and the regulations of the State Department of Education. Other parts of the structure include the Chancellor, superintendents, community and citywide councils, principals, and school leadership teams. Together this structure shall be designated as the Department of Education of the City of New York.

The members of the Panel for Educational Policy are appointed according to law as follows: one member is appointed by each Borough President and eight members are appointed by the Mayor.  Each Borough President's appointee shall be a resident of the borough for which the borough president appointing him or her was elected and shall be the parent of a child attending a public school within the City School District.  Each mayoral appointee shall be a resident of the city and two mayoral appointees shall be parents of a child attending a public school within the City School District.  The parent members shall be eligible to continue to serve on the City Board for two years following the conclusion of their child's attendance at the public school.  The Chancellor shall serve as a non-voting ex-officio member of the Panel for educational Policy. The Panel shall also include two non-voting student advisory members selected by the Chancellor's High School Advisory Council. All members serve at the pleasure of the official who appointed them.

A vacancy on the Panel for Educational Policy shall, by law, be filled by appointment by the appropriate Borough President or the Mayor within 90 days of such vacancy.

The Bylaws of the Panel for Educational Policy set forth rules by which the Panel governs the conduct of its official business and affairs.

**ARTICLE 1**

**Members of the Panel for Educational Policy**

## Section 1.1 Members and Officers

The Panel for Educational Policy shall elect its own Chairperson and Vice Chair from among its voting members.

The Chairperson shall preside at all meetings of the Panel for Educational Policy and perform all duties assigned to him/her by law and these Bylaws;

The Chairperson shall appoint all committees except as otherwise determined by the Panel for Educational Policy, and the Chairperson and Vice Chair shall be non- voting ex officio members of all committees;

The Panel for Educational Policy shall appoint a Secretary of the Panel who is not an appointed member of the Panel but who shall otherwise exercise the powers and duties conferred to him or her by these Bylaws.

The Chancellor is the chief executive officer and Superintendent of the City School District and shall have such powers and duties as are prescribed by law. He/she shall have a seat on the Panel for Educational Policy and the right to speak, but not to vote, on all matters before the Panel.

The Chancellor shall have custody of the corporate seal;

Nothing in these Bylaws shall be construed to affect the powers and duties conferred by law directly on the Chancellor as the chief executive officer and Superintendent of the City School District.

### 1.1.1 Absence or disability of the Chairperson or Vice Chair

In the event of the absence or disability of the Chairperson, the Vice Chair shall perform the duties of Chairperson.

In the event of the absence or disability of both the Chairperson and the Vice Chair, the Secretary shall call the roll, and on the appearance of a quorum, shall call the Panel to order, when the Panel shall elect a chairperson pro tempore to perform the duties as Chairperson with regard to presiding at that meeting.

## Section 1.2            Panel Members – Functions

The members of the Panel for Educational Policy shall perform those duties and have those responsibilities assigned to them by Education Law 2590-g, including the responsibility to advise the Chancellor on matters affecting the welfare of the city school district and its pupils.

## Section 1.3 Non-Voting Student Advisory Members

Non-voting student advisory members shall consist of two high school students selected by the Chancellor's High School Student Advisory Council. The advisory members may attend all public meetings of the Panel for Educational Policy but shall have no vote. The terms of the non-voting student advisory members shall begin on July 1st and end on June 30th of the following year.

## Section 1.4 Committees of the Panel for Educational Policy

### 1.4.1 Appeals Committee

When an appeal is filed pursuant to pursuant to sections 2590-g, 2590-l, and 2590-i(2)(a) of the Education Law, the Chairman of the Panel for Educational Policy may appoint an appeals committee to hear appeals and make recommendations to the full Panel.

### 1.4.2. Contracts Committee

The Chairperson of the Panel for Educational Policy shall appoint a Contracts Committee which shall be responsible for reviewing contracts proposed by the Chancellor and making recommendations to the full Panel.  The Contracts Committee shall be comprised of three Panel members appointed by the Mayor, two Panel members appointed by Borough Presidents, and a non-voting designee of the Chancellor who shall be responsible for providing information to the Contracts Committee regarding proposed contracts to come before the Panel.

### 1.4.3. Other Committees

The Panel for Educational Policy may have additional committees which shall be appointed by the Chairperson in accordance with these Bylaws. Committees of the Panel for Educational Policy may include advisory members of the committee with no voting rights. An advisory member(s) may be affiliated with the public, private, or non-profit sectors.

## Section 1.5 Secretary-Functions

### 1.5.1 Secretary's appointment and duties.

The Secretary of the Panel for Educational Policy shall:

• have charge of the books, papers and documents of the Panel for Educational Policy;

• prepare the agenda for each meeting of the Panel for Educational Policy;

• keep the minutes of the Panel for Educational Policy and such other minutes as the Panel for Educational Policy may direct;

3

• make minutes of all Panel regular meetings available to the public, including via the City Board's official internet website, in a timely manner but no later than the subsequent regular Panel meeting.

• review and process in accordance with appropriate directives all appeals to the Panel for Educational Policy filed in accordance with law, and be the clerk of the appeal board in accordance with regulations of the Commissioner of Education, part 113; and

• perform such other duties as the Chairperson and the Panel shall require including providing appropriate follow-up information as requested within a reasonable time of the request.

### 1.5.2 Secretary's absence

When the Secretary is not present at any meeting, the Secretary's duties shall be performed by a designee of the Chairperson.

## ARTICLE 2

## Meetings

### Section 2.1 Types of Panel for Educational Policy Meetings

Meetings shall be open to the public except to the extent permitted by law. The Panel for Educational Policy may adjourn a meeting or recess a meeting by agreement of a majority of those members attending a meeting. Upon announcing an adjournment or a recess, the Chairperson shall also announce an estimated date and/or time for reconvening the Panel for Educational Policy into public session.

### 2.1.1 Calendar Meetings

The Panel shall hold at least one public meeting per month. These meetings are held to take official action, in public, on matters for which the Panel for Educational Policy is responsible. At calendar meetings, business shall be the consideration of the resolutions, communications and other appropriate matters as described in the agenda accompanying the meeting notice. No other matters shall be considered except by consent of a majority of the members present.

At calendar meetings the Chairperson shall ensure that there is a sufficient period of time to allow for public comment on any topic on the agenda prior to a vote by the Panel.

