# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: ENGORON, Justice     PART 37

GREEN, RUPERT

-v-

NYC BOARD/DEPT. OF EDUCATION

INDEX NO. 102017/16
MOTION DATE 1-31-17
MOTION SEQ. NO. 001

The following papers, numbered 1 to 5, were read on this petition to vacate award.

Notice of Petition — Affidavits — Exhibits    No(s). 1
Amended Petition + Second Amend Petition    No(s). 2, 3
Answering Affidavits — Exhibits    No(s). 4
Replying Affidavits    No(s). 5

Upon the foregoing papers, it is ordered that this

Petition is decided in accordance with accompanying memorandum decision.

RECEIVED
FEB 2 0 2018
NY SUPREME COURT - CIVIL
CENTRAL CLERK'S OFFICE

**FILED**
FEB 20 2018
COUNTY CLERK'S OFFICE
NEW YORK

Dated: 2/20/18

ARTHUR F. ENGORON, J.S.C.

1. CHECK ONE: ........................ ☑ CASE DISPOSED ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ............ MOTION IS: ☐ GRANTED ☑ DENIED ☐ GRANTED IN PART ☐ OTHER
   ☐ SETTLE ORDER ☐ SUBMIT ORDER

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 37
-----------------------------------------------------------------x
In the Matter of the Application of
RUPERT GREEN,

                           Petitioner,

-against-

THE NEW YORK CITY BOARD/DEPARTMENT OF
EDUCATION,

                           Respondent.
-----------------------------------------------------------------x

Index Number: 102017/2016

Sequence Number: 001

Decision and Order

**FILED**

**FEB 20 2018**

COUNTY CLERK'S OFFICE
NEW YORK

Arthur F. Engoron, Justice

In compliance with CPLR 2219(a), this Court states that the following papers, numbered 1 to 5, were used on (1) the instant petition, pursuant to New York Education Law § 3020-a(5) and CPLR 7511, seeking to vacate Hearing Officer Leah L. Murphy, Esq.'s Award, dated December 9, 2016, and (2) respondent's cross-motion, pursuant to CPLR 3211(a)(7), to dismiss:

                                                                                                                                  Papers Numbered:

Notice of Petition - Affirmation - Exhibits ............................................................... 1
Notice of Amended Petition - Affirmation - Affidavit - Exhibits ............................... 2
Notice of Second Amended Petition - Affirmation - Affidavit - Exhibits .................. 3
Notice of Cross-Motion + Affirmation in Opposition - Exhibits ................................ 4
Reply Affirmation ........................................................................................................ 5

Upon the foregoing papers, the petition is denied, the cross-motion is granted, and the proceeding is dismissed.

**Background**

Petitioner, Rupert Green, was employed by respondent, The New York City Board/Department of Education ("DOE"), from February 2001 through April 2016, specializing in teaching computer technology and career technical education. Throughout the entirety of his employment with the DOE, petitioner taught for The School of Cooperative Technical Education ("School").

On November 5, 2015, the School's assistant principal, Audrey Mangan, filed a complaint with the DOE's Special Commissioner of Investigation ("SCI") alleging that petitioner violated the DOE's email and internet use policy ("Internet Policy"). The Internet Policy states in relevant part, "Internet access and emails provided by the [DOE] are intended for educational use, instruction, research, and the facilitation of communication, collaboration, and other department-related purposes." The Internet Policy also enumerates certain prohibited activities, which include, but are not limited to: (1) "Using, posting or distributing profane, lewd, vulgar, threatening or abusive language in email messages"; (2) "accessing, posting or distributing harassing, discriminatory, inflammatory or hateful material, or making damaging or false statements about others"; and (3) "Using the [DOE's] Internet System in a manner that interferes with the education of the user or others or the job duties of the user or others." Petitioner alleges he was not informed of the outcome of Mangan's complaint until a February 9, 2016 meeting he had with Corey Prober, a new principal at the School, wherein Prober shared the results of the SCI investigation and provided him with another copy of the School handbook containing the Internet Policy.

On January 28, 2016, Prober filed a second complaint with the SCI alleging the same misconduct. Prober claims on March 2, 2016, he hand-delivered petitioner's disciplinary letter to him. SCI then launched a second investigation, and a SCI-assigned investigator, Christopher Minoque, ultimately drafted a final report substantiating the two complaints brought against petitioner. Thereafter, the DOE formally issued the following charges against petitioner: (1) between January 2014 and March 2016, he repeatedly used his DOE email account to send personal emails to staff members,

