```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
RUPERT GREEN,                                    :

                Plaintiff,                       :    REPORT AND
                                                      RECOMMENDATION
        -v.-                                     :
                                                      18 Civ. 10817 (AT) (GWG)
THE DEPARTMENT OF EDUCATION OF THE               :
CITY OF NEW YORK and UNITED
FEDERATION OF TEACHERS,                          :

                Defendants.                      :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Rupert Green, a former teacher at the defendant Department of Education of the City of New York ("DOE") was fired following a hearing in 2016 and filed this lawsuit. His prior complaint was dismissed and his amended complaint alleges that DOE and the United Federation of Teachers ("UFT") have violated "Constitutionally protected rights given to him as a tenured teacher," under the First and Fourteenth Amendments, 42 U.S.C § 1983, and under 29 U.S.C. § 185. Green also brings claims under the New York State Constitution and state law. Defendants have moved to dismiss the amended complaint.[1] For the following reasons, the defendants' motions to dismiss should be granted.

---

[1] See First Motion to Dismiss the Amended Complaint, filed Dec. 10, 2019 (Docket # 43); Memorandum of Law in Support of First Motion to Dismiss, filed Dec. 10, 2019 (Docket # 44) ("DOE Mem."); First Motion to Dismiss the Amended Complaint, filed Dec. 11, 2019 (Docket # 45); Memorandum of Law in Support of First Motion to Dismiss, filed Dec. 11, 2019 (Docket # 46) ("UFT Mem."); Supplemental Memorandum of Law in Support of First Motion to Dismiss, filed Jan. 3, 2020 (Docket # 50) ("DOE Supp. Mem."); Declaration of Rupert Green in Opposition to Defendants' Motion to Dismiss, filed Feb. 18, 2020 (Docket # 53); Plaintiff's Opposition (Memorandum of Law) to Defendants' Motion to Dismiss, filed Feb. 18, 2020 (Docket # 54) ("Green Opp."); Reply Memorandum of Law in Support of First Motion to

I. BACKGROUND

   A. Procedural History Prior to Filing the Amended Complaint

Green filed his original complaint against DOE and Carmen Farina, former Chancellor of DOE, on November 19, 2018. Complaint, filed Nov. 19, 2018 (Docket # 1) ("Compl."). After the defendants moved to dismiss, this Court recommended that Green's complaint be dismissed with leave to amend. See Report and Recommendation, filed July 31, 2019 (Docket # 28) ("R&R") (published as Green v. Dep't of Educ. of City of N.Y., 2019 WL 3432306 (S.D.N.Y. July 31, 2019)). Judge Torres adopted the Report and Recommendation on September 23, 2019. See Order, filed Sept. 23, 2019 (Docket # 33) (published as Green v. Dep't of Educ. of City of N.Y., 2019 WL 4622077 (S.D.N.Y. Sept. 23, 2019)). Familiarity with these prior rulings is assumed.

   B. Allegations in the Amended Complaint

Green filed the amended complaint on October 22, 2019. Amended Complaint, filed Oct. 22, 2019 (Docket # 34) ("AC"). For purposes of this motion we assume the truth of its allegations. See, e.g., Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liber., 23 F. Supp. 2d 439, 445 (S.D.N.Y. 1998). The allegations of the amended complaint are largely identical to those of the dismissed complaint and were summarized in the Court's Report and Recommendation on the previous motion to dismiss. See R&R at 2-5. In short, Green was a tenured teacher with DOE who, in April 2016, was charged with misconduct for sending "improper, harassing" emails to staff. Id. at 2. He was served with a document titled "Notice

---

Dismiss, filed on April 8, 2020 (Docket # 59) ("UFT Reply"); Reply Memorandum of Law in Support of First Motion to Dismiss, filed April 8, 2020 (Docket # 61) ("DOE Reply").

of Determination of Probable Cause on Education Law § 3020-a." Id. A hearing was held pursuant to N.Y. Educ. Law § 3020-a before an arbitrator, who terminated Green's employment. See id. at 2-3. Green's Article 75 challenge to the termination was not successful. See id. at 3-5.

