UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

DR. RUPERT GREEN,

                Plaintiff         DOCKET NO. 18 Civ. 10817 (AT) (GWG)

  -against-

                                                 OBJECTIONS TO THE
                                       REPORT AND RECOMMENDATION
THE DEPARTMENT OF EDUCATION OF      OF MAGISTRATE JUDGE
THE CITY OF NEW YORK; and UNITED     GABRIEL W. GORENSTEIN
FEDERATION OF TEACHERS,

                Defendants

_____x

Plaintiff pro se Rupert Green ("Plaintiff") respectfully submits herein his Objections to the Report and Recommendation("R&R") of Magistrate Judge Gabriel W. Gorenstein pursuant to the Memorandum and Order of Judge Alissa Torres dated July 2, 2020 (Docket #64).

It is a well-known standard for the Court to review "de novo" those portions of the R&R a party objects to in a magistrate's report and recommendation. See United States v. Lothridge, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)). Plaintiff requests such a review by this Court of the errors and omissions of fact and law in the R&R of Magistrate Gorenstein cited below.  Please take Judicial Notice that as Plaintiff has been successful in arguing against the arguments made by the Department of Education of the City of New York ("NYC DOE") on the issues of Res Judicata and Collateral Estoppel two times, Plaintiff does not object to the dismissal of these two issues recommended by Magistrate Gorenstein in his R&R, unless the

1

NYC DOE files objections to these two issues in their response to Plaintiff's Objections submitted herein.

Plaintiff's objections to Magistrate Gorenstein's R&R dated  are:

(1) Magistrate Gorenstein made an error in dismissing Plaintiff's very specific, factual evidence and argument on the denial of tenure law protections which led to his wrongful termination. Plaintiff's argument is that his due process was denied before the arbitrator began the pre-hearing, and Magistrate Gorenstein refers only to Plaintiff's due process owed to him after the hearing began, yet did not give any reasons for not addressing the pre-trial errors of procedure and determination of probable cause.
(2)  Magistrate Gorenstein made an error in not addressing Plaintiff's very specific and factual evidence on the denial of his First Amendment right to speak as a private citizen on matters of public concern;
(3) Magistrate Gorenstein failed to address the fact that Plaintiff was given an extreme punishment at his 3020-a because he is a Black male teacher while white teachers of both genders were treated differently.
(4) Magistrate Gorenstein improperly dismissed the claim of stigma plus.
(5) Magistrate Gorenstein improperly dismissed the UFT in this matter. Under the circumstances detailed in Plaintiff's papers, the UFT was properly served and acted under color of state law as a state actor in denying Plaintiff his Constitutional rights under the tenure law.

POINT I

MAGISTRATE GORENSTEIN'S R&R SHOULD BE DENIED IN FULL BECAUSE PLAINTIFF HAS PRESENTED SUFFICIENT FACTUAL EVIDENCE AND NOT VAGUE CONCLUSIONS IN SUPPORT OF HIS AMENDED COMPLAINT

Magistrate Gorenstein summarizes one of Plaintiff's claims as "Green does allege "[t]he DOE and UFT target black male teachers who speak out while teaching, and terminate each of these teachers at 3020-a, where the procedures used to charge teachers are without support in the Education Law and deny certain Constitutional rights without just cause," id. ¶ 4, which suggests a practice of retaliation against black male teachers for unfavorable speech. These allegations, however, are conclusory and thus nowhere near sufficient to allege that "an official policy of the municipality caused the constitutional injury." (p. 9)

Plaintiff objects to Gorenstein's statement that his claims of denial of Constitutional rights are nothing more than vague conclusions. This is as an error of judgment by Magistrate Gorenstein which permeates the error-filled R&R.

In his first R&R in this case, Magistrate Gorenstein cites the Standard of Review Under Fed. R. Civ. P. 12(b)(6)

"To survive such a motion, a complaint must contain sufficient factual matter, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As the Supreme Court noted in Iqbal,
[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

And,

"[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule of Civil Procedure 8(a)(2) because it has merely
"alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"(P. 6)

Magistrate Gorenstein says that there must be "proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."