### Notice of Calendar Meetings

At least ten business days in advance of calendar meetings, notice of the time, place and agenda for such meetings shall be publicly provided, including via the Panel for Educational Policy's official internet web site, and circulated to all

community superintendents, community district education councils, community boards and school leadership teams.

**Agenda for Calendar Meetings**

The agenda for each calendar meeting shall be comprised of a list and brief description of the subject matter being considered and identification of all items subject to a Panel vote.  The agenda for each calendar meeting shall also include the name, office, address, email address, and telephone number of a City District Representative, knowledgeable about the agenda, from whom any information may be obtained and to whom written comments may be submitted concerning agenda items.

## 2.1.2 Public Agenda Meetings and Public Hearings

These meetings are held to encourage maximum participation of the general public in the work of the Panel for Educational Policy. At these meetings, the Panel listens to the views of the public. These meetings may proceed without a quorum present. No votes are taken at these meetings.

These meetings shall be called at the discretion of the Chairperson.

## 2.1.3 Special Calendar Meetings and Adjourned or Recessed Meetings

Special calendar meetings may be held on the call of the Chairperson.  Where possible, written notice of such meeting shall be given to each Panel member not less than twenty-four (24) hours in advance of the meeting, but in any event shall be provided as soon as practicable, and shall state the matters to be considered. No other matters may be considered at such meetings except with the consent of all members present. Meetings may be reconvened to continue the work of an adjourned or recessed meeting.

## 2.1.4 Change in Date or Time and Cancellation of Meetings

A meeting of the Panel for Educational Policy may be changed to a stated date and time at the direction of the Chairperson.

## 2.1.5 Place and Time of Meetings

All calendar meetings of the Panel for Educational Policy and public agenda meetings shall be held at a place to be determined by the Chairperson.

At least one regular public meeting shall be held in each borough of the City of New York per year.

The Panel for Educational Policy shall consider appropriate public accommodations when selecting a venue so as to maximize participation by parents and the community.

**2.1.6 Notification**

> The Secretary shall notify all members of the postponement or cancellation of any regular meeting or the calling of any special meeting or the holding of any adjourned or recessed meeting.

## Section 2.2 Quorum

A majority of the members of the Panel for Educational Policy shall constitute a quorum at all meetings of the Panel for Educational Policy. If a smaller number than the majority is present, the Secretary shall call the roll, record the names of the absentees and adjourn.

The Panel for Educational Policy shall act at its calendar and special meetings by a majority of the whole Panel for Educational Policy.

The Panel for Educational Policy shall act at executive sessions to the extent permitted by law by a majority of the whole Panel.

A committee of the Panel for Educational Policy shall act at committee meetings by a majority of the committee, to the extent permitted by law.

## Section 2.3 Parliamentary Procedures

The Chairperson shall decide all questions of order and procedure, for which the Chairperson shall refer to Roberts Rules of Order as he or she deems necessary.

At the calendar meeting the Secretary will read the heading of every resolution on the calendar. If no one attending the meeting wishes to address a particular resolution, it will be voted on the first reading.

When a question is put, every member present shall vote thereon, unless excused by the Panel. The minutes of the meeting shall reflect the vote of each member present and at the request of any member the roll of those present shall be called for the purpose of recording the yeas and nays.

If the Panel for Educational Policy does not complete the business items of a calendar meeting, the Chairperson may adjourn or recess the meeting to a specified date and time, or instruct the Secretary to reschedule the unfinished business at the next regular calendar meeting or at a special meeting.

## Section 2.4 Construction of Calendar

All resolutions requiring Panel for Educational Policy action shall be submitted to the Secretary at least five days in advance of the deadline for the provision of public notice of the meeting, as described in Section 2.1.1 of these Bylaws.

Except as otherwise provided by law, Panel members may request that items be placed on the calendar by notifying the Secretary in writing no later than two business days prior to the deadline for provision of public notice of the meeting. If, however, a Panel member makes such a request after the two day deadline but at any time prior to the upcoming calendar meeting, the Chairperson shall respond to the request at any time prior to that meeting.

If a member of the Panel for Educational Policy requests that an item be placed on the calendar at a calendar meeting, the Chairperson shall take a vote of the Panel members regarding whether such item shall be added to the calendar. An item may be added to the calendar at the meeting by majority vote of those present.

Any item which is not submitted in accordance with these procedures may be withheld by the Secretary and will appear on the calendar for the subsequent meeting.

Items may only be included on the agenda as provided by these Bylaws.

To the extent practicable, the Secretary shall deliver the agenda for each business meeting along with all available supporting materials to each member of the Panel for Educational Policy at least ten (10) business days in advance of the meeting, except in the case of a special meeting called under extenuating circumstances when materials shall be delivered at least twenty-four (24) hours in advance.

### Section 2.5  Public Review Process

### 2.5.1  Notice and Comment Period

The Panel for Educational Policy shall undertake a public review process prior to approving the following proposed items pursuant to Education Law 2590-g(1):

a)   standards, policies and objectives proposed by the Chancellor directly related to educational achievement and student performance;

b)   standards, policies, and objectives as specifically authorized or required by state or federal law or regulation;

c)   regulations proposed by the Chancellor and the Panel and any amendments made thereto;

d)   the educational facilities capital plan, and any amendments requiring Panel approval, pursuant to Education Law 2590-p;

e)   annual estimates of the total sum of money which the Panel deems necessary for the operation of the City District and the capital budget, pursuant to Educational Law 2590-q;

    f)       the allocation of projected revenues among community districts and their schools pursuant to Education Law 2590-r(a) and the aggregation of the community district budgets pursuant to 2590-r(f);

    g)      a procurement policy for the City District and any amendments made thereto; and

    h)      proposals for all school closures or significant changes in school utilization.

The public review process shall include notice of the proposed item under Panel consideration at least 45 days in advance of the Panel vote on such item. Such public notice shall include a description of the subject and the purpose and substance of the proposed item under consideration, and shall otherwise conform to the requirements of Education Law 2590-g(8)(a).

For purposes of this section, amendments of proposed items described in subsections (c) and (d) above do not include correction of typographical or grammatical errors, changes of contact information, and reformatting of documents.

## 2.5.2 Notice of Revisions

In the event that an item proposed to the Panel pursuant to 2590-g is substantially revised after public notice has been provided, the Panel for Educational Policy shall issue a revised public notice. Such revised notice shall be issued at least 15 days before a Panel vote on the proposed item, but in no event shall the Panel vote on the proposed item within 45 days from the date of the initial public notice. Notice of the revised item shall otherwise conform to the requirements of Education Law 2590-g(8)(b).