specifically, 116 emails, which constituted as violations of the Internet Policy during the charge period ("Specification 1"); (2) between January 2014 and March 2016, he engaged in the misconduct during, inter alia, his instructional periods ("Specification 2"); (3) between April 2015 and June 2015, he failed to adhere to Principal John Widlund's email directing staff members to refrain from sending unprofessional and/or hurtful and/or intimidating emails to other staff members ("Specification 3"); (4) between August 2015 and March 2016, he failed to adhere to Principal Anda McGowan and/or Assistant Principal Audrey Mangan's September 8, 2015 staff meeting directing staff members to use their DOE emails for DOE use only and/or to refrain from sending personal emails ("Specification 4"); (5) between February 2016 and March 2016, he sent inappropriate and/or derogatory and/or personal emails to staff members after a February 9, 2016 disciplinary meeting with Prober directing and/or instructing him to stop sending such emails ("Specification 5"); (6) between January 2014 and March 2016, by engaging in misconduct, he neglected his duties and caused staff members to feel uncomfortable and/or upset ("Specification 6"); (7) during the 2014-2015 school year, he was absent from work 12 days ("Specification 7"); (8) during the 2015-2016 school year, he was absent from work 11 days ("Specification 8"); and (9) on or about April 2016, he failed to follow the procedure of informing the appropriate human resources office that he was not going to work that day ("Specification 9").

In accordance with Education Law § 3020-a, Hearing Officer Leah L. Murphy, Esq. was assigned as an arbitrator for petitioner's disciplinary proceedings. Murphy presided over the pre-hearing conference, the full evidentiary hearing, and the parties' closing arguments. During the administrative hearing ("Hearing"), which took place over the course of 12 days in 2016, both parties were represented by counsel, presented arguments and witnesses, and had the opportunity to conduct direct- and cross-examinations of witnesses. The entire record of the Hearing includes, inter alia, the testimony of 17 witnesses and the review of 42 documentary exhibits.

At the Hearing, petitioner argued that a review of his emails in the record show that they all concern instruction, teaching, researching, the facilitation of communication and collaboration among staff, and the general functions and concerns of the School and the DOE. Petitioner alleges that the emails containing metaphorical language was not designed to insult a reasonable reader. Respondent, on the other hand, argues that the aforementioned emails were inappropriate because they, inter alia: (1) questioned his colleagues' ability to perform as teachers; (2) harassed and criticized administrators and used provocative and offensive language; (3) referred to some staff members as "whores"; (4) identified staff members by their physical appearance and sarcastically referred to a supervisor as "the supreme one"; and (5) were sent over many years, which created a tense and divisive environment at School.

Also at the Hearing, all 116 of petitioner's emails were produced, and each was discussed by the parties and reviewed by Murphy in full. The Court will not belabor the details of each email, as they have been thoroughly quoted and discussed on the record. Please refer to the Hearing Officer's Decision and Award dated December 9, 2016 ("Award"), attached to the Second Amended Petition as Exhibit A, and the emails themselves, attached to the Second Amended Petition as Exhibit F, for a full summary and discussion of petitioner's emails. However, in an attempt to provide some context as to the nature and tone of petitioner's emails, the Court will discuss in detail a few of the aforementioned emails, and the DOE witnesses' testimonies at the Hearing about these emails. On March 19, 2015, petitioner sent a mass email to discuss the replacement of John Biardi, a teacher at the School, as the union chapter chair. In his email, petitioner implied that Biardi was unqualified to serve as the union's chair, inferring that Biardi did not know how to use a computer and failed to hold union meetings. Petitioner further criticized the chapter leader election process, stating that "a nefarious process eliminated teachers' participation and the chapter chairs nominated themselves, voted for themselves, and declared themselves winners," implying that there was some form of corruption in the election process. In another email dated November 4, 2015, petitioner responded to a new timekeeping policy that the new principal at the time, Ms. McGowan, proposed, colorfully remarking that it was hard to oppose a "husband and wife tag team." Petitioner alleges that this remark was in reference to the payroll secretary, Ms. Konze, who emailed the new policy to teachers and was in a relationship with another teacher, Mr. Caraballo. Respondent, on the other hand, alleges that it believed the remark to be in reference to Ms. Konze and Ms. McGowan being in a secret relationship, which started a series of rumors. Lastly, on March 15, 2016, petitioner sent a mass email, in which he publicly addressed an email Mr. Downing, another teacher at the School, sent to the email chain, asking petitioner to remove him because he believed they were affecting the post-traumatic stress disorder he suffered as a result of his time in the army during the Vietnam War. Petitioner's email stated that Mr. Downing "self-admitted that he has some war related syndrome that could cause him to go off the deep and if he reads emails of an onstruce [sic] nature. Is there a danger when such individuals work

with children? ... We old timers remember Duguid (Do good) and how he vile [sic] treated his students." At the Hearing, Mr. Downing testified that he received" hundreds" of emails from petitioner, describing them as "highly offensive," stating that the emails had "racial overtones" or were "blatantly racist."