The amended complaint removes Farina as a defendant and adds the UFT. See AC at 1. It alleges that the defendants violated Green's First and Fourteenth Amendment rights, id. ¶¶ 35-37, 49-54; and that the UFT violated 29 U.S.C. § 185, id. ¶¶ 46-48. The amended complaint also brings state law claims for intentional and negligent infliction of emotional distress, harassment, and negligence, id. ¶¶ 43-45, 55-60; as well as a claim alleging the defendants violated N.Y. Civ. Serv. Law § 75-b, id. ¶¶ 38-42. The claim under 29 U.S.C. § 185 against the UFT and the negligence claim were not raised in the original complaint.

## II. STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(B)(6)

A defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the plaintiff "fail[s] to state a claim upon which relief can be granted." To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As the Supreme Court noted in Iqbal,

> [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Id. (citations omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

3

cause of action will not do." Twombly, 550 U.S. at 555 (quotation marks, alternation, and citation omitted). Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule of Civil Procedure 8(a)(2) because it has merely "alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Id. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

> Additionally, on a motion to dismiss for failure to state a claim, a court's
> 
> consideration is limited to the factual allegations in [the complaint], which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.

Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)); accord Halebian v. Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011).

A pro se litigant is "'entitled to special solicitude'" and his pleadings should be read "'to raise the strongest arguments that they suggest.'" Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006)). Accordingly, "'[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "'[D]ismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.'" Fowlkes, 790 F.3d at 387 (quoting Boykin, 521 F.3d at 216). "At the same time, a pro se complaint must allege 'enough

4

facts to state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

III. DISCUSSION

DOE argues that Green's First and Fourteenth Amendment claims were previously addressed by the Court's prior decision and should be dismissed. DOE Supp. Mem. at 5-6; see also DOE Mem. at 8-13 (addressing merits of Green's constitutional claims); DOE Reply at 6-11 (same). DOE adds that the 29 U.S.C. § 185 claim is "insufficiently plead and must be dismissed." Id. at 6. DOE also argues that Green fails to state a negligence claim, see id. at 7-8, but that the Court should not exercise jurisdiction over it and the other state-law claims, see id. at 6; see also DOE Mem. at 14-19 (addressing the merits of Green's state law claims); DOE Reply at 11-12 (same). Finally, DOE argues that the claims Green previously litigated in state court are barred by collateral estoppel and res judicata. DOE Mem. at 4-6; DOE Reply at 3-6.

The UFT argues that the only claim that applies to it — for breach of the duty of fair representation under 29 U.SC. § 185 — should be dismissed for lack of subject matter jurisdiction. See UFT Mem. at 2, 5-6. The UFT also argues that the complaint fails to state a claim against it. See id. at 7-16. Finally, the UFT argues that the amended complaint should be dismissed for insufficient service of process. See id. at 16-18.

We discuss these arguments only to the extent necessary to dispose of the motions.

A. Collateral Estoppel and Res Judicata

DOE raises the same collateral estoppel and res judicata arguments it previously raised in moving to dismiss Green's first complaint. Compare Memorandum of Law in Support of First Motion to Dismiss the Complaint, filed Feb. 4, 2019 (Docket # 15) ("Def. First Mem.") at 5-7 with DOE Mem. at 4-6. DOE adds an additional paragraph, arguing "under the doctrine of res

5

judicata, or claim preclusion, a 'final judgment forecloses successive litigation of the very same claim, whether or not relitigation of that claim raises the same issues as in the earlier suit.'" DOE Mem. at 6 (citing cases). And since Green "previously raised his claims regarding Section 3020-a procedures, due process, the arbitrator who presided over his evidentiary hearing, the arbitrator's decision, as well as allegations of retaliation and a desire for 'whistleblower' status, . . . he is precluded from relitigating those issues in the instant action." Id. (citation omitted).

As we did in the R&R, we elect not to parse whether the Article 75 decision reached each of these issues because it is not clear that removing those issues disposes of any particular federal claim and, for the reasons stated below, we find that all federal claims should be dismissed without deciding any state law claims. Accordingly, we will assume arguendo that none of Green's claims are barred by the doctrine of collateral estoppel.