Plaintiff's entire argument is based upon the pattern and practice of disturbing/destroying tenured teachers' rights throughout the UFT membership, not just to him. Plaintiff also showed in his papers that teachers who exercise their right to First Amendment protected speech and are Black receive harsh punishment, retaliation and termination, rather than small fines given to non-Black educators.

Plaintiff submitted evidence to this Court which supports what he is saying in his Amended Complaint and these documents push his claim from conceivable to plausible pursuant to the standard set under Ashcroft v Iqbal. (556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

3

Twombly, 550 U.S. 544, 570 (2007)), R&R p.3)) Plaintiff's submitted Exhibits, see below, with his Amended Complaint (Docket #34) were ignored in the R&R:

1. Dr. Green's AFFIDAVIT on Proper Determination of Probable Cause
2. Complaint re Corey Prober's Appointment as Principal
3. NYSUT Letter on Cardinale decision
4. Bylaws of the Panel For Educational Policy ("PEP")
5. Decision of Judge Desmond Green in Cardinale case
6. Letter from UFT General Counsel Adam Ross
7. Email from Dr. Green citing retaliation and violation of his First Amendment rights by SCI investigation
8. Affidavit of Service on UFT and DOE 10/22/19
9. Appearance of NYSUT Attorney Oriana Vigliotti, for the UFT 11/6/19

For example, Plaintiff's AFFIDAVIT (Ex. 1) describes the reasons for his argument that Arbitrator Leah Murphy did not have subject matter jurisdiction to hear his 3020-a charges and decide on penalties. Magistrate Gorenstein never mentioned this submission, nor any of the other relevant documents.

At Plaintiff's 3020-a Murphy did not dismiss his AFFIDAVIT which was submitted independent of the Motion To Dismiss For Lack of Subject Matter Jurisdiction before the pre-hearing in compliance with Education Law. She also never mentioned it in her Opinion and Award. This is key to the problem that clearly exists in this matter, that any claim made by Plaintiff which is inconvenient to the Court's purpose of dismissing the (Amended) Complaint is ignored, as if it never existed. Then, his allegations become vague and conclusory, and without merit. Plaintiff's case was not heard in this Court and he objects to this injustice.

## POINT II

PLAINTIFF OBJECTS TO MAGISTRATE GORENTEIN'S DISMISSAL OF PLAINTIFF'S ARGUMENT HE WAS DENIED DUE PROCESS PURSUANT TO
THE FIRST AND FOURTEENTH AMENDMENT AND CARDINALE CASE

No judge or arbitrator except Judge Desmond Green in the case of Rosalie Cardinale has properly addressed the improper determination of probable cause leading to 3020-a arbitration and the result that arbitrators are without subject matter jurisdiction and should not be permitted to hear any of these cases under the circumstances.

The proper determination of probable cause which is required by statute in New York State (Education Law 3020-a(2)(a)) is detailed in the Law, with a series of steps which must be taken in order to give an arbitrator subject matter jurisdiction. The school board in New York City is the Panel For Educational Policy ("PEP"). Plaintiff submitted the Bylaws of the PEP with his Amended Complaint (Ex. 4). In these Bylaws, agreed on by the New York State legislature when Mayoral control was established in 2002 and renewed in 2009, the Chancellor "shall serve as a non-voting ex-officio member of the Panel for educational Policy……The Chancellor is the chief executive officer and Superintendent of the City School District and shall have such powers and duties as are prescribed by law. He/she shall have a seat on the Panel for Educational Policy and the right to speak, but not to vote, on all matters before the Panel." (BYLAWS, PREAMBLE and Article 1, Section 1.1).

Corey Prober, Principal at COOP TECH, did not have any lawful authority to determine probable cause and sign off on the Notice of Determination of Probable Cause Pursuant to Education Law 3020-a. No argument or evidence has been submitted by the Defendants in this matter that claims otherwise.