## 2.5.3 Assessment of Comments

Following the public review process, the Secretary shall make available to the public, including via the Panel's official internet web site, an assessment of the public comments concerning the item under consideration prior to 24 hours before the Panel vote on such item. The Secretary shall conduct such assessment in accordance with Education Law 2590-g(8)(c).

## 2.5.4 Emergency Adoptions

In the event that the Panel for Educational Policy or the Chancellor determines that immediate adoption of any item requiring Panel approval is necessary for the preservation of student health, safety or general welfare and that compliance with the public review process described in Section 2.5 of these Bylaws would be contrary to the public interest, such proposed item may be adopted on an emergency basis in accordance with the procedures set forth in Education Law 2590-g(9).

8

Except as otherwise provided by law, an emergency adoption of an item proposed pursuant to Education Law 2590-g(1) shall remain in effect for 60 days, during which time the Panel for Educational Policy shall comply with the public review process described in Section 2.5 of these Bylaws in order for the adopted item to become permanent.

Emergency adoptions of items relating to school closures or significant changes in school utilizations shall remain in effect for six months.  During this time the Panel shall comply with the process described in Section 2.5 of these Bylaws in order to extend the school closure or change in school utilization beyond the six month period.

## Section 2.6   Minutes

Minutes of calendar meetings shall be made publicly available, including via the Panel for Educational Policy's official internet web site, in a timely manner but no later than the subsequent calendar meeting.

## ARTICLE 3

### Bylaws

## Section 3.1 Adoption-Amendment-Repeal

Bylaws shall be adopted, amended or repealed by vote of the majority of the Panel for Educational Policy and in accordance with the requirements of Education Law 2590-d.

## Section 3.2 Suspension

Bylaws may be suspended as to a particular instance or matter, but not in general, on the vote of a majority of the full membership attending a public calendar or special meeting of the Panel for Educational Policy. Only those suspensions so enacted and recorded in writing shall have official status as representing the position of the Panel for Educational Policy.

## ARTICLE 4

### Personnel

## Section 4.1 Sabbatical Leaves of Absence

Sabbatical leaves of absence with pay may be granted by the Chancellor to eligible personnel in accordance with policies of the Panel for Educational Policy. For community school districts, the community superintendent may grant such leaves in accordance with policies of the Panel and regulations of the Chancellor.

9

Such sabbatical leaves may be terminated by the Chancellor or community superintendent prior to the initially established expiration dates thereof.

Such sabbatical leaves may be canceled by the Chancellor or community superintendent when the application for cancellation is received prior to the first school day of the period of such leave.

### Section 4.2 Removal-Suspension-Trial of Charges

### 4.2.1 Charges

Charges may be preferred against any employee for:

unauthorized absence from duty or excessive lateness;

neglect of duty;

conduct unbecoming his/her position, or conduct prejudicial to the good order, efficiency or discipline of the service;

incompetent or inefficient service;

violation of the Bylaws, rules or regulations of the board of education; or

any substantial cause that renders the employee unfit to perform his/her obligations properly to the service.

### 4.2.2 Trial of Charges-Classified Employees

The Chancellor or the Chancellor's designee shall initiate charges against an employee in the classified service in accordance with Civil Service Law, section 75.

### 4.2.3 Trial of Charges-Charges

An employee against whom charges have been preferred shall in person, or by counsel or representative, be entitled before the hearing to be furnished a copy of the charges and specifications, and shall be entitled to participate in person, by counsel or representative, in the trial of the charges, to cross-examine opposing witnesses and to call and examine witnesses in his/her own behalf. The preferral of charges against an employee shall not prevent the inclusion in the trial of additional charges and specifications, provided the employee is informed thereof.

### 4.2.4 Default or Waiver by Employee

If a pedagogical employee waives the right to a hearing pursuant to a section 3020-a of the State Education Law, the Panel for Educational Policy or the

community superintendent, as applicable, shall proceed to determine the case and fix the penalty or punishment, if any to be imposed, in accordance with section 3020-a of the State Education Law.

**4.2.5 Decision on Charges After Trial**

1) Teaching and Supervisory Staff

Within thirty days of receipt of the report of the section 3020-a hearing panel, or as soon thereafter as practicable the Chancellor or the community superintendent, as applicable, shall implement the panel's recommendations. An appeal of the findings and recommendations of the hearing panel may be taken in accordance with section 3020-a of the State Education Law.

2) Classified Employees

The report of a trial committee or trial examiner shall be subject to final action by the Chancellor who shall, before acting, review the testimony and the evidence in the case. The reasons and factual basis for the decision shall be summarized in the Chancellor's final decision.

**4.3 Reviews related to Ratings and/or Recommendations re Probationary Service of Pedagogical Personnel**

**4.3.1 Appeals re Ratings**

Any person in the employ of the City School District who appears before the Chancellor, or a committee designated by the Chancellor, the size and composition of which the Chancellor is to determine, in respect to an appeal from a rating of an other than a satisfactory rating or an NR rating shall be afforded the opportunity for review in the manner set forth herein and in procedures established by the Chancellor.

A committee designated by the Chancellor shall summon the appellant as soon as practicable, but in any event not later than one year from the date of the receipt of the rating by the appellant.

The findings and recommendations of the committee shall be submitted to the Chancellor for a final decision.

**4.3.2 Appeals re Discontinuance of Probationary Service**

Any person in the employ of the City School District who appears before the Chancellor, or a committee designated by the Chancellor, concerning the discontinuance of service during the probationary term, or at the expiration thereof, shall have a review of the matter before a committee which shall be designated in accordance with contractual agreements covering employees or by

11

regulations of the Chancellor, as appropriate. After the review, the committee shall forward its advisory recommendation to the community superintendent or to the Chancellor in accordance with contractual agreements.

### 4.3.3 Committee Reviews

Any person who appears before a committee for the purpose of appealing a rating or concerning the discontinuance or denial of completion of probationary service or denial of certification or termination of a pedagogical license issued by or on behalf of the City School District to a non-tenured employee shall receive written notice of the time and place of the review, addressed either to the place of employment or to the last known post office address, at least one week before the date specified for said review. The notice shall inform the person that he or she is entitled to appear in person, to be accompanied and advised by an employee of the City School District or a representative of the union recognized by the Panel for Educational Policy as the collective bargaining representative for the employee, to be confronted by witnesses, if any, to call witnesses, to examine exhibits and to introduce any relevant evidence.