Pursuant to the Award, Murphy concluded that the DOE had proved by a preponderance of the evidence Specifications 1 through 6, but found that the DOE failed to prove Specifications 7 through 9. Based upon the finding of petitioner's guilt on six out of nine specifications proffered against him, Murphy found that the appropriate penalty was termination. In finding just cause, Murphy reasoned that (1) petitioner had clear notice of the Internet Policy and the potential consequences of his misconduct; (2) petitioner's use of his DOE email disrupted the efficient administration of the School; (3) a fair and objective investigation was conducted into the circumstances; (4) petitioner was given pre-penalty leeway to correct the alleged misconduct; (5) termination was a reasonable penalty given the seriousness of the offense; and (6) remediation was not possible for the alleged misconduct.

### The Instant Proceeding

Petitioner commenced the instant proceeding, pursuant to Education Law § 3020-a and CPLR 7511, seeking to vacate the Award, arguing that the Award was arbitrary and capricious. On December 19, 2016, petitioner filed an Amended Petition, and on March 30, 2017, he filed a Second Amended Petition. Respondents now cross-move, pursuant to CPLR 3211(a)(7), to dismiss the proceeding, for failure to state a cause of action.

### Discussion

Education Law § 3020-a(5) provides petitioner an opportunity to apply to this Court, pursuant to CPLR 7511, to vacate or modify a hearing officer's decision about one of its employees if there is some showing of misconduct, bias, excess of power, or procedural defects. See Lackow v Department of Educ. (or "Board") of City of New York, 51 AD3d 563, 567 ("Education Law § 3020-a(5) provides that judicial review of a hearing officer's findings must be conducted pursuant to CPLR 7511. Under such review an award may only be vacated on a showing of 'misconduct, bias, excess of power or procedural defects'"); see also Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co., 89 NY2d 214, 223 (1996) ("An arbitration award made after all parties have participated, however, will not be overturned merely because the arbitrator committed an error of fact or of law ... [However, to] be upheld, an award in a compulsory arbitration proceeding must have evidentiary support and cannot be arbitrary and capricious"). Pursuant to CPLR 7511(b)(1)(iii), an arbitrator's award shall be vacated on the application of a party who participated in the arbitration or was served with a notice of intention to arbitrate if the Court finds the rights of that party were prejudiced by the arbitrator making an award that "exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made." Dismissal pursuant to CPLR 3211(a)(7) is only warranted if, accepting the facts alleged as true and according plaintiff the benefit of every possible favorable inference, the court determines that the allegations do not fit within any cognizable legal theory. See Leon v Martinez, 84 NY2d 83, 87-88 (1994); Morone v Morone, 50 NY2d 481, 484 (1989). The court's inquiry is limited to whether plaintiff has stated a cause of action and not whether it may ultimately be successful on the merits. See Stukuls v State of New York, 42 NY2d 272, 275 (1977); EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 (2005) ("[w]hether a plaintiff can ultimately establish its allegations is not part of the calculus" in determining a motion to dismiss for failure to state a cause of action).

Petitioner has failed to establish that the Award was arbitrary or capricious, or otherwise improper. The Award is based on overwhelming evidentiary support. See Davis v New York City Bd., 137 AD3d 716, 717 (1st Dept 2016) ("The court properly found that the award was not arbitrary and capricious and was well supported by the evidence. The Hearing Officer engaged in a [thorough] analysis of the facts and circumstances, evaluated witnesses' credibility, and arrived at a reasoned conclusion"). In Murphy's owns words, "[S]o much of what [petitioner wrote] was interspersed with inappropriate rumor, innuendo and derogatory statements that a finding that the [DOE's] internet use policy was violated was not at all borderline. [Petitioner] should not have been using his professional email account to espouse his personal views or make inappropriate comments about his colleagues." Furthermore, petitioner's argument – that Murphy's conclusion that the DOE's witnesses were credible proves her bias – is unavailing; the Court will not second-guess a hearing officer's finding on a witness's credibility. See Asch v New York City Bd./Dept. of Educ., 104 AD3d 415, 420 (1st Dept 2013) ("A hearing officer's determinations of credibility are largely unreviewable because the hearing officer observed the witnesses and was able to perceive the inflections, the pauses, the glances and gestures–all the nuances of speech and manner that combine to form an impression of either candor or deception") (internal citations omitted); see

also Douglas v New York City Bd./Dept. of Educ., 87 AD3d 856, 857 (1st Dept 2011) (The Hearing Officer, who heard the actual testimony from the witnesses, was entitled to weigh the testimony and make independent findings"). In the instant case, Murphy found that the DOE's witnesses were credible, and it is not in the Court's province to disagree or second-guess her determination, as Murphy was privy, and the Court was not, to the Hearing's in-person testimony.