As it did previously, see Def. First Mem. at 2, DOE argues that Green could have asserted his First and Fourteenth Amendment claims in the Article 75 proceeding but failed to do so, see DOE Mem. at 1. We rejected this argument in the previous Report and Recommendation. See R&R at 13. And, once again, DOE fails to explain how the Article 75 court could have reached these claims given that, under Article 75, "[g]rounds for vacating an award are narrowly circumscribed and include corruption, fraud or misconduct, partiality of an arbitrator, or abuse of discretion." Bottini v. Sadore Mgmt. Corp., 764 F.2d 116, 121 (2d Cir. 1985); accord R&R at 13. DOE does not even bother to address the reasoning in the Report and Recommendation.

As we previously pointed out, see R&R at 13, the Second Circuit has declined to apply the res judicata doctrine to bar claims that were outside the scope of issues that can be raised in an Article 75 proceeding, see Razzano v. Remsenburg-Speonk Union Free Sch. Dist., 751 F.

6

App'x 24, 27 (2d Cir. 2018); Bottini, 764 F.2d at 121. Thus, none of Green's claims are barred by res judicata.

B. Green's Federal Constitutional Claims

Green brings his federal claims under 42 U.S.C. § 1983. See, e.g., AC at 13. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also 42 U.S.C. § 1983. Section 1983 does not create any federal rights; rather, it provides a mechanism to enforce rights established elsewhere. Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002); accord Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 159 (2d Cir. 2005) (citing City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985)). A party that is not a state actor can be held liable under section 1983 only if it "is a willful participant in joint action with the state or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980); see also Betts v. Shearman, 751 F.3d 78, 84 (2d Cir. 2014) ("a claim against a private entity must 'allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'") (quoting Spear v. Town of W. Hartford, 954 F.2d 63, 68 (2d Cir. 1992)).

We construe Green's AC as alleging (1) a First Amendment retaliation claim, see AC ¶¶ 35-37; (2) a Fourteenth Amendment procedural due process claim regarding the manner in which his section 3020-a hearing was conducted, see id. ¶¶ 49-51; (3) an Equal Protection claim under the Fourteenth Amendment based on the termination procedures for New York City teachers in comparison to other New York teachers, see id. at ¶¶ 26-33; and (4) a due process

7

"stigma plus" claim based on Green's claims of reputational harm, see id. ¶¶ 52-53. All these claims were asserted in the original complaint.

Additionally, Green's brief in opposition to defendants' motion to dismiss seems to assert additional Equal Protection claims. See Green Opp. at 38-41.[2] Specifically, Green argues "UFT is playing along with the NYC DOE to get along," id. at 43, and that there has been "UFT/NYSUT collusion," id. at 45; see also Green Opp. at 5 ("[UFT and DOE] have colluded together in order to prioritize politics over tenure rights."). While these claims do not appear in the amended complaint, in light of Green's pro se status, we will view these allegations in his brief as supplementing the allegations of the amended complaint. See, e.g., Portillo v. Webb, 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (considering factual allegations from pro se plaintiff's opposition submissions when deciding motion to dismiss) (collecting cases), adopted by 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018); London v. N.Y. State Dep't of Homeless Servs., 2014 WL 3720401, at *1 (S.D.N.Y. July 29, 2014) (same), adopted by 2015 WL 170245 (S.D.N.Y. Jan. 13, 2015); accord Burgess v. Goord, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) ("In general, a court may not look outside the pleadings when reviewing a Rule

---

[2] Green's opposition also refers to "substantive due process," "disparate treatment," and "Title VII." See Green Opp. at 9, 15, 41-42, The "substantive due process" argument is identical to the argument Green raised in his opposition to the motion to dismiss the first complaint. Compare Plaintiff's Opposition (Response) to Defendant's Motion to Dismiss, filed Apr. 11, 2019 (Docket # 22) ("Pl. First Opp.") at 31 with Green Opp. at 41. In both instances, Green refers to the fact that he lost his job as a tenured teacher. See Green Opp. at 42. However, because Green complains of how he was terminated, his claims are properly construed as involving procedural, not substantive, due process claims. "Title VII" is referenced to describe what is referred to, without citation, as "the Gulino Litigation." See Green Opp. at 9. Green does not make any Title VII argument, nor does he explain the relevance of the Gulino litigation to his claims. Thus, any such claim cannot proceed. Green's disparate treatment statement seems to relate to his Equal Protection claim, which is addressed below.

12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.") (citations and internal quotation marks omitted).