Magistrate Gorenstein referred to Plaintiff's first Objections to the R&R submitted August 13, 2019 (Docket #30) and dismissed Plaintiff's arguments as already heard. He is wrong.

Magistrate Gorenstein disposed of Plaintiff's Complaint without any basis in law or fact. Plaintiff's evidence and arguments were simply overlooked in Gorenstein's R&R, and thus

Plaintiff again makes his objections to the R&R as well as argument for granting his Amended Complaint to preserve his fact-based statements for Appeal.

Plaintiff argues that Murphy did not have Subject Matter Jurisdiction, and argues that the decision of Judge Desmond Green in the case of Rosalie Cardinale is not irrational. Plaintiff argued in his Motion To Dismiss For Lack of Subject Matter Jurisdiction, and here, that he complained about the pre-trial errors of procedural due process as well as the substantive errors made during the 3020-a. Magistrate Gorenstein only mentioned in his R&R case law which deals with what Plaintiff's rights are AFTER the hearing begins. Magistrate Gorenstein described the notion of "due process" as follows (Gorenstein's R&R dated 7/31/19, Docket #28):

"Under the Due Process Clause of the Fourteenth Amendment, before a tenured public employee can be terminated, the "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." …..This is all the process that Green was due under the Fourteenth Amendment."

Thus Plaintiff and Magistrate Gorenstein are on opposite sides of the same coin. However Magistrate Gorenstein did not address the procedural errors made by Defendants before the service of charges, a key point in Plaintiff's Amended Complaint. Magistrate Gorenstein dismisses the arguments about the omission of a vote in an Executive Session of the PEP with the result being that arbitrator Murphy did not have subject matter jurisdiction, but Gorenstein never described his evidence that Murphy did indeed obtain the necessary subject matter jurisdiction, and how.

Plaintiff objects to Magistrate Gorenstein's dismissal of his due process claim on the basis that he was given all the due process allowed by law. If, as Plaintiff argues here, Arbitrator Murphy

never had subject matter jurisdiction to hear his case, which Plaintiff says is proven by the many facts surrounding the violations of procedures to determine probable cause, then it doesn't matter if the hearing is 3 days or 23. Arbitrator did not have any authority to hear any testimony, or be neutral and could go along with what the NYCDOE wanted, namely termination. All arbitrators are immune from prosecution.

For 3020-a arbitration to be fair and to honor the Respondent's due process tenure rights, the arbitrator must have subject matter jurisdiction, which did not happen in Plaintiff's case. Murphy could and did deny Plaintiff's counsel any access to Plaintiff's emails showing he was not the harassing bully the DOE said he was, and she also denied any adjournment for the EEOC to complete their investigation of racial discrimination. Murphy did not want anything to block her goal to terminate Plaintiff.

The disparate treatment by the Department and the UFT of Black and Brown employees, parents and students has been widespread and visible ever since the election of Mayor Michael Bloomberg and the implementation of Mayoral control in New York City. Mr. Bloomberg wanted total control over the NYC DOE in the area of hiring and firing in order to do what he wanted without any interference from anyone, and certainly not Black or Brown parents, employees of the DOE, or staff. He also needed to get rid of tenure because tenure rights protected teachers who he felt were not doing their jobs. At the time of his election to the position of Mayor, tenure was a bad thing, attacked for its protection of "bad" teachers and educators at all levels of the education hierarchy. The silence of the UFT on this attack of members was shocking.

Education Law §3020-a(2)(a) gives Arbitrators the authority to hear and decide 3020-a penalties for tenured educators only **after** probable cause has been voted on by the school board. The first

step under the law in NYC is to have the PEP in a public meeting, and in an Executive Session, vote on the charges ("Specifications") which are then served on a Respondent. An arbitrator is chosen by both sides (except for UFT members in NYC) who may then proceed to hear the case and decide if there is just cause to discipline the Respondent. An arbitrator cannot determine probable cause, and no principal or Superintendent may find probable cause. No law, rule, memo, agreement or other has stated that there is a right to delegate the finding of probable cause for 3020-a charges away from the school board. Defendants want the case to be dismissed because they said so, not because they have presented any opposing facts or evidence proving the validity of their opposition to what Plaintiff is saying.