If a witness who was summoned or requested to appear is unavailable or unwilling to appear despite the best efforts of the committee, this shall not prevent a review from continuing but shall be one of the factors considered by the committee.

The advisor need not be an attorney. The attendance of such advisor and witnesses, if employees of the City School District, shall not be deemed absence from official duty, but such persons shall not absent themselves from school duty except pursuant to such rules as the chancellor shall prescribe.

No employee of the City School District shall serve as an advisor or panel member in more than two (2) matters in a school year nor request or accept directly or indirectly any remuneration or other consideration for service as adviser or witness.

A sound recording shall be kept of the proceedings and the person who is appearing before the committee for the purpose of appealing a rating or concerning the discontinuance or denial of completion of probationary service or denial of certification shall be entitled to receive a duplicate of the sound recording of the review, at cost, upon written request. In the event that the sound recording equipment is not available or breaks down during the review, minutes shall be taken of the proceedings and such minutes shall be available to the person summoned at cost and upon reasonable written notice.

Nothing herein shall preclude witnesses from appearing at review proceedings by teleconference or other technological means.

Employees who are not entitled to a review of a u-rating, who timely appeal the decision to terminate their license or certificate, shall have the decision to

12

terminate their licenses or certificates reviewed in accordance with the procedures contained in Chancellor's Regulation C-31. Those procedures shall be deemed to be incorporated herein, and witnesses may also appear by teleconference or by other technological means.

**Section 4.4 Retirement**

Retirement of employees of the City School District shall be in accordance with applicable provisions of laws and rules and regulations pertaining to the retirement system of which such employee is a member. An employee of the City School District shall submit to a medical examination by the medical board of the retirement system of which he/she is a member when requested to do so, pursuant to an application of the Chancellor in accordance with applicable law or regulations pertaining to such retirement system after examination by and recommendation of the medical division. Neglect, refusal or failure to submit to such medical examination shall be deemed an act of insubordination.

# ARTICLE 5

## Appeals

**Section 5.1        Rules**

All appeals to the Panel for Educational Policy shall be served on the person designated by the Chancellor to receive such appeals. The Chancellor shall be authorized to establish and publish appropriate rules for the processing of appeals.

# ARTICLE 6

## Contracts and Settlements

**Section 6.1  Contracts**

The Chancellor shall present contracts to the Panel for Educational Policy for its approval in the following circumstances:

- where the contract is let by a procurement method other than competitive sealed bidding pursuant to Education Law 2590-h;

- where the contract provides for technical, consultant or personal services;

- where the value of the contract exceeds or projects an annual expenditure exceeding one million dollars; or

- where the value of a contract awarded to a single entity exceeds one million dollars annually.

**Section 6.2 Settlements**

Prior to approving the settlement of litigation where the settlement would significantly impact the provision of educational services or programming within the City School District, the Chancellor shall present the proposed settlement to the Panel for Educational Policy for its approval.

Case 1:18-cv-10817-AT-SWC   Document 34   Filed 10/22/19   Page 43 of 61

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

-----------------------------------------------------------------X

In the Matter of the Application of
ROSALIE CARDINALE,

                                    Petitioner,

        -against-


THE NEW YORK CITY DEPARTMENT OF
EDUCATION

                                    Respondent.

-----------------------------------------------------------------X

DCM PART 3

Present:

Hon. Desmond Green, J.S.C.

DECISION AND ORDER

Index No. 85165/2017

Motion No. 3228-001
              4596-002


The following papers numbered 1 to 6 were marked fully submitted on February 21, 2018:

|  | Numbered |
|---|---|
| Notice of Petition and Verified Petition and Exhibits (dated August 9, 2017)............................................................ | 1 |
| Notice of Cross-Motion to Dismiss made by Respondent (dated November 8, 2017).......................................................... | 2 |
| Affidavit of Ms. Laura C. Williams (admission pending) in Support of Respondent's Cross-Motion to Dismiss with Exhibits Attached (dated November 8, 2017) ........................................................ | 3 |
| Memorandum of Law in Support of Respondent's Cross-Motion to Dismiss (dated November 8, 2017) ........................................................ | 4 |
| Combined Affidavit and Memorandum of Law in Opposition (dated November 29, 2017) ...................................................... | 5 |
| Reply Affidavit of Ms. Laura C. Williams (admission pending) in Support of Respondent's Cross-Motion to Dismiss (dated December 4, 2017) ........................................................ | 6 |

Upon the foregoing papers, the Verified Petition (001) seeking the modification of the Arbitrator's Opinion and Award to, *inter alia*, restore Petitioner to her position within the Department of Education is granted. This Court denies the cross-motion made by Respondent,

Department of Education (hereinafter "DOE") seeking the dismissal of Rosalie Cardinale's verified petition.

FACTS

The DOE employed Petitioner, Rosalie Cardinale as a special education teacher for 17 years. Petitioner spent the last 15 years of her employment with the DOE at Public School 55 The Henry M. Boehm School (hereinafter "P.S. 55"). Cardinale received satisfactory observations up to the 2013-2014 school year when the DOE adopted the Advance System which uses the Danielson Framework for Teaching. The DOE issued Charges and Specifications (hereinafter "Specifications") pursuant to Education Law § 3020-a for misconduct during the school years 2013-2014, 2014-2015, 2015-2016, and 2016-2017 through Howard Friedman, General Counsel to the Department of Education by Jessica Wolff-Fordham on February 27, 2017.[1] The caption referenced Rosalie Cardinale, but the body of the Specifications detailed the DOE's allegations against "Jane Smith."

The Specifications alleged Petitioner: 1) failed to properly, adequately, and/or effectively plan and/or execute separate lessons, as observed by school administrators on thirteen observation dates, 2) showed a lack of professionalism and poor judgment, 3) neglected her duties, and 4) failed to implement directives and recommendations for improvement.