Petitioner's argument that his emails all concerned appropriate topics under the Internet Policy is also unavailing. Murphy already thoroughly considered whether each and every one of the 116 email violations petitioner was charged with were in fact inappropriate and concluded that petitioner's denial of using email inappropriately was not at all persuasive. Murphy states in the Award, "[Petitioner] clearly was aware of and seemed to enjoy the provocative nature of his emails and the reactions he got from the school staff. [Petitioner] was not at all disturbed by the disruption his email habit had upon the school community." The Court will not disturb Murphy's determination.

Petitioner's argument that the disciplinary charges were brought against him in an effort to retaliate against him for "exposing corruption and racism within the School," and that he should be afforded "whistleblower" status, is equally unavailing. Murphy already duly considered this argument during the Hearing and found it unpersuasive. Murphy states in the Award, "The [DOE] conducted a fair and objective investigation into the circumstances surrounding [petitioner's] inappropriate [emails] and [petitioner] was not retaliated against or treated differently from his peers and if anything, was given great leeway to pre-disciplinary correction of his conduct." Murphy further points out that petitioner "was familiar with the process for filing charges of racial discrimination" and that instead of "using the proper method to investigate racial discrimination, [petitioner] used the public and self-aggrandizing venue of the [DOE] email to espouse his views." Murphy does not stop there; she goes on to state that petitioner "seems incapable of understanding that any animus he may have experience[d] could be based upon his actions or arrogance and not because of his race, or his education or his insights or exposure of corruption. ... Regardless of [petitioner's] views, fancied or real, the email system is explicitly prohibited from being used for this purpose and he was rightly disciplined." The Court will not disturb Murphy's determination. See Saunders v Rockland Bd. of Co-op Educ. Servs., 62 AD3d 1012, 1012 (2d Dept 2009) ("When reviewing compulsory arbitrations in education proceedings such as this, the court should accept the arbitrators' ... determinations, even where there is conflicting evidence and room for choice exists").

Petitioner has failed to establish that Murphy issued the Award in an arbitrary or capricious manner. The record contains ample evidence establishing that Murphy's determination – that "it is the sheer number of emails which contain negative, proselytizing and critical comments about staff and administration which so clearly disrupted the school community. [Petitioner] was provided with ample opportunities to cease using his email as a soap box, but as a review of all the emails demonstrate, he simply failed to do so" – was rationally based on the evidence and witness testimony presented to her throughout petitioner's disciplinary proceedings. Thus, the Court adheres to the Award, which found, based on substantial evidence, that petitioner violated the Internet Policy. As Murphy states, "[D]ue to [petitioner's] arrogant and oppositional refusal to comply with the [Internet Policy], the seriously offensive, disruptive and irresponsible nature of many of the emails, and [petitioner's] dogged refusal to take any correction measures or follow the clear directives of his supervisors, the [DOE] has just cause to terminate [him]." See Cipollaro v New York City Dept. of Educ., 83 AD3d 543, 544 (1st Dept 2011) ("Considering petitioner's lack of remorse and failure to take responsibility for her actions, as well as the harm caused by petitioner's actions, the penalty of dismissal, even if there was an otherwise adequate performance record, cannot be said to shock the conscience"). Additionally, petitioner's argument that Specifications 4-6 should be vacated because there is no evidence that he was insubordinate is unavailing; Murphy concluded that petitioner was guilty of insubordination because he continued to send inappropriate emails despite being warned of his misconduct on multiple occasions. See Matter of Malone v Board of Educ. of E. Meadow Union Free Sch. Dist., 93 AD3d 849, 850 ("2d Dept 2012) ("The testimony of both the petitioner and the school principal that the petitioner continued to distribute leaflets after being directed to ceased this activity established the charge of insubordination by adequate evidence, and the findings with respect to both charges were not arbitrary and capricious"). Therefore, the record supports the Award and the penalty of termination is not excessive. See generally Matter of Chaplin v New York City Dept. of Educ., 48 AD3d 226, 226 (1st Dept 2008) ("Acts of moral turpitude committed in the course of public employment are an appropriate ground for termination of even long-standing employees with good work histories").

The Court has considered petitioner's other arguments and finds them to be unavailing and/or non-dispositive.

As it was based on substantial evidence, the Award is proper and appropriate, and is hereby confirmed. Accordingly, the petition is denied, the cross-motion is granted, and the proceeding is dismissed.

**Conclusion**
Petition denied; cross-motion granted. The Court hereby directs the clerk to enter judgment denying the petition, granting the cross-motion to dismiss, and dismissing the proceeding.

Dated: February 20, 2018

Arthur F. Engoron, J.S.C.

**FILED**

FEB 20 2018

COUNTY CLERK'S OFFICE
NEW YORK