    1. First Amendment Retaliation Claim

  Green's First Amendment retaliation claim adds nothing to his first complaint other than to say defendants' were "acting under color of State Law." AC ¶ 36. Green does allege "[t]he DOE and UFT target black male teachers who speak out while teaching, and terminate each of these teachers at 3020-a, where the procedures used to charge teachers are without support in the Education Law and deny certain Constitutional rights without just cause," id. ¶ 4, which suggests a practice of retaliation against black male teachers for unfavorable speech. These allegations, however, are conclusory and thus nowhere near sufficient to allege that "an official policy of the municipality caused the constitutional injury," Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008), as is required for a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978). As case law notes, "[t]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Montero v. City of Yonkers, 890 F.3d 386, 403-04 (2d Cir. 2018) (alteration in original) (internal punctuation and citation omitted). In his opposition, Green cites to a video of Farina to support his assertion that the policy of DOE was to use the deficient procedures of the 3020-a arbitrations. See Green Opp. at 34. However, as addressed in the previous Report and Recommendation, see R&R at 19, the procedures of the 3020-a arbitration are not unconstitutional. Accordingly, none of the new material submitted by Green rectifies his failure to allege "an unconstitutional City policy or practice," R&R at 17, of

engaging in First Amendment retaliation against back male teachers. Thus, this claim fails for the same reasons previously articulated. See id.

### 2. Procedural Due Process Claim

With regard to Green's Fourteenth Amendment procedural due process claim that the manner in which his section 3020-a hearing was conducted was unconstitutional, see AC ¶¶ 49-51, we previously found that Green received all the process he was due, see R&R at 19. Green claims to have "the necessary and sufficient facts to support his claims that the Defendants have a policy and practice of speeding up 3020-a hearings at the expense of tenure rights," Green Opp. at 35, but does not actually allege any new facts that would change our determination. Instead, Green relies heavily on Cardinale v. N.Y.C. Dep't of Educ., No. 85165/2017 (Sup. Ct. Richmond Cty. Mar. 29, 2018) (annexed to AC at *43-54),[3] which the Court previously rejected as unpersuasive, see R&R at 19-20. In his opposition brief, Green supplements his due process argument by stating he has "sufficiently alleged a Due Process cause of action, as he, a tenured teacher, has a constitutionally protected property interest in his employment," Green Opp. at 40; that he has "a constitutional property interest in his education licenses, which were effectively taken away through the Defendants' campaign to blacklist the Plaintiff in the field of public education," id.; and that "[i]t is clear that a decision of an Arbitrator who proceeds without getting a signed waiver from the charged employee shows bias against the employee and an excess of authority that is not sanctioned by any statutory authority," id. at 31. Green previously raised these arguments in his opposition to the first motion to dismiss as well. See Pl. First Opp.

---

[3] "*__" indicates a page number assigned by the Court's ECF system.

at 20, 30. Thus, these assertions do not alter our analysis and our decision on the procedural due process claim remains unchanged.

### 3. New York City Teachers Equal Protection Claim

The Equal Protection claim as to the treatment of New York City teachers also fails for the same reasons previously decided. See R&R at 20-23. Green has still not "negative[d] every conceivable basis," Madden v. Commonwealth of Kentucky, 309 U.S. 83, 88 (1940), that could justify the distinction between teachers employed in New York City and those employed elsewhere in the state. As was explained in Adams v. New York State Education Department, 752 F. Supp. 2d 420 (S.D.N.Y. 2010), the fact that tenured New York City teachers were not permitted to participate in the selection of an arbitrator and that charges against them were not brought pursuant to vote of the school board did not "affect whether a tenured teacher receives 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' as due process requires." Id. at 456-57 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 547-48 (1985)), aff'd, 460 F. App'x 67 (2d Cir. 2012). Thus, the distinction survives rational basis review. Accordingly, Green's Equal Protection claim should be dismissed.

### 4. Stigma-Plus Claim

Green's opposition brief does add a new allegation to his stigma-plus claim. Previously, we found the claim failed because "the allegations of the complaint do not show that any allegedly false statement about Green was published to anyone outside of the DOE." R&R at 24. In his opposition, Green alleges that the "stigma plus" claim is based on "the fact that NYC press and media obtain all cases decided at 3020-a arbitration inside a press only link. Plaintiff's name was sent out on this media list, and all media reporters can do a story on him if

11

they so choose" and "[t]he decisions of Arbitrators are not confidential and can be obtained through Freedom of Information requests." Green Opp. at 41.