Magistrate Gorenstein cites in his first R&R p.10, Docket #28 (relevant here because he uses this R&R for recommending dismissal of Plaintiff's Amended Complaint):

"N.Y. Educ. Law § 2590-f(1)(b) further provides that in New York City, the superintendent shall have the power "to delegate any of her or his powers and duties to such subordinate officers or employees of her or his community district as she or he deems appropriate, at his or her sole discretion, and to modify or rescind any power and duty so delegated." Numerous state courts have interpreted these sections of the law as giving the Chancellor the authority to delegate the process of preferring charges against tenured teachers to the District Superintendent, who in turn may delegate that authority to local school principals."

Magistrate Gorenstein is right that state Court judges have ruled that the Chancellor has the authority to delegate the **process of preferring charges** (NYS Education Law §2590-h) against tenured teachers who can then delegate to school principals. This process starts with someone filing a complaint against a teacher, or observation reports for two-three years rate the teaching performance as "ineffective". There is then an investigation and finally a meeting with the

8

teacher and principal, where notice is given that charges may be filed. This is the process for preferring charges, and the Chancellor can delegate these steps (except for the meeting with notice) to anyone in the supply chain. But then the request for 3020-a arbitration and the charges must be given to the school board for a vote. No written changes have been made by the State legislature.

Magistrate Gorenstein's error in the R&R is that "preferring charges" is by definition and law, the same as "determining probable cause pursuant to Education Law 3020-a". The Magistrate makes both actions one and the same, and this is not so. Corey Prober, the principal of COOP TECH and the person who Plaintiff filed complaints about, obviously did not like Plaintiff. He had motive to remove Plaintiff from the payroll, so he filed charges against Plaintiff for supposedly harassing staff and other misconduct, to get him out. Prober could do this under the rules and regulations of the Department where he is the sole chief of the school, and the buck stops at his desk when an employee is accused of being guilty of misconduct or incompetency. But then the DOE gave him the "Notice of Determination of Probable Cause Pursuant to Education Law §3020-a", and told him to sign it and send it back to the DOE District office and lawyer who created the charges against the Plaintiff. He did not have any authority to sign that document under State Law but he did as he was told. The denial of tenure rights to Plaintiff really was that simple.

This is the denial of due process, violation of Education Law, and fraud that Plaintiff is speaking about here. For political reasons the judges of State and Federal courts have chosen to ignore Plaintiff's arguments and lawsuit to return him to his tenured position because to do that would bring hundreds of cases to Court of other educators harmed by the denial of rights in their cases. The Magistrate and Court System do not want this floodgate to open.

No judge except Judge Desmond Green in the case of Rosalie Cardinale (Ex. 5, Amended Complaint) has challenged the pattern and practice put into play around 2002 when Mayor Mike Bloomberg was elected Mayor, and took control of the NYC DOE. Bloomberg wanted tenured teachers out, and did not want to be blocked if he or his subordinates believed a person was not doing his /her job. Bloomberg believed that tenured educators were all guilty of not doing their jobs, knowing that they "could not be fired." He appointed the Chancellor to maintain control over the hiring and firing of educators in NYC but never achieved the one State action which could have made his animosity for the tenure law valid: a change of the PEP Bylaws and the Education Law to specifically mention the determination of probable cause without a vote in Executive Session. This never happened.

Another objection Plaintiff preserves here for an Appeal is the neglect of Magistrate Gorenstein to address the denial of teachers' rights to pick the arbitrator for their case, (NY State Regulations Part 82-3.5) in addition to the violation in the procedures to determine probable cause. The UFT and DOE bargained away the right of tenured charged educators to choose the arbitrator in Article 21(G) of the Collective Bargaining Agreement ("CBA"). A rotational panel was established by Defendants specifically to deny tenured UFT members the right to participate in this assignment procedure, while Assistant Principals and Principals charged with 3020-a in NYC are allowed to participate in picking the arbitrator for their case. The Principals' Union, Council of Supervisors and Administrators ("CSA") never took this right away from any member if and when charged with 3020-a.