Petitioner's counsel sought dismissal of the charges against Cardinale arguing the DOE failed to abide by the statutory framework for the removal of a tenured teacher for cause. Petitioner

---

[1]    The Introduction to the "Specifications" reads as follows: "The Board of Education of the City of New York, also known as the New York City Department of Education, brings this action pursuant to Education Law § 3020-a against **Jane Smith** for her failures in the nature of incompetent and inefficient services, misconduct, neglect of duty, and unwillingness and/or inability to follow procedures and carry out normal duties during the 2013-2014, 2014-2015, 2015-2016, and 2016-2017 school years." (emphasis added)

2

argued the DOE failed to conduct an executive meeting of the employing board to find probable cause to conduct a hearing before issuing the Specifications against Petitioner. Hearing Officer Michael A. Lendino rejected Petitioner's motion to dismiss the Section 3020-a Education Law Proceeding. Hearing Office Lendino provided reasoning for his denial in the Opinion and Award where he found the Board of Education Chancellor in the City School District of New York may delegate the authority to conduct an executive meeting by the employing board on probable cause to District Superintendents who may then delegate the same authority to local school principals. Hearing Officer Lendino determined further, without citation to any evidence, that Chancellor Carmen Farina delegated her authority to the District Superintendents who in turn delegated it to local principals.[2]

This Court reviews a record which remains unclear concerning whether the local principal or district superintendent determined probable cause existed justifying the allegations levied against Petitioner to warrant an Education Law § 3020-a hearing. The record, however, makes clear an Education Law § 3020-a proceeding took place on the following dates: April 25 and 26, and May 18, 23, 24, and 31, 2017 before Hearing Officer Lendino.

Hearing Officer Lendino considered testimony given by Petitioner, Principal Sharon Fishman (hereinafter "Fishman"), the principal of P.S. 55, and Assistant Principal Paul Giordano (hereinafter "Giordano"), also from P.S. 55 when he rendered his Opinion and Award. The

---

[2]     HO Lendino cited *Pina-Pena v. New York City Dept. of Educ.*, 2014 N.Y. Misc. LEXIS 1630, 2014 NY Slip Op 30893 (U), NY Sup. Ct., Apr. 9, 2014, to demonstrate the delegation of authority from the Chancellor to subordinate employees. The facts of *Pina-Pena*, however, concern a 3020-a Education Law Proceeding taking place in September and November 2012 under former Chancellor Dennis Wolcott not Chancellor Carmen Farina.

Case 1:18-cv-10811-AT-GWG    Document 34    Filed 10/22/19    Page 46 of 61

testimony given by Fishman and Giordano received additional support from ten informal observation reports and three formal observation reports.[3]

Hearing Officer Lendino issued an Opinion and Award on July 27, 2017. The Opinion and Award contained the following findings relating to Specifications 1 and 4:

> **Specification 1**: During the 2013-2014, 2014-2015, 2015-2016 and 2016-2017 school years, [Petitioner] failed to properly, adequately and/or effectively plan and/or execute separate lesson[s] as observed on or about each of the following dates:
>
> a. April 10, 2014;
> b. May 29, 2014;
> c. November 10, 2014;
> d. January 20, 2015
> e. February 25, 2015;
> f. May 18, 2015;
> g. October 8, 2015;
> h. May 11, 2016;
> i. May 26, 2016;
> j. June 1, 2016;
> k. September 27, 2016;
> l. November 16, 2016; and/or
> m. January 17, 2017
>
> **Specification 4**: [Petitioner] failed during the 2013-2014, 2014-2015, 2015-2016 school years to fully and/or consistently implement directives and/or recommendations for pedagogical improvement and professional development provided in observation conferences with administrators and/or outside observers; instructional meetings; teacher improvement plans; one-on-one meetings with administrators, school-based coaches, and/or outside observers; as well as school-wide professional development with regard to:
>
> a. Proper planning, pacing, and/or execution of lessons;

---

[3]    The combined number of observation minutes over the four school years at issue yielded 362 minutes (6.03 hours) of observation. Of the total 362 minutes observed during four school years, 110 minutes or 1 hour and 40 minutes came through formal observations. The observation report indicates a formal observation involved either Fishman or Giordano observing a full class period. The formal observation reports, however, indicate three different "full period" times of 30 minutes, 35 minutes, and 45 minutes. The formal observation reports also fail to document what constitutes a "period" for students taught by Cardinale in kindergarten through second grade.

Case 1:18-cv-10811-AT-GWG Document 34 Filed 10/22/19 Page 47 of 61

    b. Using appropriate methods and/or techniques during lessons;
    c. Designing coherent instruction;
    d. Using assessment in instruction; and/or
    e. Using appropriate questioning and discussion techniques.

Hearing Officer Lendino's Opinion and Award found Cardinale's dismissal from service was an appropriate penalty.

Cardinale commenced this Article 75 proceeding challenging the Opinion and Award dismissing her from service arguing, *inter alia*, significant procedural and substantive deficiencies existed in the hearing process which interferes with the public policy concerning the protection of teachers tenure. Petitioner argues the procedural violations require this Court to restore her status as a DOE employee at P.S. 55.

The DOE cross-moves to dismiss Cardinale's verified petition arguing that it fails to state a cause of action and to confirm the arbitration award under CPLR § 7511(e).

## DISCUSSION

*I.*    *Petitioner Demonstrates Procedural Deficiencies Exist Requiring This Court to Vacate The Arbitration Award for Violation of Strong Public Policy and the Opinion and Award Was Irrational On Its Face*

A court shall vacate an arbitration award when it finds either (1) corruption, fraud, or misconduct, (2) the partiality of an arbitrator, or (3) an award which is made in excess of the arbitrator's enumerated powers prejudiced a party's rights (*see* CPLR 7511 [b] [i]-[iii], *Matter of Meehan v. Nassau Community College*, 242 AD2d 155, 157 (2d Dept 1998). Court of Appeals case law provides an arbitration award may also be vacated where it is irrational or violative of strong public policy (*see, Town of Callicoon v. Civil Serv. Emples. Ass'n, Inc.*, 70 NY2d 907 [1987], *Matter of United Fedn. Of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. Of City School Dist., of City of N.Y.*, 1 NY3d 72 [2003]).

Case 1:19-cv-10811-AT-SN Document 34 Filed 10/22/19 Page 48 of 61

A. *The Opinion and Award Stripping Petitioner of Tenure and Terminating Her Employment Is Irrational*

The Supreme Court of the United States held the Constitution does not create property rights, "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 [1972]. New York State created the public school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. (*See Education Law* §§§ 3012, 3012-a, 3020, *Holt v. Board of Educ. of Webutuck Cent. School Dist.*, 52 NY2d 625 [1981], *Matter of Abromvich v. Board of Educ. of Cent. School Dist. No. 1 of Towns of Brookhaven & Smithtown*, 46 NY2d 450 [1979]). Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 [1985].