While the opposition brief arguably does allege that the public was given access to information about 3020-a arbitrations, his claim still fails. First, a statement in a "stigma plus" claim is actionable only if it is "capable of being proved false." Velez v. Levy, 401 F. 3d 75, 87 (2d Cir. 2005) (internal punctuation and citation omitted). Here, the only statements disseminated to the public are statements referring to the fact that plaintiff was the subject of a disciplinary arbitration. This statement is not "capable of being proved false" because plaintiff himself alleges that the arbitration occurred. See, e.g., Vosburgh v. Burnt Hills - Ballston Lake C. Sch. Dist., 2019 WL 315054, at *6 (N.D.N.Y. Jan. 24, 2019) (statement that "Plaintiffs were on administrative leave cannot be stigmatizing utterances because they were the truth") (citing Velez, 401 F.3d at 87), aff'd, 778 F. App'x 54 (2d Cir. 2019); Shanahan v. New York, 2011 WL 223202, at *7 (S.D.N.Y. Jan. 24, 2011) ("No stigma-plus claim lies where the substantial truth of an allegedly stigmatizing statement is not seriously at issue.") (citations omitted).

Moreover, "[l]ike any procedural due process claim, a stigma-plus claim enforces a limited but important right: the right to be heard 'at a meaningful time and in a meaningful manner.'" Segal v. City of N.Y., 459 F.3d 207, 213 (2d Cir. 2006) (quoting Goldberg v. Kelly, 397 U.S. 254, 267 (1970)). Thus, a stigma-plus claim cannot succeed unless the state actor "denied [plaintiff] procedural due process protections, to which he was entitled, before depriving him of the protected interest," Bohn v. Cook, 2019 WL 5298152, at *7 (D. Conn. Oct. 18, 2019) (citation omitted) — in this case, Green's employment. Here, Green had such a hearing that accorded with the requirements of procedural due process. See R&R at 19. Thus, Green's stigma-plus claim fails for this reason as well.

12

### 5. New Equal Protection Claim

In a seemingly new Equal Protection claim, Green alleges that he "was treated differently with malicious retaliatory animus than similarly situated other District employees . . . . Thus, Plaintiff has successfully alleged belonging to a class that consists of more than one individual." Green Opp. at 38. He provides examples of two "non-Black teachers who blew the whistle at their schools via emails and were not terminated," AC ¶ 5; see also Green Opp. at 38, and "cites these two cases out of many where the 3020-a arbitrators gave extremely harsh penalties for internet misconduct to Black teachers, but not to Respondent [sic] who are white or Asian," Green Opp. at 15.

The problem with these allegations is that they are nowhere near sufficient to allege that any differences in treatment among the result of "an official policy of the municipality," Roe, 542 F.3d at 36, as is required for a Monell claim. To succeed in alleging a municipal policy, a complaint must show

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact."

Jones v. Westchester Cty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 417 (S.D.N.Y. 2008) (quoting and citing Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)).

To the extent Green alleges that there were non-black teachers who received less serious discipline at their arbitrations, or that black teachers were terminated more frequently, see Green Opp. at 6, 7, 39, this does not show a custom or policy implemented by the City. More

13

significantly, there is no connection alleged between an official policymaker and the particular mechanism under attack: that is, the meting out of discipline by section 3020-a hearing officers. Nor could such an allegation be made. Green does not dispute that the hearings are conducted by arbitrators. The arbitrators are chosen jointly by the union and the City. See Compl. ¶ 15; see also Green Opp. at 45. Thus, there is no allegation that the arbitrators are under the control of a City policy maker. Finally, to the extent that Green alleges that DOE and the UFT singled him out for mistreatment, see Green Opp. at 38 ("Plaintiff was treated differently with malicious retaliatory animus than similarly situated other District employees"), that excludes the possibility of an unconstitutional policy or practice applicable generally. See R&R at 17.[4]

### 6. UFT's Collusion with DOE

Green argues that the UFT has colluded with DOE thus making it liable for the constitutional violations as well. See Green Opp. at 45. Having found that none of Green's constitutional allegations survive, a fortiori, Green has not pled any "facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act," Betts, 751 F.3d at 84 (quoting Spear, 954 F.2d at 68). Thus, the UFT cannot be liable for the First and Fourteenth Amendment claims.