In 2002 through to about 2007-2008 educators charged with 3020-a charges were almost all represented by NYSUT attorneys who went along with the Bloomberg formula of charging and terminating teachers without a proper determination of probable cause. Private attorneys in 2007

started objecting to the manner in which probable cause was decided, and this started the Department and the UFT Representatives talking and writing about a so-called 'change' in the law, which in fact never took place. Instead, Ed Law Section 2590-h was created with the statement that the Chancellor had all the duties and responsibilities of the school board and could delegate anything to anyone. This is false. The Chancellor was never given a right to vote at the PEP, so could not delegate a vote nor a finding of probable cause. The NYC DOE were never able to change the Bylaws of the PEP to include the necessary delegation and omit the voting procedure.

The same error was made by Magistrate Gorenstein in equating "just cause" with "probable cause". Education Law 3020-a requires certain procedures occur (See Plaintiff's AFFIDAVIT, Ex. 1, Amended Complaint Docket #34) to properly determine probable cause for the misconduct, neglect of duty, incompetence or whatever the charges might be and proceed to a hearing. These procedures were never changed, bargained away, or amended, by the Defendants nor were any waivers signed by the NYC DOE or UFT attorneys. Only after the probable cause has been properly voted on can the arbitrator proceed to hear the case and decide if there is just cause for penalty. Arbitrators who have subject matter jurisdiction may hear an arbitration and decide on whether or not there is just cause for any penalty. Without subject matter jurisdiction, an arbitrator has no authority to decide on penalty.

Plaintiff argues that Defendants took his Constitutional rights to tenure law protections away from him by permitting his case to be heard by an arbitrator who had no subject matter jurisdiction as there was no proper determination of probable cause. With the added damage that both Defendants in this matter took away the right to choose an arbitrator for the 3020-a in NYC, the entire arbitration is placed under the control and management of the New York State and City

Department of Education.  New York State Education department pays an arbitrator $1400/day to hear and decide 3020-a cases, while the New York City Department of Education has a contract with each arbitrator to pay for 'extras' as long as certain rules are followed such as speeding up hearings, having 5 hearing days per month in NYC, a minimum number of witnesses, etc. This leaves the arbitrator empowered to do whatever they wish, as long as they do what the DOE wants. They can be and are fired if they do not terminate or give harsh punishment in their Opinions and Awards. Arbitrators typically make irrational statements, but they all know that they have immunity from prosecution and will be defended by the NYC Corporation Counsel as long as they play the game and do what the DOE wants. Murphy ignored Plaintiff's Affidavit which cited the problems in the process of charging Plaintiff without a proper determination of probable cause (Ex 1, Amended Complaint) yet she never dismissed it. As far as she was concerned it just did not exist.

The first paragraph of Ed. Law 2590-h on the duties and responsibilities of the Chancellor, says:

"The office of chancellor of the city district is hereby continued. Such chancellor shall serve at the pleasure of and be employed by the mayor of the city of New York by contract.   The length of such contract shall not exceed by more than two years the term of office of the mayor authorizing such contract.   The chancellor shall receive a salary to be fixed by the mayor within the budgetary allocation therefor.   **He or she shall exercise all his or her powers and duties in a manner not inconsistent with the city-wide educational policies of the city board**.