New York State guarantees a tenured teacher's due process rights to continued employment by statute requiring that "no [tenured teacher] … shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement…" *Education Law* § 3020.

The statutory procedural process afforded to teachers with tenure under *Education Law* § 3020-a requires:

- The filing of charges "in writing and filed with the clerk or secretary for the school district or employing board during the period between the actual opening and closing of the school year for which the employed is normally required to serve. *Education Law* § 3020-a(1)

- "Within five days after receipt of charges, the employing board, in executive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists to bring a disciplinary proceeding against the employee pursuant to this section." *Education Law* § 3020-a(2).

- Where an employing board determines probable cause exists for discipline the tenured teacher shall receive: "a written statement specifying (i) the charges in detail, (ii) the maximum penalty which will be imposed by the board if the employee does not request a hearing or that will be sought by the board if the employee is found guilty of the charges after a hearing and (iii) the employee's rights under this section, shall be immediately forwarded to the accused employee...." *Id.*

Here, Petitioner's counsel sought dismissal of the charges against Petitioner at the outset of the hearing. Counsel argued before Hearing Officer Lendino, and now before this Court, that the DOE's failure to submit the charges against Petitioner to the employing board to determine whether probable cause existed constitutes a procedure defect depriving Hearing Officer Lendino of jurisdiction to consider the charges. Hearing Officer Lendino rejected Petitioner's argument, but this Court does not.

The argument raised by the DOE opposing Petitioner's original motion before Hearing Officer Lendino, and again before this Court, insisting the statutory framework does not require probable cause determination by the employing board before an Education Law § 3020-a hearing is unavailing. The DOE reasons the Chancellor wields the statutory power to "exercise all the duties and responsibilities of the employing board... [and] shall exercise all such duties and responsibilities for all community districts or may delegate the exercise of all such duties and

Case 1:18-cv-10811-AT-GWG Document 54 Filed 10/22/19 Page 50 of 61

responsibilities to all of the community superintendents..." *Education Law* § 2590-h[38].[4] In turn, the community superintendents may delegate any powers and duties conferred upon them to any subordinates, in this case, local principals. (*See Education Law* § 2590-f[1][b]). The DOE, however, fails to provide this Court with evidence demonstrating the office of the Chancellor delegated any of its duties and responsibilities to the community superintendents. Similarly, the DOE fails to provide any evidence showing a delegation of duties and responsibilities from the community superintendents to the local principals.

The cases cited by the DOE demonstrate a court's analysis begins with considering evidence indicating the office of the Chancellor transferred responsibilities and duties to subordinate administrators. *See Pina-Pena v. New York City Dept. of Educ.*, 2014 NY Slip Op 30893(U), Sup Ct. NY Cty, Apr. 9, 2014, (finding "the Chancellor [Wolcott] delegated the relevant authority to the District Superintendent who, in turn, delegated her authority to local school principals"); *Matter of Haas v. New York City Bd./Dept. of Educ.*, 35 Misc3d 1207(A), Sup Ct. NY Cty, Apr. 4, 2012 (finding "[o]n August 19, 2002, the chancellor [Klein] delegated 'to the community school district superintendents the authority to prefer charges against tenured pedagogical employees pursuant to Education [Law] section 3020-1... On August 27, 2007 ... the community superintendent of community school district 29...delegated to each principal of a school within the district the power to '[i]nitiate and resolve charges against teaching ... staff members in your school who have completed probation'"); *Matter of Roberts v. Department of Educ. of the City of New York*, 3 NYS3d 287, Sup Ct. NY Cty, Oct. 8, 2014 (finding "On April 19, 2011, Chancellor Dennis M. Walcott delegated...the power to initiate and resolve disciplinary

---

[4]     *Education Law* § 2590-h(19) provides additional authority allowing the Chancellor to "[d]elegate any of his or her powers and duties to such subordinate officers or employees as he or she deems appropriate and to modify or rescind any power and duty so delegated."

charges against teaching and supervisory staff members to community school district superintendents"). There exists no evidence in the record before this Court supporting the transfer of any duties and responsibilities from the office of the Chancellor to any subordinate administrator.[5]

Absent a demonstration by the DOE that the Office of the Chancellor delegated powers to subordinate administrators to unilaterally commence a hearing under *Education Law* § 3020-a Hearing Officer Lendino had any authority to consider the charges levied against Petitioner. Hearing Officer Lendino conducted the *Education Law* § 3020-a hearing based on unproven assumptions that the delegations of duties and responsibilities from the office of the Chancellor to subordinate administrators occurred in compliance with the relevant statutory authority.

Indeed, Respondent fails to counter arguments raised in this Petition and provide evidence, administrative rules, or executive orders, or similar pronouncement of the exercise of executive authority, indicating Chancellor Farina delegated her duties and responsibilities to subordinate administrators. Notwithstanding the low standard needed to demonstrate the rationality of an Opinion and Award, the fact that the Hearing Officer failed to consider a basic jurisdictional predicate before conducting the hearing renders the entire decision irrational because his authority to conduct the hearing is suspect.

### B. The Opinion and Award Violates New York's Strong Public Policy Protecting Teacher's Tenure

The Court of Appeals speaking on the necessity of teacher's tenure stated:

---

[5]    This Court also notes that while the office of the Chancellor may exercise the power of the employing board and delegate the same to subordinate administration officials, it does not appear obligatory. *See Matter of Norgrove v. Board of Educ. of City School Dist. of City of N.Y.*, 23 Misc3d 684, Sup. Ct. NY Cty., Jan. 13, 2009 [finding in 2007 the Board of Education and not the office of the Chancellor, or its designee, issued a "Notice of Determination of Probable Causes on Charges Brought Against Tenured School District Employee"]

> [tenure] is a legislative expression of a firm public policy
> determination that the interests of the public in the education of our
> youth can best be served by a system designed to foster academic
> freedom in our schools and to protect competent teachers from the
> abuses they might be subjected to if they could be dismissed at the
> whim of their supervisors. In order to effectuate these convergent
> purposes, **it is necessary to construe the tenure system broadly in
> favor of the teacher, and to strictly police procedures which
> might result in the corruption of that system** by the manipulation
> of the requirements for tenure…

*Ricca v. Board of Education*, 47 NY2d 385, 391 (1979) (emphasis added). This Court reasons the

same strict policing applied to the procedure granting tenure to teachers apply equally to the

procedures applied when a school district seeks the removal of a teacher's tenure. (*See Holt v.