### C. Claim under 29 USC § 185

Green's amended complaint adds a new federal claim for "violations pursuant to 29 USC § 185" and alleges that "[w]hile and after Plaintiff was employed by Defendant NYCDOE, the United Federation of Teachers used a 'hands off' policy which led him into a 3020-a without

---

[4] Green specifically states "that he is not arguing that he is a class of one." Green Opp. at 39. We thus do not address the reasons why any such claim would fail under Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

14

proper determination of probable cause and other denial of his tenured, protected rights including those included in the Contract." AC ¶ 47. In other words, Green alleges that the UFT breached its duty of fair representation.

This Court, however, does not have subject matter jurisdiction to adjudicate such a claim. Green claims that "[j]urisdiction is specifically conferred on this Court by Labor Management Relations Act, Section 301." AC ¶ 8. But the Second Circuit has squarely held that "the language of the LMRA makes plain [that] public employees are not covered by that statute." Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (citing 29 U.S.C. § 152(2)). Green does not contest that he is a public employee — indeed he pled that he "was a public employee of Defendants." AC ¶ 9. As a result, this claim should be dismissed because the Court lacks subject matter jurisdiction over a duty of fair representation claim brought under 29 U.S.C. § 185 by a public employee. See, e.g., Ford, 579 F.3d at 188 (collecting cases); accord Malast v. Civil Serv. Employees Ass'n, Inc., Local 830, AFSCME, AFL-CIO, 474 F. App'x 829 (2d Cir. 2012) ("public employees may not bring federal duty-of-fair representation ('DFR') claims or claims under Section 301 of the LMRA, 29 U.S.C. § 185.") (citation omitted). Claims by teachers against the UFT such as the one alleged by Green are routinely been dismissed. See, e.g., Gear v. Dep't of Educ., 2010 WL 5297850, at *4 (S.D.N.Y. Dec. 21, 2010), aff'd, 472 F. App'x 67 (2d Cir. 2012); Saidin v. N.Y.C. Dep't of Educ., 498 F. Supp. 2d 683, 689 (S.D.N.Y. 2007); Rodriguez-Rivera v. City of N.Y., 2007 WL 766195, at *3 (S.D.N.Y. Mar. 12, 2007).

Accordingly, Green's 29 U.S.C. § 185 claim against the UFT should be dismissed for lack of subject matter jurisdiction.

D. Supplemental Jurisdiction Over State Law Claims

15

As was true for Green's first complaint, the amended complaint brings claims under New York law. While we agree that these claims would likely fail for the reasons stated in the defendants' briefs, see DOE Mem. at 14-19; UFT Mem. 14-16; DOE Supp. Mem. at 6-8; DOE Reply at 11-12, the Court should again decline to exercise supplemental jurisdiction over them. As we explained in the prior Report and Recommendation, "the Court's authority to hear Green's state law claims is premised only on its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a)." R&R at 25 & n. 7. Because this case is still in an early stage, the court should decline to exercise jurisdiction over Green's remaining state law claims. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 306-07 (2d Cir. 2003) (noting that because of the "relatively early stage of the case," there were "judicial economies to be achieved by declining to exercise supplemental jurisdiction" over state law claims that remained after the dismissal of all federal law claims).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Docket ## 43, 45) should be granted. Inasmuch as Green has already had one opportunity to amend his complaint, and there is no reason to believe he could cure the defects in the amended complaint, leave to file a third complaint should not be granted. See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend need not be granted where the defects in the complaint are "substantive" and not the result of "inartful[ ]" pleading); Concepcion v. Dana, 2019 WL 548639, at *4 n.3 (N.D.N.Y. Feb. 12, 2019) ("an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend") (citing cases).

The Clerk of the Court is requested to mail a copy of this Report and Recommendation to Rupert Green at the address listed below.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to Judge Torres. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Green may file his response by email by sending it in pdf form to Temporary_Pro_Se_Filing@nysd.uscourts.gov. In the alternative, the response may be mailed to Pro Se Docketing, 500 Pearl Street, New York, NY 10007.

Dated: June 17, 2020
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Mail to:

Rupert Green
205-26 113th Avenue
St. Albans, NY 11412