The Preamble of the Bylaws of the New York City School Board (Panel For Educational Policy, "PEP") which Plaintiff already submitted to this Court (Docket #22, #23), prohibits the Chancellor from voting:

"The members of the Panel for Educational Policy are appointed according to law as follows: one member is appointed by each Borough President and eight members are appointed by the Mayor……. **The Chancellor shall serve as a non-voting ex-officio member of the Panel for educational Policy.** The Panel shall also include two non-voting student advisory members selected by the Chancellor's High School Advisory Council. All members serve at the pleasure of the official who appointed them."
(emphasis added)

12

Shockingly, Magistrate Gorenstein uses the Education laws to obfuscate the issue of the delegation of authority to determine probable cause in the discipline process. His goal seems to be to make his conclusion that Plaintiff is simply wrong, and dismiss the Complaint without any rational basis.

Most importantly, the intention of the New York State legislature is clear. There can be no total control of the discipline process by the Chancellor, there must be an independent eye on teacher tenure protection. The process of determination of probable cause cited in Education Law §3020-a(2)(a) and served in the charges received by Plaintiff is sacrosanct.

The gravamen of this case is the malicious prosecution of Plaintiff by the Defendant NYC DOE, aided and abetted by the UFT, to deny him a fair arbitration hearing and terminate him from his employment to punish him for speaking about very important issues of discrimination of Black and Brown educators and students, segregation, and lack of funding for vocational education. He spoke as a private citizen on a matter of public concern about the inequalities in NYC public schools and the lack of funding for vocational education, where students are mostly Black or Brown.

To silence Plaintiff the NYC DOE made up that he complained about a lesbian affair between a former principal and another employee, when Plaintiff never said this at all. This was a complete fabrication, made up to get people at COOP TECH upset with him.

This is the foundation which Arbitrator Murphy used to terminate Plaintiff. Her goal from the start of her appointment as arbitrator was to end Plaintiff's employment. This was clear when she forbade Plaintiff from accessing his school email account in order to get all the emails he needed to show he was popular at the school and not a bully. Murphy's decision to terminate Plaintiff made no sense nor was it rational.

In the case of Christine Rubino, a white teacher who posted a facebook comment that she would not help her students if they were drowning at the beach, her termination was overturned by Supreme Court Judge Barbara Jaffe:

"The standard for reviewing a penalty imposed after a hearing held pursuant to Education Law § 3020-a is whether the punishment imposed "is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness." (Matter of Pell, 34 NY2d at 233). A result is shocking to one's sense of fairness when:

the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct ... of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals.

…petitioner had a long and otherwise unblemished employment history. (See Matter of Riley v City of New York, 84 AD3d 442 [1st Dep't 2011] [where, during the 15 years preceding the incident, petitioner had received not a single formal reproach"]; Matter of Diefenthaler v Klein, 27 AD3d 347 [1st Dep't 2006] [where misconduct was "an isolated error of judgment" and petitioner had more than 10 years of unblemished service]; Matter of Solis v Dept. of Educ. of the City of New York, 30 AD3d 532 [2d Dep't 2006] [where petitioner had 12 years of unblemished service]; Matter of Weinstein v Dept. of Educ. of the City of New York, 19 AD3d 165 [1st Dep't 2005], lv denied, 6 NY3d 706 [2006] [where petitioner had "30-year history of exemplary service in the teaching profession"]). Termination has also been considered disproportionate to offenses that cause no injury. (See Matter of Riley, 84 AD3d 442 [student admitted to sustaining no emotional or physical injury]; Matter of Patterson v City of New York, 2011 NY Slip Op 30870[U] [Sup Ct, New York County Apr. 1 I, 201 I] [offense did not affect petitioner's teaching ability]).

Here, petitioner's 15-year employment history with the DOE was unblemished before she posted the offensive comments, and she posted them outside the school building and after school hours. Moreover, there is no indication in the record, nor any finding, that her postings affected her ability to teach……There is also no evidence that her postings injured her students or that she intended any injury.

While I do not address the hearing officer's determination as to the alleged violation of petitioner's first amendment right to freedom of speech (see III.B., supra), in these circumstances, termination of petitioner's employment is inconsistent with the spirit of the first amendment." ( Rubino v NYC Department of Education, Index No. 107292/2011).