Board of Ed. of Webutuck Central School Dist.*, 52 NY2d 625, 632 [1981] [finding "[t]he purpose

of the statute [*Education Law* § 3020-a] is to protect teachers from arbitrary imposition of formal

discipline"])

Petitioner argues, correctly, the Education Law requires a finding "whether probable cause

exists to bring a disciplinary proceeding against an employee" (*Education Law* § 3020-a[2]).

There exists no statutory language indicating the statutes permitting the delegation of duties and

responsibilities from the employing board to the office of the Chancellor eliminated the

precondition of a finding of "probable cause" before subjecting a tenured teacher to the disciplinary

hearing anticipated under *Education Law* § 3020-a. Indeed if the DOE properly demonstrated the

office of the Chancellor delegated its duties and responsibilities to subordinate administrators,

there exists no evidence showing a determination that probable cause existed supporting the

allegations against Petitioner.

The DOE's failure to make a finding of probable cause and adhere to the procedural

protections guaranteed to Petitioner in *Education Law* § 3020-a violates Petitioner's due process

rights and violates New York's strong public policy protecting the integrity of the tenure system.

10

Case 1:18-cv-10817-AT-SWC   Document 34   Filed 10/22/19   Page 53 of 61

The hearing conducted before Hearing Officer Lendino, therefore, is a nullity. (*See Sanders v. Board of Educ. of City School Dist. of City of New York*, 17 AD3d 682 [2d Dept 2005], *Morgan v. Board of Educ. of City of New York*, 201 AD2d 482 [2d Dept 1994]).

## CONCLUSION

Petitioner demonstrates the Opinion and Award rendered by Hearing Officer Lendino was both irrational and violative of New York's strong public policy protecting the property rights of tenured teachers. The DOE may not abridge the due process protections afforded to tenured teachers for any reason. The DOE's analysis of the law, undeniably, dispenses with the various layers of checks and balances protecting a tenured teacher's Constitutionally protected property right in continued employment and places the decision concerning whether a disciplinary hearing is necessary into the hands of a single administrator. The DOE's suggested framework ignores the various levels of administrative oversight put in place by the legislature to protect tenured teachers. This Court finds such a construction suspect on its face. The DOE, however, failed completely to present evidence or other controlling authority indicating the statutory delegation of duties and responsibilities from the office of the Chancellor to subordinate administrators occurred.

This Court finds the DOE's interpretation of the statutory framework, even had they presented evidence permitting such delegations, runs afoul of the clear legislative intent. The concentration of all disciplinary authority into the hands of a single local administrator creates the very "arbitrary imposition of formal discipline" the legislature sought to prevent when it enacted *Education Law § 3020-a* (*Holt v. Board of Ed. of Webutuck Central School Dist.*, 52 NY2d 625, 632 [1981]).

This Court finds the DOE's interpretation of the statutory framework, even had they presented evidence permitting such delegations, runs afoul of the clear legislative intent contained

11

INDEX NO. 85165/2017
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 04/03/2018

in *Education Law* § 3020-a requiring different levels of the education administration apparatus to take part in the decision to discipline a tenured teacher. New York State public policy requires strict compliance with the procedural safeguards afforded to tenured teachers. The DOE's failure to conduct a probable cause analysis deprived Petitioner of her due process rights, thus violating New York's strongly held policy supporting the tenure system.

Accordingly, it is hereby:

ORDERED, that Rosalie Cardinale's Petition is granted in its entirety; it is further

ORDERED, that the Award and Opinion dated July 27, 2017 is vacated; it is further

ORDERED, that Rosalie Cardinale shall be reinstated effective immediately and entitled to full back pay from the date of termination; it is further

ORDERED, that Respondent's cross-motion is denied in its entirety; and it is further

ORDERED, that Petitioner shall settle judgment.


ENTER,

_____

Hon. Desmond Green, J.S.C.


DATED: March 29, 2018

**From:** Adam Ross <ARoss@uft.org>
**To:** "'educateme5@yahoo.com'" <educateme5@yahoo.com>
**Cc:** Janella Hinds <JHinds@uft.org>; Patricia Crispino <pcrispino@uft.org>
**Sent:** Tuesday, April 5, 2016 12:00 PM
**Subject:** FW: Summons Letter

Dr. Green,

My name is Adam Ross and I am the UFT's General Counsel.  Your email to UFT President Michael Mulgrew was forwarded to me and I am responding on his behalf.

I understand how difficult it can be to be reassigned and facing an SCI investigation.  This is one reason why the UFT provides an attorney to every member who is subject to an investigation by SCI if they request one.  Please contact your district representative if you need an attorney assigned.  This is also why the UFT negotiated contractual provisions that limit the length of time someone can be reassigned during an investigation.  While there are some exceptions for certain types of SCI investigations, generally, a member cannot be reassigned for longer than 60 days.  If you are reassigned for longer, you should contact your district representative.

If you believe that a false allegation has been made to SCI in retaliation for you making a legitimate complaint regarding racism or discrimination, you should speak to your district representative immediately.   If appropriate, she will submit a legal intake and a NYSUT attorney assigned to review whether your legal rights have been violated.

Please remember that an investigation does not mean you have done anything wrong.  While a "substantiated" SCI investigation may result in a letter to file, as a tenured teacher, you can only be found "guilty" of misconduct and disciplined through the Education Law § 3020-a process.

Finally, I have reached out the DOE to see if I can find out the basis for the reassignment.  I will let you know as soon as I hear something.

Given all of this, I do not believe that your reassignment is in violation of the due process provisions of the constitution.

Sincerely,
Adam Ross


Adam S. Ross, Esq.
General Counsel
United Federation of Teachers
14th Floor
52 Broadway
New York, NY 10004
(212) 701-9420


CONFIDENTIALITY NOTICE:  This communication (including any attachments) is confidential and privileged.  The information is intended for the sole use of the addressee.  If you are not the intended recipient, you are advised that any disclosure, copying, distribution, use, or the taking of any action in reliance upon this communication is prohibited.  If you have received this communication in error, please notify the sender by electronic mail or by telephone (212-701-9420) immediately and delete this communication (including any attachments).