These points do not apply when, like Plaintiff, the person who uses the internet to supposedly "harass" or "scare is a Black male teacher. Plaintiff teaches kids how to fix and understand

14

computers. His speech as a private citizen on matters of public concern were protected speech. Only he did not have the right to make this claim, according to Arbitrator Murphy, who would not give him a First Amendment protection.

POINT III

STIGMA PLUS DESTROYED PLAINTIFF'S STANDING IN THE COMMUNITY

Plaintiff objects to Magistrate Gorenson's dismissal of his Stigma Plus claim on the basis that he was not denied due process. In his R&R Magistrate Gorenson wrote:

Moreover, "[l]ike any procedural due process claim, a stigma-plus claim enforces a limited but important right: the right to be heard 'at a meaningful time and in a meaningful manner.'" Segal v. City of N.Y., 459 F.3d 207, 213 (2d Cir. 2006) (quoting Goldberg v. Kelly, 397 U.S. 254, 267 (1970)). Thus, a stigma-plus claim cannot succeed unless the state actor "denied [plaintiff] procedural due process protections, to which he was entitled, before depriving him of the protected interest," Bohn v. Cook, 2019 WL 5298152, at *7 (D. Conn. Oct. 18, 2019) (citation omitted) — in this case, Green's employment. Here, Green had such a hearing that accorded with the requirements of procedural due process. See R&R at 19. Thus, Green's stigma-plus claim fails for this reason as well."

However Plaintiff was not given a chance to be heard because by the time Arbitrator Murphy was appointed to his 3020-a case, she knew that she had no subject matter jurisdiction to hear Plaintiff's case and could not be prosecuted for any reason. Therefore, she only heard the NYC DOE's side of the story. They paid her. Plaintiff was not heard at a meaningful time and in a meaningful manner. Thus his argument that he was denied due process in the charging process for 3020-a arbitration applies not only to the procedural violations of law, but also to substantive issues.

15

While acting under the color of state law, the NYC DOE constructively terminated Plaintiff's New York City License without providing procedural due process before the deprivation of property. Plaintiff's claim is one for loss of reputation. The loss of one's reputation can violate the Due Process Clause if the loss of reputation is associated with the deprivation of a federally protected liberty interest, such as government employment. Bd. of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ; Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994). The loss of reputation without due process of law, in combination with the loss of a more tangible interest, is referred to as a "stigma plus" claim. The "stigma" within a stigma plus claim is the loss of reputation and the "plus" is the loss of a more tangible interest, such as employment. See Velez v. Levy, 401 F.3d 75, 87–88 (2d Cir. 2005) ; Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F.Supp.2d 389, 394–95 (S.D.N.Y. 2009). "Because stigma plus is a species within the phylum of procedural due process claims, the Plaintiff must demonstrate that his liberty interest was deprived without due process of law in addition to proving the deprivation of a liberty interest". Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006). Plaintiff has demonstrated this in his arguments.

Therefore, Plaintiff argues, the Stigma Plus claim, with the termination, and all the effects of being fired, should be granted, and remedies made.

## POINT IV

### THE UFT IS A STATE ACTOR IN THIS CASE AND PURPOSEFULLY DENIED PLAINTIFF HIS TENURE RIGHTS IN PARTNERSHIP WITH THE NYC DOE

The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Plaintiff; in screening them before taking action against a teacher, for their credibility, veracity, and reliability; and for the removal of the Plaintiff from his position;

16

among other things: in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against tenured teachers; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, validating the partnership existing between the New York City Department of Education (NYC DOE) and the United Federation of Teachers (UFT) in not protecting the employment of tenured teachers. As a proximate result of Defendants' actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to his professional reputation.

The UFT acted with malice and in bad faith, without justification, intentionally harming the Plaintiff by playing a part in seeking to wrongfully terminate him from his employment, and caused him intentional and/or negligent infliction of emotional distress. Due to these circumstances the UFT is acting under color of law and must be considered a state actor. Plaintiff therefore objects to Magistrate Gorenstein's dismissal of the UFT in the matter.

Dated: July   2020

_____

Rupert Green