**From:** Rupert Green
**Sent:** Thursday, March 31, 2016 6:18:14 PM
**To:** Patricia Crispino; Janella Hinds; Michael Mulgrew; Chris Williams
**Subject:** Fw: Summons Letter
Please find attached letter pulling me from my class. Notwithstanding it is retaliation and using investigative agencies of the DOE for vindictive purposes, the process was flawed. I was not provided with a meeting where the charge was outlined and the subsequent remedy administered. As shown in attached, no meeting was conducted with the principal.

The issue of investigating from the special commissioner of investigation is disconcerting because they have conducted two investigation and found me guilty of sending emails (a First Amendment concert). So, am I being reassigned based on concluded investigation? Of course the letter speaks of a current investigation. What is it about? I know they have a long investigation of conflict of interest arising from my complaint regarding the racism and discrimination involved in the C-30 process at District 79--the one that selected principal Prober. However, the UFT lawyer assigned me stated that was unfounded. Is the DOE allowed to conduct secret investigation in violation of the due processes accorded by the Constitution?

I need answers and representation.

Dr. Green


----- Forwarded Message -----
**From:** Green Rupert (79M645) <RGreen13@schools.nyc.gov>
**To:** "educateme5@yahoo.com" <educateme5@yahoo.com>
**Sent:** Thursday, March 31, 2016 9:53 AM
**Subject:** FW: Summons Letter

_____

From: Prober Corey (79M645)
Sent: Thursday, March 31, 2016 8:31 AM
To: Green Rupert (79M645)
Cc: Mckenzie Raphael G (79M645); Williams Christopher (79M645); Gathers Victor (79K755)
Subject: RE: Summons Letter


Dr. Green,


As per our discussion this morning, I had a teacher in place at John Adams to cover the program.  However, I will accommodate your request to reschedule the meeting to another time.  I will send you a new letter when I schedule the meeting.  Thanks.

Sincerely,


Corey Prober

Principal

Coop Tech

212-369-8800

_____

From: Green Rupert (79M645)
Sent: Thursday, March 31, 2016 8:10 AM
To: Prober Corey (79M645)
Cc: Mckenzie Raphael G (79M645); Williams Christopher (79M645); Gathers Victor (79K755)
Subject: RE: Summons Letter

I am already at Adams, which starts at 8 AM. There is no sub in place. If one comes, it would mean a two hour drive to get to Manhattan.  Should I leave after one comes?

Please advise.

Dr. Green


_____

From: Prober Corey (79M645)
Sent: Thursday, March 31, 2016 7:00 AM
To: Green Rupert (79M645)
Cc: Mckenzie Raphael G (79M645); Williams Christopher (79M645); Gathers Victor (79K755)
Subject: Re: Summons Letter

Dr. Green,

I have a teacher  in place  to cover your students and program. Please report to Coop Tech in the morning and we will meet at our regularly scheduled time of 8:30. After our meeting you can return back to John Adams.  Please confirm. Thanks.

Sent from my BlackBerry 10 smartphone.
From: Green Rupert (79M645)
Sent: Thursday, March 31, 2016 6:02 AM

To: Prober Corey (79M645)
Cc: Mckenzie Raphael G (79M645); Williams Christopher (79M645); Gathers Victor
(79K755)
Subject: RE: Summons Letter


Mr. Prober, Please note the time of your email: Sent: Wednesday, March 30, 2016 2:29
PM

The timing is difficult. It would mean leaving both morning and afternoon students
uncovered for a 10 minutes meeting.  The likely scenario is to have a sub in place and
me coming and sit at CoOp Tech and wait for the 11 AM meeting, which means missing
the afternoon session of class also.  Because of the untimely response, the abrupt
change of schedule, for the fact plans were set in motion to accommodate my 8 AM
meeting, and the confusion the meeting now entails, if it is OK with you, I will report to
my class and ask for a rescheduling of the meeting.

If it is important to you that Mr. McKenzie students' not unnecessarily miss instruction, I
believe you are equally concerned that mine not miss instruction.

The other scenario is for me to report at my school and leave at 9:30 for the 11 AM
meeting and possibly miss the Afternoon session.

Please advise.


Dr. Green
_____
From: Prober Corey (79M645)
Sent: Wednesday, March 30, 2016 2:29 PM
To: Green Rupert (79M645)
Cc: Mckenzie Raphael G (79M645); Williams Christopher (79M645)
Subject: RE: Summons Letter


Dear Dr. Green,


Since Mr. McKenzie is teaching at 8:30 am tomorrow and you would like him to attend,
please report to my office at 11:00 am.  I will conduct the meeting with you then.  Please
confirm and let me know if you have any questions.  Thanks.

Sincerely,


Corey Prober

Principal

Coop Tech

212-369-8800

_____
From: Green Rupert (79M645)
Sent: Tuesday, March 29, 2016 8:46 PM
To: Prober Corey (79M645)
Cc: Mckenzie Raphael G (79M645); Williams Christopher (79M645)
Subject: RE: Summons Letter

I will be there and I would like Mr. McKenzie to accompany me.


_____
Dr. Green
_____


Dear Dr. Green,


I have scheduled a meeting with you on Thursday, March 31, 2016 at 8:30 am in my office at Coop Tech-321 East 96th street.  Please see the attached letter and confirm the meeting with me.  Please let me know if you have any questions.  Thanks.


Sincerely,


Corey Prober

Principal

Coop Tech

212-369-8800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SDNY PRO SE OFFICE
2019 OCT 22  PM 1: 35

_____

*(List the name(s) of the plaintiff(s)/petitioner(s).)*

Dr. RUPERT GREEN

18 Civ. _10817_ (AT)(GWG)

- against -

**AFFIRMATION OF SERVICE**

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK, and
THE UNITED FEDERATION of TEACHERS

*(List the name(s) of the defendant(s)/respondent(s).)*

I, *(print your name)* RUPERT GREEN_____, declare under penalty of perjury that I
served a copy of the attached *(list the names of the documents you served)*: AMENDED COMPLAINT
and all Exhibits_____

_____

upon all other parties in this case by *(state how you served the documents, for example, hand delivery,*
*mail, overnight express)* Hand delivery_____ to the
following persons *(list the names and addresses of the people you served)*: Corporation
Counsel 100 Church St. New York, NY 10007
United Federation of Teachers 52 Broadway
New York, NY 10004
on *(date you served the document(s))* 10/22/19.

10/22/19_____
Dated

Signature _____

Address 205-26 113 Ave

City, State St Albans 11412

Zip NY

Telephone Number 917 601 6425

E-Mail Address educatemese@yahoo.com

*Rev. 01/2013*